UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JESUS SANTIAGO,                                                  :
                                                                :
                                          Plaintiff,            :
                                                                :       **DECLARATION OF**
                                                                :       **STEVEN H. PHILBRICK**
- against –                                                     :
                                                                :
BRIAN S. FISCHER, individually and as                           :
Commissioner of the New York State                              :       12-CIV-2137 (KAM)(SLT)
Department of Correctional Services, et al.,                    :
                                                                :
                                          Defendants.           :
-------------------------------------------------------------------X


        STEVEN H. PHILBRICK, pursuant to 28 U.S.C. § 1746, declares under the penalties of

perjury as follows:

        1.      I am employed by the New York State Department of Corrections and

Community Supervision ("DOCCS") as Associate Counsel to the New York State Board of

Parole.  I have been Associate Counsel to the Board of Parole, or its predecessor agency, the

Division of Parole ("Parole" or the "Division"), since March 2007.[1]  In addition, I formerly

served as the Board of Parole's Chief Administrative Law Judge for eight years.

        2.      From March 2005 to March 2007, I was the Director of Administration for the

Division.  As Director of Administration, I was responsible for the Budget, Finance, Support

Operations, and Human Resource Units of the Division.

        3.      From 1999 to 2005 I served as the Chief Administrative Law Judge ("ALJ") of

the Division.  As Chief ALJ, I would preside over parole revocation proceedings and supervise

---

[1] On March 31, 2011, the former New York State Division of Parole and the New York State
Department of Correctional Services ("DOCS") were merged to create a new state agency,
DOCCS.  Under Article 12-B of the Executive Law, as it existed before March 31, 2011, the
Board of Parole was a part of the Division of Parole.  Since the merger in 2011, the Board of
Parole functions as a separate unit within DOCCS.

all ALJs and preliminary hearing officers, all of whom preside over the various stages of parole revocation proceedings. From 1997 to 1999 I served as Associate Counsel to the Division, as well as Acting Chief ALJ. I was first employed by the Division in 1987.

4.    I submit this declaration in support of Defendants' motion for summary judgment in this action. I base this Declaration upon my personal knowledge, as well as a review of relevant documents pertaining to this case.

5.    Specifically, this declaration sets forth the facts regarding Parole's response to Plaintiff in this action, Jesus Santiago, a parolee who claims that his term of mandatory PRS was illegal, and seeks damages from Defendants for, among other things, Parole's actions taken in compliance with July 2008 legislation to address PRS resentencing.

## I.    RELEASE TO PAROLE SUPERVISION

6.    At the times relevant to this lawsuit, the Division of Parole supervised inmates released from DOCS who were released to parole supervision. These parolees included those who were granted parole, or conditionally released to parole supervision, including those violent felony offenders released to terms of PRS.

7.    At the relevant times, the Division of Parole supervised approximately 43,000 felony offenders who had been released from State prison (hereinafter "releasees" or "parolees") through presumptive release, the discretionary grant of parole, conditional release, or release to a period of post-release supervision ("PRS"). During the times relevant to this lawsuit, the Division employed a workforce of approximately 2,200 individuals and had a combined annual operations and capital budget in the amount of approximately $225,000,000. Its principal office was located at 97 Central Avenue, Albany, New York 12206, where counsel's office to the Board of Parole remains as of this date.

8.     At all relevant times, DOCS was the State agency responsible for calculating the time a New York State inmate or parolee owed on parole, and DOCS identified the maximum expiration ("ME") dates of the parole sentences for all felony offenders to be released to parole or PRS.

9.     These calculations were stored on DOCS' mainframe computer, an electronic database. The information contained in the database included an inmate's computed release date to parole, ME date, and, where applicable, the period of PRS.

10.    At all relevant times, Parole received from DOCS a certified calculation of the amount of time a parolee was to serve on parole or PRS.

