UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
JESUS SANTIAGO,

                   Plaintiff,

    -against-

ANDREW M. CUOMO, *et al.*,


                   Defendants.
--------------------------------X

**MEMORANDUM AND ORDER**

12-cv-2137 (KAM) (ST)

**MATSUMOTO, United States District Judge:**

        Plaintiff Jesus Santiago alleges that state officials and officers violated his civil rights when they enforced a term of post-release supervision ("PRS") that had been administratively added to a custodial sentence.  Before the court are the parties' cross-motions for summary judgment, as well as the defendants' motion to dismiss plaintiff's § 1983 claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated below, the court grants in part and denies in part the parties' motions for summary judgment.  The court partially grants defendants' motion for summary judgment and dismisses all defendants except Anthony J. Annucci, Brian Fischer, and Terrence X. Tracy, and dismisses plaintiff's state law claims for lack of jurisdiction.  The court denies defendant's motion for summary judgment for defendants Annucci, Fischer, and Tracy for the period June 12, 2007 to February 6,

2008.  The court grants plaintiff's motion for summary judgment on the liability of defendants Annucci, Fischer, and Tracy for the period June 12, 2007 to February 6, 2008.

**Background**

**A.   Litigation Concerning Post-Release Supervision**

This is the rare case in which many of the issues presented by the parties have been extensively litigated before other district courts in New York, and before the Second Circuit.  *See, e.g.*, *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) ("*Earley I*"), *reh'g denied*, 462 F.3d 147 (2d Cir. 2006) ("*Earley II*"); *Vincent v. Yelich*, 718 F.3d 157, 173 (2d Cir. 2013); *Betances v. Fischer* ("*Betances II*"), 837 F.3d 162, 165 (2d Cir. 2016).  The court refers to those decisions for a detailed discussion of the factual and legal issues surrounding the administrative imposition of PRS, and highlights only the key holdings applicable to this action.

Jena's Law, enacted in 1998 and codified in part as New York Penal Law Section 70.45(1), mandated that "[e]ach determinate sentence [of incarceration] also includes, as a part thereof, an additional period of post-release supervision." N.Y. Penal Law § 70.45(1) (2005).  Despite Jena's Law, the Second Circuit has noted that "some [State] judges did not pronounce PRS terms during sentencing proceedings" and

"[i]nstead of bringing the failure to the attention of the sentencing court, [the Department of Correctional Services ("DOCS")] simply added the PRS term administratively." *Betances II*, 837 F.3d at 165.  In such cases, "the inmates began to serve their PRS terms under [Division of Parole ("DOP")] supervision," and "DOCS and DOP were authorized to reincarcerate an offender who, after a hearing, was found to have violated the conditions of release."  *Id.*

In 2006, in *Earley I*, upon a habeas petition, the Second Circuit concluded that "the Constitution forbids DOCS from modifying a sentence imposed by a judge," including in cases where DOCS had administratively modified a sentence to add a period of PRS where such a term was mandated by Section 70.45(1), but had not been imposed by a sentencing judge.  *Id.* (citing *Earley I*, 451 F.3d at 74-76).  The Second Circuit declared any term of PRS administratively added to a sentence but not imposed by a judge to be a "nullity," *id.* at 166 (citing *Earley I*, 451 F.3d at 76), and remanded the case for the district court's determination of whether Earley's habeas petition was timely.  If so, the district court was to "issue a writ of habeas corpus excising the term of post-release supervision from Earley's sentence and relieving him of any

subsequent penalty or other consequences of its imposition."
*Id.* (citing *Earley I*, 451 F.3d at 76-77.)

Notwithstanding *Earley I*, however, "[state] courts were inconsistent in adhering to *Earley I's* holding," and officials at the DOCS and DOP did not take "significant steps towards compliance with *Earley I*" until 2008, when the New York Court of Appeals ruled in *People v. Sparber* and *Garner v. New York State Dep't of Corr. Svs.* that "state law required [a sentencing] judge to pronounce the term of PRS orally at sentencing." *See Betances*, 837 F.3d at 167, 169 (describing Court of Appeals decisions in *Sparber*, 889 N.E.2d 459 (N.Y. 2008) and *Garner*, 889 N.E. 2d 467 (N.Y. 2008)). Also in 2008, the New York legislature "codified a process for resentencing individuals with unpronounced PRS terms," which "required DOCS and DOP to notify courts if they had custody of or supervision over a defendant with an administratively imposed PRS term and permitted the sentencing court . . . to resentence the defendant . . . ." *Id.* at 170 (describing New York Correction Law § 601-d).

The Second Circuit concluded that administrative imposition of PRS was not clearly unlawful for qualified immunity purposes until the Second Circuit's decision in *Early II*, which denied defendant's motion for rehearing, on August 31,

2006.  *Id.* at 172.  After *Early II*, however, state officials
were on notice that the practice of non-judicial PRS was
unconstitutional, and "the State was required either to have
[persons on whom PRS had been imposed administratively]
resentenced by the court for the imposition of PRS terms in a
constitutional manner or to excise the PRS conditions from their
records and relieve them of those conditions."  *Vincent*, 718
F.3d at 172; *see Santiago v. Fischer*, 09-cv-1383, 2016 WL
1118448, at *5 (E.D.N.Y. Mar. 21, 2016) (discussing the
distinction between the holdings in *Scott v. Fischer* and *Vincent
v. Yelich*).  The Second Circuit also made clear that DOCS had a
"constitutional obligation to at least attempt to cease its
administrative and custodial enforcement of PRS terms that had
been held unlawful under *Earley I*."  *Betances II*, 837 F.3d at
171 (quoting *Vincent*, 718 F.3d at 172-73) (internal quotation
marks omitted).  In *Betances II*, the Second Circuit determined
that Anthony J. Annucci, at relevant times the Executive Deputy
Commissioner of and Counsel to DOCS, Brian Fischer, the
Commissioner of DOCS, and Terence X. Tracy, the Chief Counsel
for DOP, "were responsible for designing and implementing their
departments' response to *Earley I*," but "did not make an
objectively reasonabl[e] effort to relieve [plaintiffs] of the
burdens of those unlawfully imposed terms after [they] knew it

had been ruled that the imposition violated federal law," and,
therefore, were not entitled to qualified immunity.  *Id.* at 167,
174 (internal quotation marks and citations omitted).

