UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
JESUS SANTIAGO,

        *Plaintiff,*

     v.

ANDREW M. CUOMO, *et al.*,

        *Defendants.*
--------------------------------X

**MEMORANDUM AND ORDER**

12-cv-2137(KAM)(ST)

**KIYO A. MATSUMOTO, United States District Judge:**

On September 30, 2017, the Court found Defendants

Brian Fischer ("Fischer"), Anthony J. Annucci ("Annucci"), and

Terrence Tracy ("Tracy") (collectively, "Defendants") liable

under 42 U.S.C. § 1983 for failing to take reasonable steps to

relieve Plaintiff of the burdens of an unlawful term of post-

release supervision ("PRS") that had been administratively

imposed by the New York State Department of Correctional

Services ("DOCS") in violation of his rights.

In its decision, the Court limited Defendants'

liability to the period between June 12, 2007, and February 6,

2008. During this period, Defendants both (1) were aware of

their obligation to address the unlawfully imposed term of PRS

and (2) had custody over Plaintiff and could therefore have

taken steps to relieve Plaintiff of the administratively imposed

PRS. Defendants, moreover, could have rectified this situation

either by seeking resentencing to have a judge properly impose

1

the PRS term on Plaintiff or by excising the PRS term from Plaintiff's sentence.

Defendants now move for summary judgment on the question of damages. Specifically, Defendants argue that Plaintiff should be limited to no more than $1.00 in nominal damages, as their failure to take reasonable steps to relieve Plaintiff of the unlawful PRS term allegedly had no impact on his life. Plaintiff disputes this contention and argues that, even if he suffered no actual damages, he should still be entitled to present the question of punitive damages to a jury. For the reasons set forth below, the Court finds there are material facts in dispute, and that Defendants' arguments are unpersuasive as a matter of law, and therefore denies their motion for summary judgment.

## Background[1]

The Court's Memorandum and Order dated September 30, 2017, details the facts and history of this case. (ECF No. 92,

---

[1] "The facts are drawn from previous decisions in this case, Defendants' statements pursuant to Local Civil Rule 56.1, [Plaintiff's] responses to Defendants' 56.1 statements, the evidence submitted by the parties, and the record. Where appropriate, the Court recounts the facts in the light most favorable to Plaintiff[], the non-movant[]. The facts are undisputed unless otherwise indicated." *Betances v. Fischer*, No. 11-cv-3200 (RWL), 2019 WL 1213146 (S.D.N.Y. Feb. 21, 2019).

Defendants argue that Plaintiff's Local Rule 56.1 Counterstatement of Facts should be disregarded for failure to comply with the requirement that it "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement" submitted by Defendants. (Rep. 56.1, at 1-2.) "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 63, 73 (2d Cir. 2001); *see also, e.g., Gilani v. GNOC*

2

Memorandum and Order ("Mem. & Order").)   The Court refers to
that Memorandum and Order for a full discussion of the facts of
this case, and summarizes only those facts relevant to this
Memorandum and Order.

## I.   Administrative Imposition of PRS Terms

"In 1998, the New York State Legislature amended the
sentencing scheme for violent felons to require that every
determinate sentence of imprisonment for a violent felony be
followed by a PRS term." *Betances v. Fischer* ("*Betances III*"),
837 F.3d 162, 164 (2d Cir. 2016) (citing N.Y. Penal Law §
70.45(1)).   During the relevant period, "the Division of Parole
("DOP") and Board of Parole ("BOP") established and enforced the
conditions of PRS terms and the [DOCS][2] reincarcerated felons who

---

*Corp.*, No. 04-cv-2935 (ILG), 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006)
(exercising court's discretion to overlook the parties' failure to submit
statements pursuant to Local Civil Rule 56.1).   In this instance, the Court
can decipher which facts appear to be in dispute from the statements
submitted by the parties, and thus need not disregard Plaintiff's statement
entirely.   The Court has, however, considered whether any of the facts in
Defendants' 56.1 statement would, if admitted, change the analysis, and
concluded (as described in more detail below) that they would not.

[2] On March 31, 2011, the New York State Department of Correctional Services
("DOCS") and the New York State Division of Parole ("DOP") merged to form the
New York State Department of Corrections and Community Supervision ("DOCCS").
(Defs.' 56.1, at 1.)   This Memorandum and Order refers to the actions (or
lack thereof) of each agency as it existed on the date of the relevant events
which, for this action, all occurred before the merger.

violated these conditions." *Id.* (citing N.Y. Penal L. §
70.45(3)).