11.    If the parolee, like the parolee in this case, had been convicted of a violent felony, which required a mandatory term of a certain number of years of PRS, the ME date of such PRS term was also calculated.

12.    Prior to release from a DOCS correctional facility, a parolee was provided with, and required to certify receipt and understanding of, a Certificate of Release to Parole Supervision. See Penal Law §§ 70.40(1)(b), 70.45(3); Executive Law § 259-c(2).

13.    The parolee would receive this document after meeting with a facility parole officer employed at the releasing facility to discuss the offender's release plans and the conditions of release.

14.    The Certificate of Release would contain identifying information regarding the parolee, including name, New York State Identification Number ("NYSID"), DOCS' Department Identification Number ("DIN"), as well as the offender's crime(s) of conviction, county of conviction, and sentence(s).

15.     The Certificate of Release also included the parolee's release date, and the date on which any PRS would expire.

16.     Until that ME date, Parole would have legal jurisdiction of the parolee pursuant to Executive Law § 259-i(2)(b).

17.     Parole was required by law to supervise each releasee until his or her ME date, as calculated by DOCS, was reached.  <u>See</u> Executive Law § 259-i(2)(b).

18.     Violent felony offenders with determinate sentences who were subject to terms of PRS, like Plaintiff in this case, were at the relevant times eligible for conditional release from state prison after serving six-sevenths of their determinate sentences.  As such, when a felony offender was released to Parole, a period of time often remained on the offender's determinate sentence.  Upon release to parole supervision, whether or not time remained on the parolee's determinate sentence, the PRS term began to run, and it was only after the underlying determinate term of a sentence reached its ME date that a parolee would have been exclusively subject to PRS.

19.     A violation of the conditions of release to parole supervision or PRS (which can range from failing to report to committing a new crime) could have resulted in the revocation of the offender's release, and could have resulted in reincarceration of the parolee.

20.     Parole revocation proceedings were commenced in such circumstances pursuant to Executive Law § 259-i(3).  A Violation of Release Report ("VOP") describing any violation of parole was prepared by the offender's parole officer and signed off on by a supervising parole officer.  If a parole warrant was issued, the offender would have been taken into custody either by parole officers or by local law enforcement.

21.     Once a parolee was taken into custody on a parole warrant, he or she was entitled to be served with a copy of the VOP as well as with a Notice of Violation within three days of the execution of the warrant.  The parolee could then either proceed with a Preliminary Parole Revocation Hearing to determine probable cause before a hearing officer within fifteen days of the execution of the warrant, or waive such hearing and proceed to the Final Revocation Hearing.  See Executive Law § 259-i(3)(c)(i).

22.     At the relevant times, a parolee had the right to appear and speak at the Preliminary Hearing, introduce evidence, present and cross-examine witnesses, and obtain counsel.

23.     However, if the parolee was convicted of either a misdemeanor or felony while under community supervision, he or she was not entitled to a Preliminary Hearing, and the arrest could have interrupted (and suspended) the offender's parole term or removed the offender from Parole's custody.

24.     New York Executive Law § 259-i(3)(f)(i) required Parole to hold a Final Hearing within 90 days of determining probable cause to detain a parolee.  At the Final Hearing, the ALJ determined whether the charges of parole violations set forth in the VOP were supported by a preponderance of evidence.  At the relevant times, at the Final Hearing, parolees were entitled to be represented by counsel, to speak on their own behalf, to introduce evidence, to present, confront and cross-examine witnesses and to present mitigating evidence relevant to restoration to community supervision.  Upon completion of the Final Hearing, the ALJ would prepare a Parole Revocation Decision Notice, in which the parolee could receive a delinquent time assessment.  As a result of a finding of delinquency, the parolee's ME date would then be

recalculated by DOCS to reflect the interruption of the parolee's sentence.   See Penal Law §

70.40(3) and § 70.45(5)(d).