## A.    Plaintiff's PRS Term

On April 22, 2004, plaintiff entered DOCS custody on a
sentence of three-and-one half years confinement for a class C
felony of Criminal Possession of a Weapon in the Second Degree.
(*See* Declaration of Steven H. Philbrick ("Philbrick Decl."), ECF
81 at ¶ 51; Sentence and Order of Commitment, ECF No. 12-3
(original sentence of January 2, 2002, indicating *nunc pro tunc*
sentence received by DOCS on April 22, 2004).)  The sentencing
judge did not impose a term of post-release supervision on
plaintiff.  (Sentence and Order of Commitment; Re-sentencing
Order of Dec. 15, 2010 ("Re-sentencing Order"), Philbrick Decl.
Ex. E at 1 (reviewing original sentencing records.))
Nevertheless, on November 7, 2004, after completing his sentence
of imprisonment, Mr. Santiago was released to DOP custody to
begin a five-year period of PRS.  (Philbrick Decl. at ¶ 52.)  In
2005, Mr. Santiago left New York state and was deemed to have
absconded from parole.  (*Id.* at ¶ 53; Declaration of Craig
Mausler, ECF No. 90 at ¶¶ 2-3, Ex. A at 1.)  On April 3, 2007,
DOP was notified that Mr. Santiago had been arrested in Virginia

on "local charges."  (Parolee Chrono Report ("Chrono Report"),
Philbrick Decl. Ex. C at 15.)

On June 12, 2007, Mr. Santiago waived extradition and
was transferred from Virginia to New York.  (*Id.* at 14.)
Mr. Santiago was charged with violating the terms of his parole,
and was returned to DOCS supervision to serve a 12-month
"assessment" in custody.  (Philbrick Decl. at ¶ 55.)

Mr. Santiago was released to parole supervision on
January 31, 2008.  (*Id.* at 56; Chrono Report at 12.)
Mr. Santiago failed to report to his parole officer on February
6, 2008 and was deemed to have absconded.  (Chrono Report at
12.)  DOP was notified on April 23, 2008 that plaintiff had been
arrested in Virginia.  (Philbrick Decl. at ¶ 59; Chrono Report
at 10.)

Mr. Santiago was transferred from Virginia state
custody to federal custody in West Virginia on February 22,
2010, pursuant to a federal detainer.  (Chrono Report at 3
(entry for May 17, 2010.))  He was extradited from federal
prison in West Virginia to New York on September 14, 2010.  (*Id.*
at 2)  On October 1, 2010, Mr. Santiago's parole was revoked for
violating his PRS conditions, and he was ordered to serve a 38-
month custodial term.  (Philbrick Decl. at ¶ 62; Chrono Report
at 1.)  On September 27, 2010, DOP referred plaintiff to King's

County Supreme Court for possible resentencing, having determined that plaintiff's "original sentence and commitment document . . . contained no reference to a period of PRS" and that Parole did not "have a copy of the sentencing minutes within its files to confirm whether the period of PRS was pronounced by the Court at the time of sentencing."  (Notice Pursuant to Correction Law 601-d, Philbrick Decl. Ex. D at 1.)  On December 15, 2010, the King's County Supreme Court declined to resentence plaintiff, because the court concluded that there had been "no discussion or agreement concerning post release supervision as part of the Defendant's sentence reflected anywhere in the [initial sentencing] proceedings[.]" (Resentencing Order at 1.)  Plaintiff was released from DOCS custody on December 16, 2010, but owed time to the State of Virginia from the time he was returned to New York from Virginia in 2010.  (Philbrick Decl. ¶¶ 63, 67.)

**B.   Procedural History**

Plaintiff filed his initial complaint on May 1, 2012, and an amended complaint on June 4, 2012.  The action was stayed pending the Second Circuit's ruling in *Betances v. Fischer*, which was issued on June 4, 2013, and which affirmed the district court's denial of a motion to dismiss.  *Betances v. Fischer* ("*Betances I*"), 519 Fed. App'x 39, 41 (2d Cir. 2013)

(summary order) (consolidating appeal with *Vincent*, 718 F.3d at

157, and denying motion to dismiss on grounds of qualified

immunity).  The parties in the instant action filed motions for

summary judgment, which were fully briefed on July 27, 2015.

This court terminated those motions pending the Second Circuit's

decision on the appeal of the summary judgment in *Betances*.  On

September 16, 2016, the Second Circuit issued its ruling in

*Betances II*, and this court ordered briefing on the instant

motions.

**STANDARD OF REVIEW**

Summary judgment is proper only when, construing the

evidence in the light most favorable to the non-movant, "the

movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Div. of Parole*, 678

F.3d 166, 174 (2d Cir. 2012).  The role of the court is "not to

weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial." *Cioffi

v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162

(2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 249 (1986)) (internal quotation marks omitted).  "A

genuine issue of fact for trial exists where there is 'evidence

on which the jury could reasonably find for'" the non-moving

party.  *Id.* (quoting *Liberty Lobby*, 477 U.S. at 252).  To defeat
a motion for summary judgment, the non-movant must identify
probative evidence on the record from which a reasonable
factfinder could find in its favor.  *Liberty Lobby*, 477 U.S. at
256-57.  That is, the non-movant must make a showing of
sufficient evidence of a "claimed factual dispute as to require
a judge or jury's resolution of the parties' differing versions
of the truth."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F.
Supp. 2d 454, 468 (S.D.N.Y. 2011) (citing *Kessler v. Westchester
Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006)).
Summary judgment "therefore requires the nonmoving party to go
beyond the pleadings and by her own affidavits, or by the
depositions, answers to interrogatories, and admissions on file,
designate specific facts showing that there is a genuine issue
for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)
(internal quotation  marks omitted).

### APPLICABLE LAW

**A. Section 1983**

        To state a claim under § 1983, a complaint must allege
that a state actor, or a private party acting under color of
law, "deprived the plaintiff of a right guaranteed under the
Constitution of the United States."  *Snider v. Dylag*, 188 F.3d
51, 53 (2d Cir. 1999) (citation omitted).  "Section 1983 is not

itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citations omitted).