While New York Penal Law § 70.45 required that
sentencing courts include a term of PRS as part of each
sentence, not all judges announced PRS terms during sentencing
proceedings. *Id.* at 165. "[C]ertain inmates [therefore]
entered DOCS custody with sentence and commitment orders that
informed DOCS employees of the term and conditions of the
inmate's sentence, but failed to include PRS terms required by §
70.45." *Id.* Rather than bringing the failure to the attention
of the sentencing court, however, "DOCS simply added the PRS
term administratively" and proceeded to enforce it as if it were
valid. *Id.* This is exactly what happened to Plaintiff.

## II. Administrative Imposition of Plaintiff's PRS Term

In April 2004, Plaintiff entered DOCS custody on a
sentence of three-and-one-half years confinement for a Class C
felony of Criminal Possession of a Weapon in the Second Degree.
(Mem. & Order, at 6 (citing ECF No. 81, Declaration of Steven H.
Philbrick ("Philbrick Decl."), at ¶ 51; ECF No. 12-3, Sentence
and Order of Commitment (original sentence of January 2, 2002,
indicating *nunc pro tunc* sentence received by DOCS in April
2004).) The sentencing judge did not pronounce a term of PRS as
part of Plaintiff's sentence. (Mem. & Order, at 6; ECF No. 12,
Amended Complaint ("Am. Compl."), ¶ 39; ECF No. 120, Defs.'

Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Defs.' 56.1"), ¶ 1; ECF No. 123-1, Pl.'s Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Opp. 56.1"), ¶ 2; Defendants' Counterstatement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Rep. 56.1"), ¶ 2.)

Despite the absence of a PRS term in the sentence announced by the sentencing judge, on November 7, 2004, Plaintiff was released to the supervision of the DOP to commence an administratively imposed five-year period of supervised release. (Mem. & Order, at 6 (citing Philbrick Decl., ¶ 52); Am. Compl., ¶¶ 42-43; Defs.' 56.1, ¶ 2.) Plaintiff executed a "Special Conditions of Release to Parole Supervision," in which the maximum expiration date of his PRS term was documented as November 5, 2009. (Am. Compl., ¶ 44; Defs.' 56.1, ¶ 3.) In 2005, Plaintiff left the State of New York and was deemed to have absconded from parole. (Mem. & Order, at 6.)

### III. Second Circuit Finds Administratively Imposed PRS Terms Unconstitutional, but New York State Remains Resistant

In 2006, the Second Circuit found the administrative imposition of PRS by DOCS unconstitutional. *Earley v. Murray* ("*Earley I*"), 451 F.3d 71 (2d Cir. 2006), *reh'g denied*, *Earley v. Murray* ("*Earley II*"), 462 F.3d 147 (2d Cir. 2006), *cert. denied*, 551 U.S. 1159 (2007). This holding was "met with resistance at the state level," and many officials and offices

failed to take action to address the many offenders subjected to administratively imposed PRS. *Betances III*, 837 F.3d at 166. Defendants were among them. *Id.* at 166-70.

In a later decision, the Second Circuit expressly considered the liability of Defendants arising from their inaction in the face of *Earley I*. *See id.* To recap, the roles of the defendants were as follows: (1) Anthony Annucci was "DOCS's counsel from September 1989 until October 2007, when he became executive deputy commissioner and counsel, a position he filled until December 2008"; (2) Brian Fischer was "the commissioner of DOCS from January 2007 to April 2011"; and (3) Terence Tracy was "chief counsel of DOP from December 1996 until March 2011." *Id.* The Second Circuit reviewed Defendants' conduct and concluded as follows:

> [T]he three defendants decided not to comply with *Earley I*
> although they understood the meaning of its holding and
> that its holding applied to their departments. As a
> result, after [the] decision in *Earley I*, DOCS continued to
> violate its holding prospectively, by entering statutorily-
> required PRS terms when sentence and commitment orders were
> silent, and both DOCS and DOP continued to violate it
> retrospectively, *by taking no steps to cease enforcing PRS
> terms that had been added to sentences by DOCS employees*.

*Id.* at 168-69 (emphasis added). All three "testified that immediately after *Earley I* and *II* were decided in 2006 they could have undertaken the remedial measures that they later took

6

when prompted by [certain decisions of the New York Court of Appeals, summarized below], in the spring of 2008." *Id.* at 170.