25.    A parolee also had the right to appeal the ALJ's decision by filing a Notice of

Appeal and serving the Board of Parole.  See Executive Law § 259-i(4).

**II.    POST-RELEASE SUPERVISION RESENTENCING INITIATIVE**

26.    In 2008, when I had re-assumed the role as Associate Counsel to the Division of

Parole, I became aware of the Second Circuit Court of Appeals decision in Earley v. Murray.   In

the two years after Earley was first decided, parolees had challenged, pursuant to Articles 78 and

70 of the CPLR, PRS terms that had not been judicially pronounced.   Parole understood that the

State's sentencing courts were the appropriate venues in which to decide sentencing issues.   In

2008, many parolees continued to engage in litigation challenging PRS terms through Article 78

and Article 70 proceedings.   I became involved in addressing these challenges especially

following the New York State Court of Appeals decisions in Garner and Sparber, which were

decided on April 29, 2008.  See Matter of Garner v. N.Y.S. Dep't of Corr. Servs., 10 N.Y.3d 358

(2008); People v. Sparber, 10 N.Y.3d 457 (2008).

27.    After the Court of Appeals decided Garner and Sparber, in May 2008, Parole

launched a "Post-Release Supervision Resentencing Initiative," which attempted to refer

parolees whom Parole had reason to believe may not have had properly imposed PRS to their

sentencing courts for possible resentencing.   In order to remedy flawed PRS terms, the Division

launched the Post-release Supervision Resentencing Initiative.   See June 4, 2008 e-mail

communication from Timothy O'Brien to Regional Directors, Deputy Regional Directors, and

Gerald McCord of Parole regarding Post-Release Supervision Resentencing Initiative – June

2008, attached Division Directive,  annexed hereto as Exhibit A.

28.     At that time, Parole undertook a review of its files in order to identify parolees for whom Parole records indicated may not have had judicially-pronounced PRS.

29.     Parole did not have in its files sufficient documentation to determine whether a parolee under its supervision had a PRS term that had been judicially pronounced.  Prior to the merger of DOCS and Parole in 2011, when a felony offender was released from DOCS to be supervised by the Division, a facility Parole file would be prepared, which would then be forwarded to the field and become the field Parole file.

30.     In only a very limited number of cases did that field Parole file contain sentencing minutes.

31.     Parole also maintained a central file, in addition to the facility/field Parole file. The Parole central file contained the Sentence and Commitment Order, Pre-Sentence Investigation Report, as well as an Inmate Status Report if the felony offender was going before the Board of Parole to request conditional release, and in rare instances, that file would also contain sentencing minutes.   These documents would be forwarded to Parole from DOCS. Parole did not receive, in the normal course of business, records from the sentencing courts.

32.     Accordingly, Parole had no knowledge of what the sentencing courts had stated on the record at sentencing, including whether a term of PRS had been pronounced by the judge.

33.     In conjunction with its Information Technology staff, the Division determined a method of identifying individuals whose PRS terms may not have been pronounced by the court. In the weeks after Garner and Sparber, Parole undertook a review of parolee files in order to determine whether they contained sentence and commitment orders and sentencing minutes forwarded from DOCS to Parole.  The purpose of this review was to determine whether PRS had been judicially pronounced.

7

34.     If the Division had some indication from its records (received from DOCS) that PRS was on a parolee's Sentence and Commitment order, that file would not be reviewed any further.

35.     Where, however, the Sentence and Commitment Order was silent as to PRS, Parole conducted a more substantial review, which yielded documentation that identified a group of parolees who did not have PRS noted on their Sentence and Commitment Order, or pronounced in the sentencing minutes (if available), but were being supervised or incarcerated based on violations of their PRS.

36.     The goal of Parole's PRS Resentencing Initiative was to refer these parolees to their sentencing courts to determine whether they indeed had a term of PRS as mandated, or if not, whether they should be resentenced to a term of PRS.