"[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia,* the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven,* 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted); *see Betances v. Fischer*, 144 F. Supp. 3d 441, 456 (S.D.N.Y. 2015), *aff'd* 837 F.3d 162 (2d Cir. 2016).  A plaintiff can establish that a defendant was personally involved in a constitutional deprivation by, *inter alia*, showing that the defendant created a "policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995)).[1]

---

[1] The Second Circuit has recognized that *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), may have limited certain aspects of *Colon* by "heighten[ing] the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations." *Grullon*, 720 F.3d at 139.  As other district courts in the Second Circuit have concluded, *Iqbal* does not disturb *Colon's* rule that a defendant may be liable under § 1983 for creating, or allowing the continuation of, an unconstitutional policy or custom. *Betances*, 144 F. Supp. 3d at 449 n.48; *Hill v. Laird*, No. 06-CV-0126(JS)(ARL), 2016 WL 3248332, at *6 (E.D.N.Y. June 13, 2016) (listing cases); *Spear v. Hugles,* No. 08 Civ. 4026, 2009 WL 2176725, at *2 (S.D.N.Y.

**B. Qualified Immunity**

On summary judgment, qualified immunity is denied to
a government official "if (1) the facts taken in the light most
favorable to the officials establish a violation of a
constitutional right; and (2) the officials' actions violated
clearly established . . . rights of which a reasonable person
would have known." *Betances II*, 837 F.3d at 171 (internal
quotation marks and citations omitted); *Taylor v. Barkes,* 135 S.
Ct. 2042 (2015) ("Qualified immunity shields government
officials from civil damages liability unless the official
violated a statutory or constitutional right that was clearly
established at the time of the challenged conduct." (quoting
*Reichle v. Howards*, 131 S. Ct. 2088, 2093 (2012)).  To be
"clearly established," "existing precedent must have placed the
statutory or constitutional question beyond debate." *Reichle*,
131 S. Ct., at 2093 (internal citations and quotations omitted);
*Anderson v. Recore,* 317 F.3d 194, 197 (2d Cir. 2003) (holding
that a right is clearly established if, *inter alia*, "the Supreme
Court or the Second Circuit has recognized the right").  Where a
clearly established right is violated, officials may nonetheless
be entitled to qualified immunity "if [] it was objectively
reasonable for them to believe their acts did not violate those

---

July 20, 2009) (stating that the "policy or custom" factor from
*Colon* has survived *Iqbal*)

rights." *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (internal quotation marks and citations omitted).

"Defendants bear the burden of establishing qualified immunity." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (citing *Vincent*, 718 F.3d at 166).

"If there is no dispute as to the material historical facts, the matter of whether the officer's conduct was objectively reasonable is an issue of law to be determined by the court." *Zellner*, 494 F.3d at 367 (citations omitted); *Taravella v. Town of Wolcott,* 599 F.3d 129, 134 (2d Cir. 2010) ("[A] conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts") (internal quotation marks and citations omitted).

**DISCUSSION**

This decision proceeds by first addressing whether plaintiff has made a cognizable claim under § 1983.  Next, the court addresses the parties' arguments about whether, if such a claim exists, plaintiff has sufficiently demonstrated the "personal involvement" of each defendant.  After concluding that all defendants but Annucci, Fischer, and Tracy must be dismissed for lack of personal involvement, the court turns to the parties' arguments concerning personal involvement and qualified

immunity for those three defendants.  Finally, the court
addresses plaintiff's state law claims, concluding that it does
not have jurisdiction over those claims.

## I.  Plaintiff's § 1983 Claim[2]

Defendants argue that they are entitled to summary
judgment on plaintiff's claim under § 1983 because defendants
acted in an objectively reasonable manner, and because plaintiff
"suffered no injury."  (Memorandum of Law in Support of
Defendants' Motion Pursuant to Fed. R. Civ. P. Rules 12(b)(6)
and 56 ("Def. Mot.") at 11, 13.)  Conversely, plaintiff moves
for summary judgment on the ground that the administrative
imposition and enforcement of PRS was unconstitutional
subsequent to *Earley I.*

### A. False Imprisonment

"A Fourth Amendment claim of false imprisonment
brought under 42 U.S.C. § 1983 is substantially the same as a
false imprisonment claim under New York State law . . . .  To

---

[2] In his Amended Complaint, plaintiff alleges a deprivation of
civil rights pursuant to § 1983, but also references 18 U.S.C.
§§ 1985(2) – (3) and 1985, which create causes of action for,
*inter alia*, conspiracies to obstruct justice and to deprive a
person of rights or privileges, and negligence for failure to
prevent such conspiracies.  (Amended Complaint ("Am. Compl."),
ECF No. 12, ¶ 83. (citing 18 U.S.C. §§ 1985 (2), (3), 1986.))
Plaintiff does not appear to allege a conspiracy in the Amended
Complaint, and does not address any conspiracy claims in his
moving papers.  The court therefore proceeds by analyzing this
claim under § 1983.

state a claim for false imprisonment, a plaintiff must allege: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Greenaway v. Cty. of Nassau*, 97 F. Supp. 3d 225, 233 (E.D.N.Y. 2015) (quoting *Weyant v. Okst*, 101 F.3d 845, 852-53 (2d Cir. 1996).  Probable cause is a complete defense to a claim of false imprisonment.  *Id.*

Defendants argue that their conduct was privileged, citing the New York State Court of Appeals decision *Donald v. State* for the proposition that DOCS's actions after *Earley* were "objectively reasonable."  (Def. Mot. at 11-12 (citing *Donald*, 17 N.Y.3d 389, 396 (2011).)  Defendants, however, mischaracterize *Donald*, which is a case concerning the immunity of New York State.  *See Donald*, 17 N.Y.3d at 395-96 (explaining that DOCS's exercise of discretion in the wake of *Earley*, even if "mistaken[]," "cannot be a basis for state liability.").  *Donald* does not stand for the proposition that the actions of individual defendants – specifically Annucci, Fischer, and Tracy – were "objectively reasonable," and it is therefore inapposite.  Furthermore, as discussed further below, the Second Circuit has already determined that these same three officials acted in an objectively unreasonable manner as a matter of law in rejecting

the defendants' qualified immunity defense in *Betances II*. *See*
837 F.3d at 174. Defendants' enforcement of administrative PRS
on plaintiff was therefore not privileged. *See Bentley v.
Dennison*, 852 F. Supp. 2d 379, 398 (S.D.N.Y. 2012) (concluding
that because it was "objectively unreasonable of defendants to
continue enforcing administrative PRS without seeking
resentencing for two years after *Earley*, defendants' re-
incarceration of plaintiffs was not privileged" for purposes of
a false imprisonment claim).