The Kings County District Attorney remained similarly resistant to addressing this issue, filing briefs challenging the notion that individuals such as Plaintiff were entitled to have the administrative PRS component of their sentence stricken (Defs.' 56.1, ¶ 11; *see also* ECF No. 121, 2018 Declaration of Michael J. Keane ("Keane Decl."), Ex. A, Petition for Writ of Certiorari to the U.S. Court of Appeals for the Second Circuit, *Fitch v. Earley*, No. 06-1429 (Apr. 25, 2007); Keane Decl., Ex. B, Reply Brief in Support of Petition for Writ of Certiorari to the U.S. Court of Appeals for the Second Circuit, *Burhlre v. Earley*, No. 06-1429 (June 7, 2007)), and declining to pursue resentencing for individuals similarly situated to Plaintiff during this period (Defs.' 56.1, ¶ 12; *see also* Keane Decl., Ex. C, Memorandum and Order, *Earley v. Murray*, No. 03-cv-4103 (ERK) (May 17, 2007)).

## IV. Plaintiff Incarcerated for Violation of Administratively Imposed PRS

It was during the period between 2006 and 2008, during the Defendants' failure to comply with *Earley I* and *Earley II*, that Plaintiff was brought back to New York and re-incarcerated for violating his administratively imposed PRS.  In 2007, DOCS learned that Plaintiff had been arrested in Virginia on "local

charges." (Mem. & Order, at 6-7 (citing Philbrick Decl., Ex. C, Parolee Chrono Report ("Chrono Report"), at 15).)   DOCS thereafter sought Plaintiff's extradition to New York. (Mem. & Order, at 7; Opp. 56.1, ¶ 10; Rep. 56.1, ¶ 10.)   On June 12, 2007, Plaintiff waived extradition and was returned to DOCS custody. (Mem. & Order, at 7.)   Plaintiff was found guilty of a parole violation shortly thereafter and sentenced to serve a 12-month "assessment" in custody. (Mem. & Order, at 7 (citing Philbrick Decl., ¶ 55); see also Rep. 56.1, ¶ 11.)

Plaintiff was released from DOCS to BOP custody on January 31, 2008. (Mem. & Order, at 7; see also Opp. 56.1, ¶¶ 12-13; Rep. 56.1, ¶¶ 12-13.)   The BOP issued a Parole Board Release Decision Notice which lists Plaintiff's maximum expiration date as June 7, 2011, his conditional release date as "none," and his jail time as 188 days. (Opp. 56.1, ¶ 14; Rep. 56.1, ¶ 14.)   Plaintiff then failed to report to his parole officer on February 6, 2008, and was deemed to have absconded as of that date. (Mem. & Order, at 7 (citing Chrono Report, at 12).)   BOP issued a warrant for Plaintiff's arrest on March 14, 2008 (Opp. 56.1, ¶ 15; Rep. 56.1, ¶ 15), and on April 23, 2008, BOP was notified that Plaintiff was arrested in Virginia for possession of marijuana with intent to distribute and

brandishing a firearm.   (Mem. & Order, at 7; Opp. 56.1, ¶ 16;
Rep. 56.1, ¶ 16.)

### V.   New York State Begins to Address Defendants Administratively Sentenced to Terms of PRS

Shortly after Plaintiff absconded from New York state
custody in February 2008, the New York Court of Appeals
announced its decisions in *People v. Sparber*, 10 N.Y.3d 457, 468
(2008), and *Garner v. New York State Dep't of Corr. Servs.*, 10
N.Y.3d 358, 362 (2008), which "held that New York state law
required the judge to pronounce the term of PRS orally at
sentencing if it was to be included in an inmate's sentence."
*Betances III*, 837 F.3d at 166 (citing *Sparber* and *Garner*).
These decisions "prompted DOP to take its first steps and DOCS
to take its first significant steps toward compliance with
*Earley I*."  *Id.* at 169.