37.     At no time was Parole authorized to unilaterally vacate, expunge or otherwise strike a term of PRS of any felony offender or otherwise release a parolee before the applicable ME date in the absence of a court order directing such relief.   Parole understood that only a court of competent jurisdiction could determine whether any individual had been properly sentenced, and only a court could expunge or strike a period of PRS from a parolee's sentence. Accordingly, Parole sought to remit PRS challenges back to the sentencing courts.  Not only did the Division not calculate and recalculate felony offenders' time computations, even DOCS lacked authority to unilaterally amend, modify or vacate a term of PRS.

38.     Also in June of 2008, in addition to the Post-release Supervision Resentencing Initiative and as part of Parole and DOCS' efforts to have releasees with potentially flawed terms of PRS resentenced, DOCS and Parole, along with the State of New York, filed a defendant-class action lawsuit in Albany County.  The suit sought injunctive relief to permit DOCS and Parole to

refer a class of inmates and releasees affected by administratively-imposed PRS terms to courts for resentencing.  However, the Temporary Restraining Order sought by the State was denied on June 6, 2008, and a Preliminary injunction, after a hearing, was denied in June, 2008.  The motion of the putative class of defendant inmates and parolees to dismiss the complaint was ultimately granted on December 24, 2008.  See New York State v. Myers, 22 Misc. 3d 809; 870 N.Y.S.2d 757 (N.Y. Sup. Ct. Albany Cty. 2008).

## III.   JUNE 2008 LEGISLATION REQUIRING RESENTENCING

39.     In June 2008, immediately after the preliminary injunction sought by the State was denied, the New York State Legislature enacted remedial legislation to address the parolees and inmates who had not been properly sentenced under New York State procedural law to terms of PRS.  Included in the legislation was Correction Law § 601-d, which provided, for the first time, for DOCS and Parole to refer inmates or parolees within their jurisdiction who may not have had judicially pronounced PRS terms (deemed "designated persons" by the statute) to their sentencing courts.

40.     Pursuant to § 601-d(2) of the Correction Law, the Division, by letter, brought to the attention of the State's sentencing courts, individuals for whom Parole records indicated may not have been  properly sentenced to PRS.  Parole referred over 3,700 parolees under its supervision who were deemed "designated persons" to their sentencing courts.

41.     The § 601-d letters were required to notify the sentencing courts to take jurisdiction of any parolee who was a "designated person" in order to review the court's records and, where appropriate, resentence that parolee to a term of PRS, or with the consent of the District Attorney, resentence the parolee without a period of PRS.

9

42.     After § 601-d was passed, a joint effort between the Division's operations personnel and Counsel's office took place in order to ensure compliance with the legislation.

43.     In addition, the Division and a representative from the Office of Court Administration ("OCA") discussed compliance with 601-d and the process of sending out 601-d notices.  A Memorandum of Understanding ("MOU") was prepared and agreed upon in July 2008 among DOCS, Parole, and OCA, which outlined what cases would be prioritized in the 601-d process.  See Memorandum of Understanding, dated July 2008, attached as Exhibit C to the Declaration of Michael J. Keane, dated December 23, 2016

44.     Once the courts responded to the notices by taking jurisdiction of the parolees who were "designated persons," Counsel's office would monitor the process and receive form responses from the courts as to whether the parolee had been sentenced or resentenced to a term of PRS, and for what term, or whether the court, upon consent of the District Attorney, had resentenced the "designated person" – the inmate or parolee – without a term of PRS.

45.     Upon receipt of the returned form responses from the courts, I would ascertain whether DOCS, which was charged with making all sentence calculations and entering such computations on computerized systems for use by government agencies, had received a copy of the form as well, and whether an updated time computation had been done for that parolee.

46.     If that recalculated time computation had not been completed, I would notify DOCS, and forward necessary information to DOCS' Office of Sentencing Review.  If PRS had been removed by a court, then Parole would, pursuant to DOCS' recalculation of the sentence, release the parolee from further supervision.