        Defendants also argue that plaintiff cannot make out a
false imprisonment claim because defendants could not
"unilaterally release" plaintiff without "judicial
intervention," and because until June 2008, there was no "formal
mechanism to refer individuals for resentencings." (Def. Mot.
at 2, 12.) Plaintiff, however, does not simply claim that
defendants should have "unilaterally release[d]" him, but rather
that "defendants failed to seek to remove Santiago's PRS or have
him resentenced or otherwise released after the issuance of
*Earley*." (Am. Compl. at ¶ 77.) As the Second Circuit made
clear in *Betances II*, whether or not there was a "formal
mechanism" to initiate resentencing, "the decision to
review . . . records and notify state judges and district
attorneys about defendants who needed to resentenced required no

cooperation from others.  If the district attorneys and judges ultimately rejected compliance, the resentencings would not have taken place, but the defendants would have satisfied their obligation . . . ."[3]  837 F.3d at 174.  Thus, liability in this case is not premised on defendants' failure to unilaterally release plaintiff, but rather their failure to "make an objectively reasonabl[e] effort to relieve plaintiffs of the burdens" of administratively-imposed terms of PRS, despite knowing that these terms "violated federal law."  *Id.* (internal quotation marks and citations omitted).

## B.  Due Process

Defendant argues that plaintiff cannot make out a "compensable" due process claim because he "suffered no injury from any delay in referring him for resentencing," again emphasizing that "at no time was he entitled, as a matter of due process, to be relieved of PRS."  (Def. Mot. at 13-14.) Defendants argue that "at most" their "conduct resulted in only nominal injury to Plaintiff." (*Id.* at 13.)  As discussed, however, the issue is not whether or not plaintiff was "entitled . . . to be relieved of PRS," as defendants assert. Rather, plaintiff claims that he suffered a compensable harm

---

[3] As discussed *infra*, in *Betances II* the Second Circuit was specifically addressing the obligations of Annucci, Fischer, and Tracy, who are also defendants to this action.

from defendants' failure to refer plaintiff for resentencing,
from defendants' active enforcement of an unconstitutional term
of PRS, which resulted in, *inter alia*, his extradition from
Virginia, charges that he violated the terms of his parole, his
incarceration in New York from June 2007 to January 31, 2008,
and return to New York parole supervision by February 1, 2008.
(*See* Am. Compl.)  Furthermore, defendants' argument that
plaintiff suffered no compensable harm ignores the possibility
that had defendants referred plaintiff for resentencing when he
was returned to DOC custody in 2007, the King's County Supreme
Court may have chosen not to impose a term of PRS.  Indeed, when
plaintiff was eventually referred for resentencing in 2010, the
court declined to impose a PRS term and released plaintiff.
(Resentencing Order at 1.)  A jury might well conclude that
plaintiff suffered a compensable injury on these facts, and
plaintiff has raised a triable issue of material fact on this
issue.  Similarly, defendants' claim that plaintiff failed to
mitigate his damages because he did not seek relief while
incarcerated goes to the triable issue of damages, and not
liability.  (*See* Def. Mot. at 14.)

## II.  PERSONAL INVOLVEMENT AND QUALIFIED IMMUNITY

The Amended Complaint names as defendants twenty-four
individuals in the caption, as well as unidentified "John Doe"

plaintiffs.  (Am. Compl. at p. 1.)  An additional defendant,
Mark Mentei, is named in the body of the Complaint, but is not
listed in the caption.[4]  (*Id.* at ¶ 9.)

Plaintiff moves for summary judgement against
defendants George B. Alexander, Anthony J. Annucci, Robert J.
Dennison, Anthony G. Ellis II, Andrea W. Evans, Brian Fischer,
Glenn S. Goord, Lucien J. LeClaire, Jr., Kevin G. Ludlow, Mark
Mentei, and Sally A. Thompson, all either officials or employees
of DOCS or DOP.  (Plaintiff's Memorandum of Law in Support of
Motion for Summary Judgment ("Pl. Mot."), ECF No. 78-2 at 1.)
With few exceptions, however, plaintiff's only reference to the
foregoing defendants is in the Amended Complaint, which merely
repeats the generic allegation that each defendant, regardless
of seniority, "was and is responsible for establishing and
enforcing DOCS's and DOP's policies with respect to PRS."  (*See*
Am. Compl. at pp. 3-5.)

Defendants move to dismiss plaintiff's claims against
defendants Ludlow, Elovich, Thompson, Arroyo, McCartney,
McKinney, Fleishman, Paredes, Stevenson, Mason, Johnson,

---

[4] There is no record that Mentei, who is identified in the
Amended Complaint as "Executive Director of DOP," was ever
served.  (*See* ECF Nos. 3, 4, 14 (entries regarding issuance of
summons.))  Defendants claim that Corrado, Zunno, LeClaire,
Goord, and Ellis were not served (*see* Def. Mot. at 2-3), but
summons issued for all five defendants (*see* ECF No. 14), and
Zunno returned an executed Waiver of Service (ECF No. 34).

Alvarez, Council, Corrado, and Zunno, on the grounds that these individuals were "non-policymaking" employees of the Division of Parole and that plaintiff has not alleged sufficient facts to show that these individuals were personally involved in any deprivation of constitutional rights.  (Def. Mot. at 2-3, 15.) In addition, defendants argue that certain members of the Board of Parole or parole supervisors[5] are entitled to absolute immunity to the extent they are being sued in their official capacities.  (Def. Mot. at 19.)

Defendants also argue that the other individual defendants, specifically Fischer, Annuci, LeClaire, Goord, Evans, Alexander, Tracy, Dennison, and Ellis, should be dismissed for lack of personal involvement, and further that "Evans and Alexander should be dismissed because they did not serve at any time relevant to the claims Plaintiff raises in this lawsuit."  (Def. Mot. at 3.)  Finally, defendants argue that any defendant deemed to have been personally involved in a constitutional violation should be entitled to qualified immunity.  (Def. Mot. at 17.)

For the reasons described below, the court dismisses this action as to all defendants except Annucci, Fischer, and Tracy for lack of personal involvement.

---

[5] Specifically, defendants Ludlow, Elovich, Thompson, Arroyo, McCartney, McKinney, Fleishman, Paredes, and Stevenson.