"DOP promptly reviewed its records to determine which
inmates under its supervision were subject to DOCS-imposed PRS
terms, a process that took less than a week."  *Id.*  And "[b]y
the middle of May 2008, DOCS launched a 'Post-Release
Supervision Resentencing Initiative' to obtain resentencing of

individuals in its custody whose sentencing judges had not

pronounced PRS terms required by § 70.45."[3]  *Id.*

## VI. New York State Addresses the Administrative Imposition of Term of PRS on Plaintiff

It was not until almost two years later that a New

York state court ultimately addressed the administrative

imposition of PRS on Plaintiff.  On February 22, 2010, Plaintiff

was transferred from Virginia state custody to federal custody

in West Virginia, pursuant to a federal detainer.  (Mem. &

Order, at 7 (citing Chrono Report, at 3).)  Plaintiff was then

extradited to New York on September 14, 2010, pursuant to a New

York warrant issued for PRS violations.  (Mem. & Order, at 7-8;

Defs. 56.1, ¶ 6; Opp. 56.1, ¶ 19; Rep. 56.1, ¶ 19.)  Plaintiff's

parole was revoked for violations of his PRS conditions shortly

thereafter.  (Mem. & Order, at 7 (citing Chrono Report, at 1).)

On September 27, 2010, DOP finally referred Plaintiff

to the Kings County Supreme Court for possible resentencing,

having determined that Plaintiff's "original sentence and

commitment document . . . contained no reference to a period of

---

[3] New York's legislature also took action in the wake of *Garner* and *Sparber*: "In June 2008, the New York legislature passed New York Correction Law § 601-d, which codified a process for resentencing individuals with unpronounced PRS terms.  Section 601-d required DOCS and DOP to notify courts if they had custody of or supervision over a defendant with an administratively imposed PRS term and permitted the sentencing court either to resentence the defendant to a sentence that included a PRS term or, with the district attorney's consent, to decline to resentence, resulting in no PRS term.  The latter course would not upset guilty pleas that were not premised on the inclusion of a PRS term in the sentence." *Betances III*, 837 F.3d at 170.

PRS" and that DOP did not "have a copy of the sentencing minutes within its files to confirm whether the period of PRS was pronounced by the [c]ourt at the time of sentencing." (Mem. & Order, at 8 (quoting Philbrick Decl., Ex. D, Notice Pursuant to Correction Law 601-d, at 1); see also Am. Compl., ¶ 65; Defs.' 56.1, ¶ 6.) On December 15, 2010, Plaintiff appeared for a resentencing hearing, but the court declined to resentence Plaintiff to a term of PRS because the court concluded that there had been "no discussion or agreement concerning post release supervision as part of the Defendant's sentence reflected anywhere in the [initial sentencing] proceedings." (Mem. & Order, at 8 (citing Resentencing Order, at 1); see also Am. Compl., ¶ 67; Defs.' 56.1, ¶ 7; Opp. 56.1, ¶ 20.) Plaintiff was subsequently released from New York custody on December 17, 2010. (Opp. 56.1, ¶ 22; Rep. 56.1, ¶ 22.)

### Procedural History

Plaintiff filed his initial complaint on May 1, 2012 (ECF No. 1, Complaint), and his amended complaint on June 4, 2012 (Am. Compl.). Plaintiff alleged federal claims for violation of his civil rights pursuant to 42 U.S.C. § 1983, as well as state claims for false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring and supervision, and respondeat superior. (See generally id.) The amended complaint

named twenty-four individual defendants, as well as unidentified "John Doe" plaintiffs. (*Id.* at 1.)

On August 20, 2012, the Court stayed this action pending the Second Circuit's determination in *Betances v. Fischer*, a related action challenging the administrative imposition of PRS. *See Betances v. Fischer* ("*Betances I*"), 519 F. App'x 39, 41 (2d Cir. 2013) (summary order). The Second Circuit issued *Betances I* on June 4, 2013, in which the court affirmed the Southern District of New York's denial of the defendants' motion to dismiss plaintiff's complaint in that action. *Id.* At the parties' request, the Court then lifted the stay in this action and the parties resumed discovery and motion practice. (ECF Docket Entry, Sept. 11, 2014.)

On February 7, 2017, the parties filed cross-motions for summary judgment. Plaintiff moved for partial summary judgment, asking the Court to find all twenty-four defendants liable for violating his due process rights, as described in *Earley I*, by administratively imposing and enforcing conditions of supervision on Plaintiff following his release from prison, despite the fact that the court did not expressly impose a PRS term at sentencing. (ECF No. 78-2, Pl.'s Mem. in Supp. of Mot. for Summ. J.) Defendants also moved for summary judgment, asking that the Court find all defendants not liable for violations of 42 U.S.C. § 1983 because Plaintiff failed to state

12

a claim for relief, failed to properly allege the personal involvement of all defendants in the alleged violations, and failed to mitigate his damages, and also arguing that qualified immunity and the Eleventh Amendment shielded the defendants from any liability for the alleged violation. (ECF No. 80, Def.'s Mem. in Supp. of Summ. J.)  The defendants also moved for summary judgment against Plaintiff's state-law claims, arguing they were barred by New York Correction Law § 24.  (*Id.*)