47.     However, there were instances in which, even if PRS had been removed, parolees remained under the Division's jurisdiction.  For example, certain parolees might have been

10

subject to another period of PRS pursuant to a different conviction, and otherwise might have still owed time on their determinate sentences, or might have been sentenced to both determinate and indeterminate sentences.

48.    If I determined that, to the best of my knowledge, an offender was entitled to immediate release from further Parole supervision pursuant to a new Sentence and Commitment order, I would inform, via e-mail, Parole officers and other Division employees in the field that supervision was to be terminated, and would attach the form 601-d and the new Sentence and Commitment Order.

**IV.    RECORDS MAINTAINED BY PAROLE REGARDING PLAINTIFF**

49.    As stated above, at the relevant times, Parole did not receive, in the normal course of business, records from the sentencing courts regarding any of its parolees.

50.    After a thorough inquiry into records maintained by Parole, Parole determined that it did not at any time have the sentencing minutes for Jesus Santiago, the Plaintiff in this action.

51.    DOCCS records indicate that Plaintiff entered the custody of DOCS on April 22, 2004, after having been sentenced to a determinate term of three-and-one-half years for a class C felony, Criminal Possession of a Weapon in the Second Degree. See Department of Corrections and Community Supervision Inmate Information for Jesus Santiago, DIN (Department Identification Number 04-R-1624), http://nysdoccslookup.doccs.ny.gov, attached hereto as Exhibit B.

52.    Parole records indicate that Plaintiff was released from DOCS to Parole supervision on November 7, 2004, after having completed the determinate term of his criminal

sentence, and that the maximum expiration date of his PRS term was then calculated to be November 7, 2009.

53.     Plaintiff left the jurisdiction of Parole and New York State, however, and because of his status as an absconder and as an offender in other jurisdictions, including the federal government, the State of Virginia and Fairfax County, Virginia, Plaintiff's PRS term was suspended and recalculated when he was again available to New York State authorities.

54.     In June 2007, Plaintiff was again available to New York State and the Division of Parole, after having been extradited from the State of Virginia to New York.  See DOCCS "Parolee Chrono Report" for Jesus Santiago, attached hereto as Exhibit C, for the entries for June 12, 2007.

55.     Plaintiff was charged with violations of parole for having, among other things, absconded from Parole and committed other crimes.  After a preliminary and final hearing on those charges, the parole violation charges against Plaintiff were sustained, and he was ordered to return to DOCS to serve a 12-month time assessment.

56.     Plaintiff was again released to parole supervision from DOCS' Gouverneur Correctional Facility on January 31, 2008.  See DOCCS "Parolee Chrono Report" for Jesus Santiago, attached hereto as Exhibit C, for the entry for January 31, 2008.

57.     Plaintiff reported to his Parole Officer in Brooklyn, New York, on February 4, 2008, and was directed to appear again on February 6, 2008.  See DOCCS "Parolee Chrono Report" for Jesus Santiago, attached hereto as Exhibit C, for the entry for February 4, 2008.

58.     Plaintiff failed to report on February 6, 2008, as required, and once again, absconded from Parole and the State of New York.  See DOCCS "Parolee Chrono Report" for Jesus Santiago, attached hereto as Exhibit C, for the entry for February 6, 2008.

59.     Plaintiff had absconded to Virginia and on April 24, 2008, Parole was informed that Plaintiff had been arrested in Virginia on new charges and was being held in that jurisdiction.  See DOCCS "Parolee Chrono Report" for Jesus Santiago, attached hereto as Exhibit C, for the entry for April 24, 2008.

60.     Plaintiff was not available again to New York State authorities until September 14, 2010, when he was extradited from federal prison in West Virginia to Rikers Island in the City of New York.  See DOCCS "Parolee Chrono Report" for Jesus Santiago, attached hereto as Exhibit C, for the entry for September 14, 2010.