**A.   Goord and LeClaire**

In the Amended Complaint, plaintiff describes
defendant Glenn S. Goord as the "Commissioner of DOCS from 1996
to August 30, 2006," and defendant Lucien J. LeClaire, Jr., as
the "Acting Commissioner of DOCS from August 30 to December 31,
2006." (Am. Compl. at ¶¶ 5-6.)   As commissioner and acting
commissioner of DOCS, Goord and LeClaire would have had
supervisory authority over DOCS's policies. *Betances*, 144 F.
Supp. 3d at 456 ("As commissioners, [Goord and LeClaire] had the
ultimate authority over DOCS policies.").   Nevertheless, "a
defendant's supervisory authority is insufficient in itself to
demonstrate liability under § 1983.   A defendant's personal
involvement may be shown by evidence that," *inter alia*, "the
defendant created a policy or custom under which
unconstitutional practices occurred, or allowed the continuance
of such a policy or custom." *Santiago*, 2016 WL 1118448, at *4
(citing *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012);
*Grullon*, 720 F.3d at 139).   In his summary judgment submissions,
plaintiff has not submitted any evidence concerning the personal
involvement of Goord or LeClaire in shaping DOCS policy
subsequent to *Earley I*.   Furthermore, *Earley I* was issued on
June 9, 2006, and rehearing was denied in *Earley II* on August
31, 2006, the day after LeClaire replaced Goord as Acting

Commissioner of DOCS. Plaintiff has not submitted evidence, or even alleged, that Goord was even aware of the *Earley* litigation in the approximately three-month period between the Second Circuit's decision in *Earley I* and his replacement by LeClaire. Nor has plaintiff alleged that LeClaire was aware of, or involved in, any policy response to *Earley I* during the four-month period during which he served as Acting Commissioner of DOCS.

As Judge Scheindlin noted in granting summary judgment for Goord and LeClaire in *Betances*, "[a]t best . . . a reasonable jury could find that Goord and LeClaire were negligent in failing to take action to prevent a constitutional injury. Negligence, however, is not sufficient to support section 1983 liability for a due process violation." *Betances*, 144 F. Supp. 3d at 456. Goord and LeClaire are therefore dismissed from this action.

## B. Ludlow, Elovich, Thompson, and Mason

In his Rule 56.1 Statement, plaintiff asserts that "[d]efendants Ludlow, Elovich and Thompson conducted a conditional release-parole violation [] interview of Santiago" and that "defendant Mason is also listed." (Plaintiff's Statement of Material Facts in Support of Summary Judgment ("Pl. 56.1"), ECF No. 78-1 at ¶ 12.) In violation of Local Rule

56.1(d), plaintiff fails to cite to any evidence or source concerning this interview, but he may be referencing a February 4, 2008 Parole Board Release Notice for Mr. Santiago, listing DOP Commissioners Ludlow, Elovich, and Thompson. (Am. Compl. at ¶¶ 14-16, 23; Parole Board Release Notice, ECF No. 12-14 at 2.) Even inferring that, as DOP Commissioners, defendants Ludlow, Elovich, and Thompson may have had some policy-making role, plaintiff does not introduce any evidence – or make detailed allegations – concerning the nature and extent of their involvement, if any, in developing policies to respond to *Earley I*.  As with defendants Goord and LeClaire, plaintiff has failed to point to any evidence from which a fact-finder could conclude that Ludlow, Elovich, and Thompson were personally involved in a deprivation of plaintiff's constitutional rights. Nor does plaintiff explain how defendant Mason, a Parole Officer, would have been engaged in policy-making, or why his mere presence at an interview with plaintiff would present a question of fact concerning his liability for a violation of plaintiff's rights.  The plaintiff's vague and conclusory allegations are therefore insufficient to show the personal involvement of defendants Ludlow, Elovich, Thompson, and Mason, which would be required to defeat a motion for summary judgment. *See Betances*, 144 F. Supp. 3d at 456 (discussing a similar

deficiency in the *Betances* plaintiffs' case with regard to Goord and LeClaire.)  The defendants' motion for summary judgment as to defendants Ludlow, Elovich, Thompson, and Mason is granted, and the claims against these defendants are dismissed.

## C.   **Evans, Alexander, and Dennison**

Defendants argue that Andrea W. Evans, identified in the Amended Complaint as "Chairwoman and Chief Executive Officer of DOP" (Am. Compl. at ¶ 8), should be dismissed for lack of personal involvement, and also assert that she "did not serve at any time relevant to the claims Plaintiff raises in this lawsuit" (Def. Mot. at 3).  Evans served as the Chairwoman of Parole from June 2009 to June 2013.  (Philbrick Decl. at ¶ 72.) Defendants, however, also identify her as a "policy-making official[]" from June 2007 and February 2008, the period during which plaintiff served a custodial term for violating his unconstitutional administratively-imposed term of PRS.  (*See* Def. Mot. at 16.)  Robert Dennison and George Alexander were Evans's predecessors, serving as Chairman of Parole from 2004 to April 2007 and from May 2007 to December 2008, respectively. (Philbrick Decl. at ¶ 72.)  Although the court might infer that the Chairwoman or Chairman of DOP would be involved in policymaking, plaintiff has not submitted any evidence that would enable a fact-finder to determine that Evans, Alexander,

or Dennison was personally involved in a constitutional

deprivation.[6]  *See Betances*, 144 F. Supp. 3d at 456 (granting

summary judgment for certain defendants, including Evans,

Alexander, and Dennison, because plaintiffs similarly failed to

"offer . . . evidence of any personal involvement").  Given the

lack of clarity and evidence as to the specific role Evans,

Alexander, or Dennison played during the relevant period, the

court will grant these defendants summary judgment and dismiss

all three from this action.

**D.   Additional DOP Officials and Officers**

Defendants Arroyo, McCartney, McKinney, Fleishman,

Paredes, Stevenson, Johnson, Alvarez, Council, Corrado, Mentei,

Ellis, and Zunno are DOP officials or Parole Officers.  Aside

from the generic allegation that each of these individuals,

regardless of seniority, was "responsible for establishing and

enforcing DOCS's and DOP's policies with respect to PRS,"

plaintiff does not explain how they were personally involved in

---

[6] In *Hassell*, another case involving an administratively-imposed
term of PRS, Judge Hellerstein of the Southern District denied
Evans' motion for a judgment on the pleadings.  *Hassell v.
Fischer*, 96 F. Supp. 3d 370 (S.D.N.Y. 2015), *appeal pending*, No.
16-2835 (2d Cir. 2017).  The plaintiff in *Hassell* alleged that
Evans, along with others, was involved in the DOP's policy
response to *Earley I*.  *Id.* at 374.  In contrast to the instant
motion for summary judgment, however, on a motion for judgment
on the pleadings, the allegations in a complaint are taken as
true*.  See id.*

violating his constitutional rights, or even whether any individual was aware of *Earley I* and involved in the DOP's policy response.[7]  *See Betances*, 144 F. Supp. 3d at 456 (granting summary judgment to Evans, Mentei, Dennison, Ellis, and Alexander on the same grounds).  The court grants summary judgment to defendants Arroyo, McCartney, McKinney, Fleishman, Paredes, Stevenson, Johnson, Alvarez, Council, Corrado, Mentei, Ellis, and Zunno.