On September 30, 2017, the Court issued a Memorandum and Order addressing the parties' cross-motions for summary judgment.  (ECF No. 92, Memorandum & Order.)  The Court granted the defendants' motion for summary judgment with respect to Plaintiff's state claims for lack of jurisdiction.  (*Id.* at 37-38.)  The Court also granted the defendants' motion for summary judgment with respect to most of the defendants for lack of personal involvement.  (*Id.* at 18-36.)  But the Court denied the defendants' motion for summary judgment with respect to Plaintiff's claims against Defendants Annucci, Fischer, and Tracy.  (*Id.* at 38-39.)  Instead, the Court found Defendants Annucci, Fischer, and Tracy liable under 42 U.S.C. § 1983 for violating Plaintiff's due process rights for a specific period: from June 12, 2007, when Plaintiff returned to state custody for violation of the administratively imposed PRS, to February 6,

2008, when Plaintiff absconded from state custody following his release from incarceration. (*Id.*)

On October 15, 2018, Defendants filed another motion for summary judgment. (ECF No. 111, Mot. for Summ. J.) Defendants sought summary judgment on the grounds that (1) Plaintiff's claims are barred by the statute of limitations and (2) Plaintiff is entitled to no more than $1.00 in nominal damages because, had he received the process he was due (i.e., referral for resentencing), his life would not have changed. (ECF No. 114, Mem. of Law in Supp. of Mot. for Summ. J, at 1-2.) Defendants later withdrew their proposed statute of limitations defense. (ECF No. 118, Status Report.) In light of Defendants' withdrawal of this defense, in November 2018, the Court ordered the parties to amend their briefs corresponding to this motion for summary judgment to remove their arguments as to the statute of limitations defense. (ECF Docket Order, Nov. 9, 2018.)

On November 14, 2018, the parties re-filed their briefing papers. Defendants' instant motion seeks to limit Plaintiff's recovery as a matter of law to nominal damages on the grounds that their delay in addressing Plaintiff's administratively imposed PRS did not cause Plaintiff any actual injury. (*See generally* ECF No. 122, Defs.' Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Br.").) Plaintiff opposes Defendants' motion for summary judgment on the grounds that he

14

is not limited, as a matter to law, to nominal damages, and that even if this were the case, he would still be entitled to a trial to assess punitive damages arising from Defendants' allegedly willful violations.  (*See generally* ECF No. 123, Mem. in Opp. to Mot. for Summ. J. ("Pl.'s Br.").)  For the reasons set forth below, the Court agrees with Plaintiff and therefore denies Defendants' motion for summary judgment.

### Standard of Review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 173-74 (2d Cir. 2012).  The role of the court is "'not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (internal quotation marks omitted)).  "A genuine issue of fact for trial exists where there is 'evidence on which the jury could reasonably find for'" the non-moving party.  *Id.* (quoting *Liberty Lobby*, 477 U.S. at 252).

To defeat a motion for summary judgment, the non-movant must identify probative evidence on the record from which a reasonable factfinder could find in its favor. *Liberty Lobby*, 477 U.S. at 256-57. That is, the non-movant must make a showing of sufficient evidence of a "claimed factual dispute as to require a judge or jury's resolution of the parties' differing versions of the truth." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 468 (S.D.N.Y. 2011) (citing *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006)). Summary judgment "therefore requires the nonmoving party to go beyond the pleadings and[,] by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

## Discussion

Defendants argue that Plaintiff fails to set forth any basis upon which he could be awarded compensatory damages "as he was never entitled to a sentence without [PRS]." (Defs.' Rep. Br. at 1.) This misapprehends the source of Defendants' liability. The Court did not find Defendants liable for their failure to unilaterally release Plaintiff from custody. Rather, the Court found Defendants liable for their failure to take reasonable steps to relieve Plaintiff of the burden of the

16

unlawfully imposed PRS during the period they were able to do so, *i.e.*, from June 12, 2007, to February 6, 2008.