61.     Plaintiff again was charged with violations of his parole terms and conditions, among other things, for absconding.

62.     Plaintiff, after his final parole revocation hearing, was again revoked and ordered returned to DOCS to serve a 38-month time assessment.  See DOCCS "Parolee Chrono Report" for Jesus Santiago, attached hereto as Exhibit C, for the entry for October 13, 2010.

63.     Parole was informed that Plaintiff owed two years of prison time to the State of Virginia.  See DOCCS "Parolee Chrono Report" for Jesus Santiago, attached hereto as Exhibit C, for the entry for September 20, 2010.

64.     On September 27, 2010, at the same time his parole violation charges were pending, and just a week after he once again was returned to the jurisdiction of New York, Parole, after a review of his file, referred Plaintiff to his sentencing court for possible resentencing.  At that time, it "appeared to the satisfaction of" Parole that Plaintiff was a designated person whose PRS term could not be definitively confirmed as having been pronounced by the sentencing court in 2004.  In accordance with §601-d, Parole sent notice to

Plaintiff's sentencing court that Plaintiff may require a resentencing hearing. See Notice Pursuant to Correction Law § 601-d, dated 9/27/2010, attached hereto as Exhibit D.

65.     On December 15, 2010, Plaintiff's sentencing court declined to re-sentence him holding that "no period of post release supervision constitutes part of Defendant's sentence." See Post Release Supervision Re-Sentencing Order, dated 12/15/2010, attached hereto as Exhibit E.

66.     Plaintiff was released from DOCS' custody on December 16, 2010.

67.     Plaintiff could not have been released from Parole supervision at any time until the Kings County criminal sentencing court resentenced Plaintiff without PRS.  Even then, he could not be released to the community, as he owed time to the State of Virginia from the time he was returned to New York from federal prison in 2010.

68.     Plaintiff was not referred to his sentencing court at the only other time he was available to the State of New York – the period from June 2007 through January 2008 – because there was no mechanism for DOCS or Parole to refer individuals for resentencing until July 2008 and DOCS and Parole, as State executive agencies, were not authorized to refer individuals in their custody or under their supervision to criminal courts for resentencing.

69.     Based upon my review of PRS litigation, Parole, as a respondent in CPLR Article 70 *habeas corpus* or Article 78 proceedings made applications to those courts to refer PRS matters to the sentencing courts, which were rejected by those courts.  For example, in the *habeas corpus* proceeding of one of the named plaintiffs, Gabriel Belize, in the pending Southern District of New York class action, Betances v. Fischer (No. 11-Civ. 3200) (DAB) (JCF), a Bronx County Supreme Court, on October 10 2008 (see Decision and Order attached as Exhibit F) denied Parole's motion to so refer the matter, finding that the court itself did not have "the authority" to transfer the matter.

14

Defendants In This Action

70. Plaintiff in this action has sued 19 Defendants, current or former DOCCS, DOCS or Parole employees, most of whom, as set forth below, were not involved in PRS matters at the times relevant to this lawsuit – June 2007 through February 2008.

71. Defendants Arroyo, McCartney, McKinney, Fleischman, Paredes, Stevenson, Mason, Johnson, Alvarez and Council are parole officers of various ranks in the Community Supervision field offices of DOCCS throughout the State, and are not involved in the referrals of individuals with PRS terms for resentencing.

72. Defendant Evans served as Chairwoman of Parole from June 2009 to June 2013, Defendant Alexander served as Chairman of Parole from May 2007 to December 2008 and Robert Dennison served as Chairman of Parole from 2004 to April 2007.

73. In addition, three Defendants named are members of the Board of Parole (Kevin Ludlow, Lisa Elovich and Sally Thompson), and their duties are independent of Parole, and were not involved in issues of referrals of individuals with PRS terms for resentencing.

Dated: Albany, New York
December 23, 2016

Steven H. Philbrick

15