## E.   Fischer, Annucci, and Tracy

In *Betances II*, the Second Circuit affirmed the district court's conclusion that Fischer, Annucci, and Tracy "did not make an objectively reasonable effort to relieve plaintiffs of the burdens of those unlawfully imposed [PRS] terms after they knew it had been ruled that the imposition violated federal law."  *Betances II*, 837 F.3d at 174. Notwithstanding *Betances II*, and just as they unsuccessfully argued in that case, Fischer, Annucci, and Tracy contend that they are entitled to summary judgment, first because plaintiff

---

[7] Certain defendants made entries on Mr. Santiago's Parolee Chrono Report, but such entries, without more, would give a factfinder no basis on which to conclude that these officers were involved in the DOP's policy response to *Earley I* or were even aware of the decision and its implications for parolees such as Mr. Santiago.  (*See* Chrono Report, including entries authored by or referencing Officers Paredes, Council, Arroyo, and Zunno.)

has not established their personal involvement in any
constitutional violation, and second because they are entitled
to qualified immunity.  (Def. Mot. at 17-18; *see Betances*, 144
F. Supp. 3d at 450.)

    1. Personal Involvement

        Although plaintiff's submissions are non-specific and
vague as to the policy-making involvement of any named defendant
except Annuci,[8] this is the unusual case in which the Second
Circuit has already summarized the facts relevant to, and
addressed the precise issue presented by, the defendants'
summary judgment motion: whether they "were responsible for
designing and implementing their departments' response to *Earley
I*." *Betances II*, 837 F.3d at 167.  In affirming the district
court's grant of summary judgment on liability against Annucci,
Fischer, and Tracy, the Second Circuit described the roles
played by these three defendants, and implicitly concluded that
they participated in creating policies or customs "under which

---

[8] Plaintiff simply asserts that "the record leaves no doubt that
Annucci, Fischer, and Tracy were personally deeply involved in
designing, authorizing, and overseeing the DOCS and DOP policies
that violated plaintiff's rights." (Pl. Opp. at 5.)  The only
document plaintiff cites for support is an affirmation submitted
by Annucci in connection with a June 4, 2008 application for a
temporary restraining order and preliminary injunction to enable
the DOCS and DOP to "maintain . . . continued custody or
supervision" of individuals who were serving terms of
administratively-imposed PRS terms.  (Affirmation of Anthony
Annucci ("Annucci Aff."), ECF No. 12-1 at ¶ 4.)

unconstitutional practices occur[ed], or allow[ed] such practices to continue." *See Betances*, 144 F. Supp. 3d at 449, 454-55 (describing personal involvement standard and concluding that Annucci, Fischer, and Tracy were personally involved in DOCS and DOP's policy response to *Earley I*); *Santiago*, 2016 WL 1118448, at *4 (citing *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013)) (describing standard for personal involvement in another PRS case). Specifically, the Second Circuit explained that "[t]he three defendants became aware of *Earley* I's holding at different times," and noted that Annucci, despite "immediately under[standing] *Earley I*'s holding . . . deliberately refused to change DOCS procedures to bring them into compliance." *Betances II*, 837 F.3d at 167, 171. In fact, "[i]n August 2006, Annucci emailed DOCS personnel to inform them that . . . DOCS would not follow" *Earley I*. *Id.* In early 2007, Annucci arranged for DOCS personnel to manually review inmate files to determine whether sentencing and commitment orders reflected PRS terms, and flagged those that did not. *Id.* at 169. Despite obtaining this information, Annucci did not take steps to remove administrative PRS terms, or to seek resentencing, until after the New York State Court of Appeals decisions in *Garner* and *Sperber* in April 2008. *Id.* at 167-169; (Annucci Aff. at ¶¶ 39-40 (describing review process)).

Fischer, as Commissioner of DOCS, "understood *Earley I's* holding and agreed with Annucci's decision not to follow its holding." *Betances II*, 837 F.3d at 167.  In fact, on July 2, 2007, Fischer directed Annucci to respond to an inmate who asked about his term of administratively-imposed PRS, and Annucci explained that *Earley* was "contrary to state appellate case law," and that "[w]hen state and federal courts reach different results regarding state law, the state case law takes precedence over federal case law in state court" until the Supreme Court addresses the issue.  (July 2, 2007 Letter from Annucci to Smith, ECF No. 12-12 at 1-2.)  With regard to defendant Tracy, the Second Circuit, in *Betances*, citing extensively from Tracy's deposition testimony in which he stated that he became aware of and understood *Earley I* in late 2006, concluded that Tracy had "affirmatively decided to continue DOP's former approach," whereby DOP would not investigate whether it was supervising a parolee with an administrative PRS term, "in contravention of *Earley I*."  *Betances II*, 837 F.3d at 168, 171.

     2. Qualified Immunity

       This court also concludes that Annucci, Fischer, and Tracy are not entitled to qualified immunity for the period June 12, 2007 to February 6, 2008, during which time New York exerted control over plaintiff through the extradition process for a

parole violation, plaintiff's confinement, and release into
parole supervision, as a result of defendants' inaction.
"Defendants bear the burden of establishing qualified immunity."
*Garcia*, 779 F.3d at 92 (citing *Vincent*, 718 F.3d at 166).