During this period, Defendants should have taken steps to secure one of the remedies identified as appropriate in this context by the Second Circuit: (1) "ha[ving] [Plaintiff] resentenced by the court for the imposition of PRS terms in a constitutional manner"; or (2) "excis[ing] the PRS conditions from [Plaintiff's] records and relieving [Plaintiff] of those conditions." *Vincent v. Yelich*, 718 F.3d 157, 172 (2d Cir. 2013). Defendants failed to do either. Instead, Defendants allowed Plaintiff to remain incarcerated pursuant to violations of an unconstitutionally imposed term of PRS, which Plaintiff alleges caused him substantial harm. (*See, e.g.*, Pl.'s Br. at 13 ("Plaintiff's PRS . . . caused arrests and incarceration in WV and VA that would not have occurred but for this violation of Plaintiff's rights. Plaintiff's lengthy incarcerations caused considerable damage to his life, including the dissolution of Plaintiff's marriage.").)

The Court must, therefore, consider whether there is any dispute as to the measure of damages to which Plaintiff is entitled as a result of Defendants' conduct for the period between June 12, 2007, and February 6, 2008. Defendants allege that "[h]ad Plaintiff received the process he was due under the Constitution, his life would not have been any different for the

17

period for which Defendants are liable." (Defs.' Br. at 2.)
This is the case, they say, because no matter what action
Defendants took during the time Plaintiff was in custody, the
end result would have been a resentencing of Plaintiff that,
according to state law, was required to include five years of
PRS. Plaintiff "was entitled only to have a court correct the
PRS term imposed by having a court pronounce the sentence, and
serving the PRS term without such judicial pronouncement caused
him no actual injury." (*Id.* at 9.)

In making this argument, Defendants rely substantially
on the *Hassell* case, *Hassell v. Fischer*, No. 13-cv-1992 (AKH),
2016 WL 10920013, at *2 (S.D.N.Y. July 18, 2016), *aff'd in part,
vacated in part, remanded*, 879 F.3d 41 (2d Cir. 2018), which
they characterize as "[r]ecent controlling Second Circuit
precedent" on this question. (Defs.' Br. at 1.) In *Hassell*, a
plaintiff sued to recover damages for the administrative
imposition of a PRS term in violation of his rights. *Hassell*,
2016 WL 10920013, at *2. The court, concluding that Plaintiff
suffered no actual injury, awarded Plaintiff only nominal
damages. *Id.* It is for this reason that Defendants seek to
rely on *Hassell* in this action.

But Defendants are remiss to rely on *Hassell*, a
clearly distinguishable case from the instant case. Plaintiff
here is not similarly situated to the plaintiff in *Hassell*.

Unlike Plaintiff here, following the administrative imposition of the PRS term on the *Hassell* plaintiff, he was actually resentenced to a term of PRS *nunc pro tunc*. This means that although the *Hassell* plaintiff might initially have been serving time on an unconstitutional sentence, following resentencing, this was no longer the case, and any alleged harm arising from that term of incarceration resulted from a constitutional sentence. This fact – that the term of imprisonment for which the *Hassell* plaintiff sought damages had retroactively been rendered constitutional – played a significant role in the *Hassell* court's reasoning:

> [W]hat were the consequences of [the] six-month delay [in resentencing]? Whenever the date of resentencing, [the judge] undoubtedly would have imposed the same five-year PRS, *nunc pro tunc*, to the date [plaintiff] was released from imprisonment. Thus, the date of ultimate expiration of the PRS would not have changed. There may have been an unnecessary delay of six months but it would not have changed [the plaintiff's] life in the slightest.

*Id.* This finding was "specifically premised upon the fact that the trial court in fact *actually* resentenced [the plaintiff] to [PRS], and that the sentence was retroactive and therefore covered the time period of the administratively (and thus illegally) imposed PRS." *Earley v. Annucci*, No. 08-cv-669 (DJS), 2018 WL 5993683, at *5 (N.D.N.Y. Nov. 15, 2018).

Despite this clear distinction, Defendants have sought to extend *Hassell* to apply to *all* plaintiffs administratively

19

sentenced to PRS, even those whose terms of incarceration were
never retroactively rendered constitutional. *See, e.g., id.*
("Defendant's final argument [is] that Plaintiff is only
entitled to nominal damages no matter how long he remained in
custody after the *Earley II* decision.  The reasoning behind this
argument is that, whatever action was taken by Defendant Annucci
after [*Earley II*'s issuance], the end result would have been a
resentencing of Plaintiff that, according to state law, was
required to include five years of post-release supervision.");
*Betances v. Fischer* ("*Betances IV*"), No. 11-cv-3200 (RWL), 2019
WL 1213146, at *10 (S.D.N.Y Feb. 21, 2019) ("Defendants argue
that Plaintiffs suffered no actual injury from the
constitutional violation at issue, and, therefore, Plaintiffs
are only entitled to nominal damages of $1.00.  According to
Defendants even if the correct procedure had been followed,
Plaintiffs would have been subject to a mandatory PRS
sentence."); Letter Motion for Pre-Motion Conference, *Santiago
v. Fischer*, No. 09-cv-1383 (E.D.N.Y. Apr. 29, 2019) ("Plaintiff
. . . cannot establish that . . . a resentencing would have made
his life any different.  As in *Hassell*, the record will
establish that Plaintiff is entitled to no more than $1.00 in
damages from Defendants.").