The Second Circuit has already concluded that the
"unconstitutionality of the administrative imposition or
enforcement of postrelease conditions that were not judicially
imposed" was "clearly establish[ed]" by *Early I*, which was
decided on June 9, 2006.  *Vincent*, 718 F.3d at 160.  The Second
Circuit has also established that, even in the light most
favorable to the defendants, Annucci was aware of *Earley* and its
implications by June 20, 2006 at the latest, Fischer by January
31, 2007 and Tracy by December 31, 2006,[9] but none of the
defendants took "meaningful steps to bring their departments
into compliance with *Earley I*" until 2008.  *Betances II*, 837
F.3d at 172-73.  The Second Circuit determined that this delay

---

[9] The court also noted that although Annucci understood *Earley I*
when it was decided on June 20, 2006, he could reasonably have
waited to take action until August 31, 2006, when the Second
Circuit denied reconsideration in *Earley II*.  *Betances*, 837 F.3d
at 172.  The court therefore set August 31, 2006 as the earliest
day on which liability could be imposed on any defendant.  *Id.*
The Second Circuit instructed the district court to "engage in
factfinding on remand to determine with more specificity the
dates that Tracy and Fischer understood the holding of
*Earley I*."  *Id.*  As described *supra*, such additional fact-
finding is unnecessary in this case because the court concludes
that Annucci, Fischer, and Tracy would be immune from liability
for the period before June 12, 2007, when plaintiff was not in
New York's custody.

was "objectively unreasonable." *Id.*  The Second Circuit explained that "the three defendants [as here, Annucci, Fischer, and Tracy] decided not to comply with *Earley I* although they understood the meaning of its holding and that its holding applied to their departments . . . both DOCS and DOP continued to violate [*Earley*] retrospectively, by taking no steps to cease enforcing PRS terms that had been added to sentences by DOCS employees." *Id.* at 168-69.

Defendants attempt to distinguish *Betances* on four grounds.  First, defendants argue that they should be "shielded from liability for not referring Plaintiff for resentencing during the time that he was an absconder, before June 2007 and after February 2008[,]" because "[t]here was no clearly established federal law requiring Defendants to take steps to correct a PRS term of an individual who had absconded, was not in the jurisdiction and clearly was not abiding by the PRS term." (Def. Mot. at 17.)  Defendants also argue that they should be "shielded from liability for their actions in 2010, when Plaintiff was extradited back to New York" because he was referred to resentencing "within two weeks" of his extradition, following the process required by New York Correction Law § 601-d. (*See id.* at 17-18.)

The court agrees that defendants' liability should be limited to the period June 12, 2007 to February 6, 2008.  Prior to June 12, 2007, plaintiff was not in New York State custody, and would not have been available for a resentencing proceeding. Plaintiff submitted evidence that, prior to plaintiff's June 12, 2007 extradition, DOC had acted to confine plaintiff or to enable his confinement by another jurisdiction, by faxing an arrest warrant for Santiago to West Virginia.  (*See* Chrono Report at 15 (noting that prior to June 1, 2007, plaintiff was held in West Virginia and Virginia on local charges.); Pl. Mot. at 4.)  Plaintiff's parole was revoked at a June 19, 2007 hearing on Rikers Island and he was returned to DOC custody (Parole Revocation Certificate of Disposition, Ex. M to Am. Compl., ECF 12-13.)  After his release in January 31, 2008, plaintiff again absconded on February 6, 2008, and was not within New York's jurisdiction until September 14, 2010. (Chrono Report at 2.)  Furthermore, in early 2008, "prompted by the New York Court of Appeals' decisions in *Garner* and *Sparber*," defendants developed a process for resentencing individuals serving administratively-imposed terms of PRS.  *Betances II*, 837 F.3d at 172; (*see* July 2008 Memorandum of Understanding, ECF No. 82 Ex. C (signed by Annucci and Tracy.))  Defendants then began to take what the Second Circuit termed "reasonable steps

toward bringing DOCS and DOP into compliance with *Earley I*."
*Id.*

Given the plaintiff's failure to adduce any evidence
showing that defendants acted unreasonably after February 6,
2008, when plaintiff was no longer reporting to DOP and possibly
outside of New York's jurisdiction, and because defendants took
"reasonable steps" shortly thereafter, the court concludes that
defendants are entitled to qualified immunity beginning on
February 6, 2008, when plaintiff absconded.  Thus, although the
court concludes that Annucci, Fischer, and Tracy are liable for
plaintiff's false imprisonment pursuant to § 1983, their
liability is limited to the period between June 12, 2007 to
February 6, 2008, during which period plaintiff was extradited
by New York State and served a custodial term for violating the
terms of his PRS due to the inaction of defendants.

Second, defendants argue that unlike *Betances*, "no
Defendant can here be found to have acted unreasonably" because
"the record here establishes that Defendants did not have
Plaintiff's sentencing minutes."  (Def. Mot. at 18.)  As Judge
Scheindlin has explained in *Betances*, however, "the lack of
[sentencing] minutes does not relieve defendants of liability,"
because in 2008, "DOCS sent letters to judges requesting the
sentencing minutes," and "there is no reason that DOCS could not

33

have done the same after *Earley*" two years earlier.   *See*
*Betances*, 144 F. Supp. 3d at 454 n.95.   Furthermore, as Annucci
stated in a June 4, 2008 Affirmation, between March 12, 2007 and
April 20, 2007, DOCS and DOP manually reviewed approximately
40,000 inmate files to "ascertain . . . whether the sentence and
commitment order . . . affirmatively noted that the required PRS
period was a part of the sentence."   (Annucci Aff. at ¶¶ 39-
40.)   Whether or not plaintiff's records were included in the
reviewed set, the fact that DOP and DOCS could undertake such a
review indicates that they could have similarly instituted a
process whereby they confirmed the validity of PRS terms prior
to seeking enforcement of those terms.   Such a review would have
revealed that plaintiff – who was extradited to New York on June
12, 2007, nearly two months after DOP and DOCS completed their
manual review – did not have a PRS term imposed by the
sentencing judge as indicated on his Sentence and Order of
Commitment.   (*See* Sentence and Order of Commitment, ECF No. 12-
3.)

Third, defendants repeatedly argue that they should be
"granted qualified immunity for not having released Plaintiff
from PRS" until he was resentenced in 2010.   (Def. Mot. at 18
(citing, *inter alia*, *Scott*, 616 F.3d at 109-10); Defendants'
Memorandum in Opposition ("Def. Opp."), ECF No. 84 at 16-17.)