     Defendants' argument has found little success.  *See,
e.g., Earley*, 2018 WL 5993683, at *5 ("Hassell received only

nominal damages for a period of incarceration that, although it did not start out as such, was ultimately rendered valid by his resentencing *nunc pro tunc*.  Earley, on the other hand, seeks damages for a period of incarceration that was never lawfully imposed, even retroactively." (citation omitted)); *Betances IV*, 2019 WL 1213146, at *13 ("The [plaintiffs not resentenced to PRS *nunc pro tunc*] were deprived of their liberty by incarceration, as well as PRS, and Defendants' conduct has been found unlawful. It is, therefore, unremarkable that [these plaintiffs] are entitled to seek compensatory damages.  Accordingly, Defendants' motion to limit recovery to nominal damages is denied with respect to [these plaintiffs].").

The Court agrees with its sister courts and finds that *Hassell* is an inapt comparison to Plaintiff's situation. Rather, *Earley v. Annucci* is a more appropriate analogue.   In *Earley*, the court found that Defendants' argument that the plaintiff was "only entitled to nominal damages because the *potential* existed for him to be resentenced to a term which included [PSR] completely misses the mark." *Earley*, 2018 WL 5993683, at *5.  "As the Second Circuit has recently noted, it is the defendant's burden to establish this 'no harm-no foul' defense." *Id.* at *4, n.4 (quoting *Warren v. Pataki*, 823 F.3d 125, 141 (2d Cir. 2016)).  The instant Plaintiff, like the Plaintiff in *Earley*, was not resentenced to a term of PRS.

21

Defendants also rely on *Warren v. Pataki*, 823 F.3d 125, 141 (2d Cir. 2016), to support their proposition that "where the same adverse action in question would have been taken had the process required been given, the plaintiff has not proved a compensable injury and is entitled only to nominal damages." (Defs.' Br. at 10.) The *Warren* plaintiffs were civilly committed upon their release from incarceration. Before commitment, the plaintiffs were evaluated by New York's Office of Mental Health but without "notice and an adversarial hearing prior to civil commitment." The plaintiffs were thus committed without due process. At trial, however, the jury found that even if plaintiffs had received their due process, they would have been committed, meaning they suffered no actual injury and were entitled to only nominal damages. As our sister courts have already explained, *Warren* is a more appropriate analogue to *Hassell*[4] and does not apply to this action. *See, e.g.*, *Betances IV*, 2019 WL 1213146, at *12.

---

[4] "First, on appeal, the Second Circuit noted that even if a plaintiff would have been in the same position had a constitutionally sufficient procedural due process been provided, '[i]t is possible that other claims for compensatory damages,' specifically, mental and emotional distress, 'remained viable.' 823 F.3d at 144 (citing [Carey, 435 U.S. at 264]). Second, *Warren* is similar to *Hassell* in that it turned on a finding that the plaintiff would have ended up with the same confinement if the proper process had been followed. As with *Hassell*, *Warren* does not address damages with respect to plaintiffs who fall into other categories. Finally, in *Warren*, the plaintiffs suffered a deprivation of due process when they did not receive a constitutionally required hearing. Here, there was no such hearing to be had because DOCS never possessed legal authority to impose PRS or provide such a hearing." *Betances IV*, 2019 WL 1213146, at *12.

Defendants here have not established, because they cannot, that Plaintiff would have been resentenced to a term of PRS *nunc pro tunc* had he been referred for resentencing during the period of their liability. In fact, in December 2010, when Plaintiff appeared for resentencing in Kings County, the court found no evidence that PRS had been imposed by the sentencing court in 2002, and declined to impose PRS at resentencing. (Defs.' 56.1, ¶ 7; Opp. 56.1, ¶ 20.) Whether Defendants characterize this as a "windfall from a more lenient sentence" or otherwise, it is a fact contradicting their assertion that Plaintiff unquestionably would have had a term of PRS imposed *nunc pro tunc* by the resentencing judge. Construing the evidence in the light most favorable to the non-movant, this undisputed fact alone provides a basis for Plaintiff to receive damages for his actual injury.