For the reasons described *supra*, this argument is inapposite:
Mr. Santiago is not simply claiming that defendants should have
"released [him] from PRS," but is also arguing that defendants
are liable for enforcing a term of PRS they knew to be
unconstitutional and for their failure to seek his resentencing.
(Am. Compl. at ¶ 77.)   Defendants also argue that "even if
certain Defendants breached a duty to refer [plaintiff]" for
resentencing, DOCS and DOP officials did not cause plaintiff
harm, as district attorneys and judges were not engaged in
resentencing until 2008.  (Def. Opp. 2-3.)   Defendants note that
the Second Circuit did not address such issues of causation in
*Betances II*, referring those to the district court on remand.
(*Id.*); *see Betances II*, 837 F.3d at 174 n.2.   In *Betances*,
however, the district court had already found Annucci, Fischer,
and Tracy personally liable; the issue was whether there were
any outstanding questions relating to causation of damages as to
specific plaintiffs' claims.  *Betances*, 144 F. Supp. 3d at 454,
455.  Here, there is a single plaintiff, and there is no dispute
that Annucci, Fischer and Tracy neither took any action to refer
plaintiff for resentencing, nor prompted district attorneys or
judges to begin the resentencing process.

        Finally, defendants contend that the different
obligations and responsibilities of DOCS and DOP officials

justify these officials' inaction in the wake of *Earley*. (*See* Def. Opp. at 11, Def. Mot. at 15-16 (arguing, *inter alia*, that DOCS defendants could not refer plaintiff for resentencing because he was under DOP supervision and because "referral of Plaintiff would have been made by Parole, pursuant to Parole policy.")) This argument flies in the face of the Second Circuit's conclusion in *Betances II* that "*both* DOCS and DOP continued to violate [*Earley I*] retrospectively, by taking no steps to cease enforcing PRS terms that had been added to sentences by DOCs employees." *Betances II*, 837 F.3d at 169 (emphasis added). The ability of, and need for, DOCS and DOP to work together to respond to *Earley* is further demonstrated by the Memorandum of Understanding, which was signed by Annucci as a representative of DOCS and Tracy as a representative of DOP. (July 2008 Memorandum of Understanding, ECF No. 82 Ex. C.)

For the foregoing reasons, defendants Annucci, Fischer, and Tracy are not shielded by qualified immunity from plaintiff's claims for the period June 12, 2007 to February 6, 2008.[10]

---

[10] Defendant argues that the Eleventh Amendment bars damages suits against officials in their official capacity (Def. Mot. at 20), but plaintiff only claims against defendants in their personal capacities (Pl. Opp. at 7). The court therefore need not address this issue.

## III. Plaintiff's State Claims

Defendants contend that plaintiff's state law claims of false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring and supervision, and *respondeat superior* are precluded by New York State Correction Law § 24 and Executive Law § 259-1.[11] (Def. Mot. at 20.)  Plaintiffs do not respond to this argument. The court concludes that the state law claims against the remaining defendants, Annucci, Fischer, and Tracy, must be dismissed.  Correction Law § 24 and Executive Law § 259-q(1) operate to divest state courts of jurisdiction over claims for damages against individual officers or employees of DOCS or DOP for acts within the scope of their employment, and require that such claims be brought and maintained against the state in the Court of Claims.  N.Y. Corr. Law § 24 (DOCS officers and employees); N.Y. Exec. Law § 259(q)(1) (DOP officers and

---

[11] Defendants do not specifically move to dismiss Count One, the claim for false imprisonment. (*See* Def. Mot. at 20 (discussing Counts Three to Six.))  Like Counts Three through Six, Count One involves a state law claim against individual officers and executives of DOP and DOCS, and is therefore precluded by Correction Law § 24 and Executive Law § 259-q(1).  "Courts have an obligation to address issues of jurisdiction *sua sponte*," and the court therefore dismisses Count One.  *Cruz v. New York*, 24 F. Supp. 3d 299, 311 (W.D.N.Y. 2014) (citing *Joseph v. Leavitt,* 465 F.3d 87, 89 (2d Cir. 2006)).

employees).[12]  Because "[a] state law depriving its courts of
jurisdiction over a state law claim also operates to divest a
federal court of jurisdiction to decide the claim," this court
lacks jurisdiction over state law claims against Annucci,
Fischer, and Tracy.  *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir.
1996) (quoting *Moodie v. Federal Reserve Bank*, 58 F.3d 879, 884
(2d Cir. 1995).  Plaintiffs' state law claims are therefore
dismissed; *see Hassell*, 96 F. Supp. 3d at 385 (dismissing state
law claims in a similar case); *see also Cruz v. New York*, 24 F.
Supp. 3d 299, 311 (W.D.N.Y. 2014) (concluding that "Correction
Law § 24 applies to claims of negligent hiring, retention, and
training" and dismissing claims).

## CONCLUSION

For the foregoing reasons, the court dismisses
plaintiff's state law claims (Counts One, Three, Four, Five and
Six), and dismisses all defendants other than Annucci, Fischer,

---

[12] In *Haywood v. Drown*, the Supreme Court held that Correction
Law § 24 violated the Supremacy Clause to the extent that it
conferred immunity on DOCS officers from § 1983 suits in New
York State court.  *Haywood v. Drown*, 556 U.S. 729, 741 (2009).
*Haywood*, however, "does not . . . prevent [§ 24] from stripping
New York state courts of jurisdiction over a plaintiff's
analogous *state law* claims against DOCS officials."  *Hassell*, 96
F. Supp. 3d at 385 (citing *May v. Donneli*, No. 06 Civ. 437, 2009
WL 3049613, at *5 (N.D.N.Y. Sept. 18, 2009)); *accord Rounds v.
Thompson*, No. 9:12-CV-953 GLS/TWD, 2013 WL 3187074, at *4
(N.D.N.Y. June 20, 2013) (listing cases); *Doe v. New York*, No.
10 CV 1792 RJD VVP, 2013 WL 816197, at *2 (E.D.N.Y. Mar. 5,
2013).

and Tracy.  With regard to Count Two, plaintiff's § 1983 claim, the court **GRANTS** plaintiff's motion for summary judgment as to the liability of defendants Annucci, Fischer, and Tracy for the period June 12, 2007 to February 6, 2008.

By October 11, 2017, the parties shall contact Magistrate Judge Steven Tiscione to schedule a settlement conference.  Should the parties fail to reach a settlement by November 10, 2017, they shall file a status letter to that effect, directed to both Magistrate Judge Tiscione and the undersigned judge, and include a proposed schedule for the remainder of discovery.

**SO ORDERED.**

Dated:     September 30, 2017
           Brooklyn, New York

                              /s/
                     _____
                     Hon. Kiyo A. Matsumoto
                     United States District Judge