Moreover, Defendants' arguments were already rejected by the court in *Earley* and, more recently, by the court in *Betances IV*:[5]

> Much of Defendants' argument rests on the contention that . . . [h]ad judges followed the requisite procedure and

---

[5] Following the Southern District of New York's decision in *Betances IV*, Plaintiff provided a copy of the decision to the Court and argued it was a more appropriate comparison for Plaintiff than *Hassell*. (ECF No. 126, Plaintiff's Letter Providing Additional Authority.) Defendants filed a letter acknowledging both *Betances IV* and *Earley v. Annucci*, and contend that these decisions "are in many respects distinguishable." (ECF No. 127, Defendants' Letter Providing Additional Authority.) The Court notes that despite their bare assertion, Defendants do not actually attempt to distinguish these decisions in any way.

imposed the mandatory term . . . Plaintiffs would have received the same PRS term administratively imposed by DOCS. This argument, however, is flawed. *The relevant question is not what judges should have done*, but instead whether Plaintiffs would have received the same PRS term had DOCS not imposed it. The answer is no. Had DOCS not imposed PRS, Plaintiffs simply would not have been subject to any PRS (absent referral for resentencing). That may have been contrary to the legislative scheme, but it is the state of affairs that would have existed had DOCS not acted unconstitutionally.

*Betances IV*, 2019 WL 1213146, at *12 (emphasis added).

Finally, Defendants assert that referral for resentencing earlier would have been ineffectual because "a[t] the time of Plaintiff's custody in DOCS and Parole between June 12, 2007[,] and February 6, 2008, [New York] State's District Attorneys and sentencing courts were not resentencing individuals to PRS." (Defs.' 56.1, ¶ 10.) For instance, in Kings County, where Plaintiff was originally sentenced and then resentenced in 2010, the District Attorney argued that *Earley* had been wrongly decided and declined to pursue Earley's resentencing. (*Id.*, ¶¶ 11-12.) Yet - even deeming these facts admitted for purposes of this motion on the basis of Plaintiff's failure to file a proper counterstatement of facts pursuant to Local Rule 56.1, *see, e.g.*, *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") - these

facts are insufficient to entitle Defendants to summary judgment on the question of damages.

The evidence presented by Defendants simply does not establish that Plaintiff's injuries are worth no more than nominal damages, *i.e.*, that had Plaintiff been referred for resentencing, he would have been resentenced to PRS *nunc pro tunc* like the plaintiff in *Hassell*, thereby rendering his incarceration for violating that PRS term lawful. This is clear from Defendants' couching of the relevant facts and arguments in their memoranda of law. Defendants note that "resentencings *generally* did not take place until the June 2008 enactment of Correction Law § 601-d" (Defs.' Br. at 7 (emphasis added)) – they did not allege that no resentencings took place at all, or that resentencings would not have taken place had they complied with their obligations. They cite just one instance, the *Earley* case, where the Kings County District Attorney expressly declined to pursue a similarly situated plaintiff's resentencing. (*Id.* at 8.) And though Defendants assert that "[t]hroughout the period relevant to Plaintiff, New York State law *allowed* for every individual with a flawed PRS term to be resentenced to PRS," they do not establish this would have happened to Plaintiff. None of these assertions or other evidence presented by Defendants makes it clear that Plaintiff

is in the same position as the plaintiff in *Hassell* such that he should be limited as a matter of law to nominal damages.

## CONCLUSION

Defendants have not established that no disputed issues of fact exist as to whether Plaintiff is, as a matter of law, entitled to only nominal damages. As neither party moved for summary judgment on the question of the amount of compensatory and punitive damages – which Plaintiff raised only as an alternative basis to defeat Defendants' motion for summary judgment – the Court need not consider in this Memorandum and Order whether Plaintiff may establish that he is entitled to punitive damages on the basis of Defendants' misconduct. In light of the foregoing, Defendants' motion for summary judgment is denied. The parties shall meet and confer and submit a joint status letter via ECF to the Court by **October 3, 2019,** setting forth how they wish to proceed in this action.


**SO ORDERED.**

Dated:      September 23, 2019
            Brooklyn, New York

                              /s/ USDJ KIYO A. MATSUMOTO
                              _____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge