UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JESUS SANTIAGO,

     Plaintiff,

             — against —

ANDREW CUOMO et al.

                Defendants.

Index No. 12-cv-2137

**OPPOSITION TO DEFENDANT'S MOTION PURSUANT TO RULE 50 TO VACATE PUNITIVE DAMAGES AWARDS, DISMISSING SUCH CLAIMS, AND/OR PURSUANT TO RULE 59 FOR A NEW TRIAL, OR REMITTITUR OF THE DAMAGES AWARDS**

Rickner PLLC
233 Broadway, Suite 2220
New York, NY 10016

On the Brief:

     Joel Wertheimer
     Robert Rickner

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTS AS DECIDED ON SUMMARY JUDGMENT AND AT TRIAL ........................ 2

    I.    LEGAL HISTORY OF EARLEY, BETANCES, AND THIS ACTION .................................. 2

    II.   PLAINTIFF'S COMPENSATORY DAMAGES AS PROVEN AT TRIAL ......................... 4

    III.  DEFENDANTS' CALLOUS FAILURES TO ACT ...................................................... 5

LEGAL ARGUMENT ......................................................................................................... 8

    I.    LEGAL STANDARD ON A MOTION FOR A NEW TRIAL AND/OR REMITTITUR .......... 8

    II.   DEFENDANTS ACTED WITH CALLOUS DISREGARD TO PLAINTIFF'S RIGHTS AND THE JURY'S FINDING OF PUNITIVE DAMAGES WAS WARRANTED ................................... 8

    III.  THE PUNITIVE DAMAGES AWARD IS ENTIRELY REASONABLE ........................... 10

    IV.  NO NEW TRIAL IS NECESSARY AND THE COURT HAS ALREADY RULED DEFENDANTS' ARGUMENTS LACK MERIT REGARDING THE DEFENDANTS' INABILITY TO PRESENT CERTAIN EVIDENCE ................................................................................................. 14

      a.  Defendants Were Rightly Not Permitted to Introduce Evidence Regarding Penal Law §70.45 .............................................................................................................. 14

      b.  Precluding Defendants from Testifying About Their Understanding That Other State Actors Resisted Earley Was Not Prejudicial Error ............................................ 15

      c.  Defendants Seek to Rehash Arguments Regarding Plaintiff's Post-Release Supervision and Incarceration as a Result of the Due Process Violation, but He Was Clearly Incarcerated on a Nullity ........................................................................................ 16

CONCLUSION ................................................................................................................... 17

## TABLE OF AUTHORITIES

### CASES

*Betances v. Fischer*, 837 F.3d 162 (2d Cir. 2016) ..................................................... 2, 3, 6

*BMW of N. Am. v. Gore*, 517 U.S. 559 (1996) .......................................................... 10, 11

*Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119 (2d Cir. 2012) ................................ 8

*Dedjoe v. Esper*, 804 F. App'x 1 (2d Cir. 2020) ........................................................... 8

*Earl v. Bouchard Transp. Co.*, 917 F.2d 1320 (2d Cir. 1990) ........................................... 8

*Earley v. Annucci*, No. 9:08-CV-669 (DJS), 2018 WL 5993683 (N.D.N.Y. Nov. 15, 2018) ........ 16

*Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) ....................................................... passim

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 644 F. Supp. 2d 310 (S.D.N.Y. 2009) ....... 15

*In re Simon II Litig.*, No. 00-CV-2340, 2002 WL 35078407 (E.D.N.Y. Oct. 22, 2002),
   reversed on other grounds, 407 F.3d 125 (2d Cir. 2005) ........................................... 13

*Ismail v. Cohen*, 899 F.2d 183 (2d Cir. 1990) ...................................................... 8, 10

*Newton v. City of N.Y.*, 171 F. Supp. 3d 156 (S.D.N.Y. 2016) ....................................... 11

*Saleh v. Pretty Girl, Inc.*, No. 09-CV-1769 (RER), 2022 WL 4078150
   (E.D.N.Y. Sept. 6, 2022) .......................................................................... 11

*Santiago v. Cuomo*, No. 12-CV-2137 (KAM)(ST), 2019 WL 8587292
   (E.D.N.Y. Sept. 23, 2019) ...................................................................... 3, 16

Santiago v. Fischer, No. 12-CV-2137 (KAM)(SLT), 2022 WL 17227673
   (E.D.N.Y. Nov. 25, 2022) .......................................................................... 14

*Smith v. Wade*, 461 U.S. 30 (1983) ................................................................ 9, 14

*Sowers v. R.J. Reynolds Tobacco Co.*, 975 F.3d 1112 (11th Cir. 2020) ............................... 13

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) .......................................... 10, 13

*Warren v. Pataki*, 823 F.3d 125 (2d Cir. 2016) ........................................................................ 16

*Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106 (2d Cir. 2015) ...................................................... 14

**STATUTES**

42 U.S.C. § 1983 .......................................................................................................................... 3, 14

Federal Rule of Civil Procedure 50 ............................................................................................ 10

Federal Rule of Civil Procedure 59 ............................................................................................ 10, 12

New York Penal Law §70.4 .................................................................................................... 2, 4, 14, 15

Plaintiff Jesus Santiago hereby submits this Memorandum in opposition to the motions to vacate the punitive damages award, a new trial, or remitter, filed by Defendants Brian Fischer, Anthony Annucci, and Terrence Tracy.

## PRELIMINARY STATEMENT

Defendants, in moving for a new trial on damages, rehash the same arguments this Court has already rejected, other courts in this Circuit have already rejected, and the Second Circuit itself has already rejected. This Court should reject them again. The motion reveals, time and again, Defendants' continued disdain and disregard for the power of Federal courts to find state actions and state actors violated the United States Constitution. It was precisely this willful disregard for the Second Circuit's authority that justifies punitive damages in this case, which the jury rightfully awarded.

The case is, in fact, straightforward. The State of New York and its agents, including Defendants, illegally, administratively and unilaterally imposed sentences of post-release supervision on thousands of New Yorkers. The Second Circuit held that was unconstitutional in *Earley I*, and the Supreme Court denied *certiorari*. The Defendants knew the sentences were illegal after *Earley I* was decided. The Defendants knew that the state had imposed them unilaterally. The state could have *stopped* imposing them unilaterally as well. Now, on this motion, the Defendants seek to argue in numerous ways that while they were empowered to impose the sentences unilaterally, it was everybody else's fault but their own that they did not unilaterally *remove* the sentences.

The evidence showed and their testimony shows these Defendants—in control of the entire New York State prison apparatus, at the time—simply refused to accept that the sentences they imposed were a nullity, and chose to put and keep people in jail even though they had no legal authority to do so. That callous indifference to the rights of people with illegally imposed

1

sentences, that upending of moral intuition, offended the jury in this case, and so they punished

these Defendants and compensated Mr. Santiago for his loss.  Defendants make no attempt to

even apply the correct standard in its argument, simply relying on the testimony of its own

witnesses to justify the granting of a new trial, making no attempt to argue to the court that *no*

*reasonable juror* could have found against the Defendants.  This jury was more than reasonable

in awarding the level of compensatory and punitive damages that they awarded in this case, and

this Court should uphold the award.

**PROCEDURAL BACKGROUND AND**
**FACTS AS DECIDED ON SUMMARY JUDGMENT AND AT TRIAL**

**I.     Legal History of *Earley, Betances*, and This Action**

Plaintiff did not anticipate having to restate the legal history of this action on this motion,

and Plaintiff is certain the Court is well-acquainted with it, but as Defendants attempt to undo the

history of the case on this motion, it requires restating.  Many of the issues briefed on this motion

have already been decided by the Second Circuit and this Court.  In sum, Defendants' recitation

of the facts as adduced at trial simply contradict the law of the case, and should be ignored.

(Defs' Br. at 3-11.)

"In 1998, the New York State Legislature amended the sentencing scheme for violent

felons to require that every determinate sentence of imprisonment for a violent felony be

followed by a PRS term." *Betances v. Fischer ("Betances III")*, 837 F.3d 162, 164 (2d Cir.

2016).  While New York Penal Law §70.45 required that sentencing courts include a term of

PRS as part of each sentence, not all judges announced PRS terms during sentencing

proceedings.  *Id*. at 165.  Where the judge did not announce them, "DOCS simply added the PRS

term administratively." *Id.*  Plaintiff was one such person.

2

In 2006, the Second Circuit found the administrative imposition of post-release supervision sentences unconstitutional.  *Earley v. Murray* ("*Earley I*"), 451 F.3d 71 (2d Cir. 2006).  In *Betances III*, the Second Circuit held that the three Defendants in this case, "did not take objectively reasonable steps to comply with *Earley I* because, even viewing the evidence in the light most favorable to them, it took Annucci 19 months, Tracy 15 months, and Fischer 14 months to take the first meaningful steps to bring their departments into compliance with *Earley I*.  All three confirmed that their noncompliance was not the result of oversight or confusion; they understood that *Earley I* required them to change their practices but affirmatively decided not to do so."  *Betances III*, 837 F.3d at 172.

After *Betances III*, this Court found, on a motion for summary judgment, that, per *Betances*, "Defendants Annucci, Fischer, and Tracy [are] liable under 42 U.S.C. § 1983 for violating Plaintiff's due process rights for a specific period: from June 12, 2007, when Plaintiff returned to state custody for violation of the administratively imposed PRS, to February 6, 2008."  Undeterred, Defendants then moved on October 15, 2018, to limit Plaintiff's damages to mere nominal damages, arguing that the only damages that flowed from their bad conduct were nominal, because the PRS *should* have been entered at sentencing and *had* Mr. Santiago been referred for resentencing, he would have had the sentence imposed.

This Court rightly rejected that argument.  The Court held that "it is the defendant's burden to establish this 'no harm-no foul' defense" and "Defendants here have not established, because they cannot, that Plaintiff would have been resentenced to a term of PRS *nunc pro tunc* had he been referred for resentencing during the period of their liability."  *Santiago v. Cuomo*, No. 12-CV-2137 (KAM)(ST), 2019 WL 8587292, at *8 (E.D.N.Y. Sept. 23, 2019) (emphasis added).  This Court noted that, in fact, "in December 2010, when Plaintiff appeared for

3

resentencing in Kings County, the court found no evidence that PRS had been imposed by the sentencing court in 2002, and declined to impose PRS at resentencing." *Id.*

Just before trial, Defendants moved to limit Plaintiff's damages to compensatory damages, arguing that Plaintiff could not prove the Defendants acted with malice. Defendants made this same application at trial. The Court rejected the argument. (Dkt. No. 202.) The Court held that the Plaintiff was entitled to seek punitive damages arguing that Defendants had acted with callous indifference to his constitutional rights. *Id.* In that motion, the Court also held that Defendants were not entitled to introduce evidence regarding Penal Law §70.45, because it is not relevant. *Id.* Defendants' liability is for acting without lawful authority, after the Second Circuit made it clear they lacked authority. Defendants have never had the power to impose a sentence under §70.45, or any other law, so it is entirely irrelevant to the analysis.

## II. Plaintiff's Compensatory Damages as Proven at Trial

Jesus Santiago served concurrent terms of incarceration for Federal and State crimes. When he pled guilty to his sentence in New York State, he served it concurrently with his Federal sentence. He also had a Federal parole sentence. At his plea allocution before the court in New York, the colloquy with the court reads:

> Court: In addition to the three and a half years, there's a five-year post-release supervision time that will be imposed.
>
> Mr. Santiago: [The Federal government] already gave me four years on parole.
>
> Court: I'm not sure how that would work out with parole. In effect, it's the same thing. I don't know. Most terms are concurrent. I just don't know. So I couldn't make any promises to you. Is this what you want to do?
>
> Mr. Santiago: Yes.

Mr. Santiago was then sentenced and the judge did not add a period of post-release supervision to his New York sentence at his sentencing. (*See* Ex. E.)

4

DOCCS then unconstitutionally added a term of post release supervision to Mr. Santiago's sentence.  After serving his prison sentence, he was released.  He was then arrested in Virginia, out of the state, and held for 8 months in Federal prison for violating his parole.  Then, because of the illegal PRS term, he was extradited to New York, taken to Rikers and then sentenced to serve a term in New York State prisons for violating his illegally imposed PRS sentence.  There is no evidence that even suggests his Federal prison time was lesser or discounted because he also had to serve time in New York; he served two full sentences for the parole violation.

He was then released, and in 2010, he was finally resentenced, because the Defendants in this action and the State of New York finally took steps to resentence people with illegally imposed PRS.  At the resentencing, the judge declined to resentence Mr. Santiago to PRS.  He stated, "It appears that there was no discussion or agreement concerning post-release supervision as part of the defendant's sentence."  (Ex. 3.)  Accordingly, he declared, the sentence a nullity. (*Id.*)

Mr. Santiago testified regarding the damage that his time at Rikers Island and in New York State prisons did to him.  At Rikers Island, while awaiting his parole revocation hearing, immediately upon arriving, he was assaulted.  (Tr. 43-47.)  Because of the assault, he felt unsafe, and accepted the parole revocation on the unconstitutional PRS.  (Tr. 47-49.) He testified about the ways in which he feared for his life upstate.  (Tr. 49-54.)  He described the 234 days illegally incarcerated, "like being buried alive, like your life is on pause."  (Tr. 55.)

## III.    Defendants' Callous Failures to Act

It is law of the case that all three Defendants "became aware of *Earley I*'s holding at different times," and noted that Defendant Annucci despite "immediately understanding *Earley*

5

*I*'s holding in 2006 . . . deliberately refused to change DOCS procedures to bring them into
compliances.  (Dkt. No. 202 at 4) (citing *Betances v. Fischer* ("*Betances II*"), 837 F.3d 162, 165
(2d Cir. 2016)).  The same Court found that Fischer "agreed with Defendant Annucci's decision
not to follow it."  Defendant Tracy was also "aware of and understood *Earley I* and decided not
to follow it. *Id.*  As the Second Circuit has already held, "their noncompliance was not the result
of oversight or confusion; they understood that *Earley I* required them to change their practices
but affirmatively decided not to."

As the Court ruled before instructing the jury, "*Betances* suggests . . . that what they
should have done is either seek re-sentencing by requesting either the DA or the Court re-
sentence; and if the DA or the Court then refused that request, they said that would have been
fine and the inquiry for the defendants. *But each of them testified they didn't do anything of that
nature.  They didn't – none of them caused a letter or an application to be made*. . . Mr. Fischer
testified that he didn't have authority to vacate post-release supervision that had been imposed by
DOCCS, yet DOCCS [was] without authority to impose post-release supervision. And *Betances*
made clear that DOCCS should have vacated those PRS terms." (Tr. 210.) (emphasis added).

And the evidence at trial further established their callous indifference. Annucci admitted
that he recognized *Earley I* had a wide-raging impact.  And Tracy admitted that *Earley I* would
have a big impact on his population of people on parole and post-release supervision.  Defendant
Annucci, who Defendants claim took a *positive* step in protecting the rights of illegally
incarcerated and supervised citizens when he sent an email to the Office of Court Administration
on July 20, 2006, knew immediately that *Earley I* had rendered thousands of administratively
imposed sentences a nullity.  (Defs.' Br. at 22: "the evidence shows that Defendants recognized
the possible remedy of re-sentencings and attempted to direct individuals to their sentencing

courts to cure PRS terms e-mailed the Office of Court Administration to urge the courts to comply with *Earley*".) But the e-mail did not, in fact, urge the courts to *re-sentence* anybody. In fact, as he testified, the email indicates that he does not intend to take *any* steps to rectify illegally imposed sentences.

Mr. Annucci then made a database to attempt to figure out who in DOCCS's system was illegally held or supervised. Having made the database, an incredibly useful exercise if you intend to remove the illegal sentence you yourself had imposed, *Mr. Annucci did nothing to have the individuals released or resentenced.* (Tr. 229-31.) Mr. Annucci admitted that unless a court order vacated the sentence no court imposed in the first place, he would take no steps to have the sentence removed. (Tr. 107.) He admittedly "knew that if [people under administratively imposed PRS] violated their post-release supervision . . . they could end up locked up." (*Id.* at 109.) And they did not do it because they "did not have complete records in every case." (*Id.* at 138.)

Mr. Tracy testified that the Division of Parole "did not change our policies as to keeping people under [PRS]" in response to *Early.* (*Id.* at 163.) He did this despite knowing that it could lead to a term of illegal incarceration. (*Id.* at 164.) He admittedly never instructed his division to verify sentencing minutes to confirm that PRS sentences were legal before issuing a warrant to revoke somebody's parole and incarcerate them. (*Id.* at 182.)

Mr. Fischer admitted that he knew the sentences were unconstitutional but "made the decision to keep PRS in place for those that DOCCS had already imposed it upon." (*Id.* at 190.) And when asked if he understood that *Early I* had made the PRS sentences a nullity, he testified he had but that he needed a "court order to do something about it." (*Id.* at 202.) When it was pointed out to him that *Earley* was a court order, he testified that it was only a court order in a

particular case, despite the clear holding of *Early* otherwise and having imposed the sentences themselves without court order.  (*Id.* at 13-18.)

## LEGAL ARGUMENT

### I.    Legal Standard on a Motion for a New Trial and/or Remittitur

"A district court may set aside a jury's verdict pursuant to [Federal Rule of Civil Procedure] 50 only where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him." *Dedjoe v. Esper*, 804 F. App'x 1, 2 (2d Cir. 2020) (citing *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 127-28 (2d Cir. 2012) (internal quotation marks omitted).

Remittitur is the "process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." *Earl v. Bouchard Transp. Co.*, 917 F.2d 1320, 1328 (2d Cir. 1990).  A verdict is excessive only if it "is so high as to shock the judicial conscience and constitute a denial of justice." *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990).  While this determination is made by examining awards in comparable cases, the district court should not "balance the number of high and low awards and reject the verdict in the instant case if the number of lower awards is greater." *Id.* at 187.  Rather, the Court should determine whether the verdict is "within [a] reasonable range."

### II.    Defendants Acted with Callous Disregard to Plaintiff's Rights and the Jury's Finding of Punitive Damages Was Warranted

Plaintiff has now argued the issue of punitive damages numerous times, with the Defendants seemingly seeking a third bite at the apple to make their argument before this Court that punitive damages should be unavailable.  As argued prior to trial, Plaintiff did not need to

8

prove evil motive with respect to Plaintiff in order to establish punitive damages.  To prove punitive damages, Plaintiff only needed to prove that the Defendants recklessly disregarded Plaintiff's rights and/or intentionally violated federal law.  *See Smith v. Wade*, 461 U.S. 30, 51 (1983) ("reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages").

Defendants consistently and repeatedly ignored Federal law. The term of PRS imposed on Plaintiff was a nullity, per *Earley I*, and it should have been treated as such.  Defendants repeatedly try to mischaracterize *Earley I* as being the beginning of a long process DOCS needed to undertake to in sort out what to do with incarcerated people who did not already have post-release supervision as part of their sentence.  But *Earley I* was actually the end; it settled the entire matter.  The case made it clear that DOCS had no authority to impose additional sentence terms, and the administratively imposed additions they made were a nullity.  Leaving the administratively imposed illegal sentence in place for a year, and leading to Plaintiff's imprisonment, was plainly unconstitutional.

Ignoring the *Earley I* ruling, and continuing to ignore Federal rulings until the New York Court of Appeals agreed with the Second Circuit, clearly exhibited callous disregard to Plaintiff's right to be free from an unconstitutional sentence.  As such, the jury was more than justified in finding that the Defendants' conduct was worthy of punishment.  As argued at trial when Plaintiff addressed this argument, what the Defendants did was the equivalent of throwing a brick off a roof onto a crowded sidewalk.  They may not have known who was going to get hurt, but they knew or should have known it would happen—reckless disregard for the rights of the people impacted by the policy.  Mr. Santiago can meet this standard with the *Earley I* case,

9

combined with the fact that there is no evidence anyone made any efforts to ensure that Mr. Santiago was not imprisoned based on his illegal post-release supervision term—a term that should have been considered a nullity, as though it did not exist, according to the Second Circuit.

### III.    The Punitive Damages Award Is Entirely Reasonable

In the alternative to ruling for the Defendants on the issue of punitive damages under Rule 50, Defendants seek to have their respective punitive damages awards reduced pursuant to Rule 59.  That motion should also fail.  The award of punitive damages as to each Defendant, here 2.5 times the award of compensatory damages, are entirely reasonable.

A verdict is excessive only if it "is so high as to shock the judicial conscience and constitute a denial of justice." *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990).  "Punitive damages serve a broader function; they are aimed at deterrence and retribution."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003).  In *BMW of N. Am. v. Gore*, 517 U.S. 559 (1996), the Supreme Court established three guideposts for evaluating whether punitive damages awards are reasonable and proportionate: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases."  In *State Farm*, the Court also established that a punitive damage award over 10 times the level of the compensatory damages award would often violate due process.  538 U.S. at 425.

As an initial matter, an award of punitive damages of $250,000 as to each Defendant is proportional to the amount awarded in this case of $100,000, and that would be true even if the punitive damages awards were added together.  Contrary to Defendants' argument the amounts should not be added together.  "Because compensatory damages are assessed on a joint-and-

10

several basis while punitive damages are assessed individually and with an intent to punish and

deter a particular defendant, it is counterintuitive to prorate the collective compensatory damages

amount and compare that to an individual punitive damages amount, or to disregard the

individual nature of punitive damages.  It is therefore appropriate to compare the individual

punitive awards against the total compensatory award." *Saleh v. Pretty Girl, Inc.*, No. 09-CV-

1769 (RER), 2022 WL 4078150, at *29 (E.D.N.Y. Sept. 6, 2022) (internal citations omitted);

*Manzo v. Sovereign Motor Cars, Ltd.*, No. 08-CV-1229 (JG)(SMG), 2010 WL 1930237, at *5

n.6 (E.D.N.Y. May 11, 2010), aff'd, 419 F. App'x 102 (2d Cir. 2011) (holding that because

"punishing and deterring the individual defendant, I suspect the [separate ratios method] is more

appropriate"); *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life

Activists*, 422 F.3d 949, 962 (9th Cir. 2005) ("arriving at the ratio on a plaintiff-by-plaintiff,

defendant-by-defendant basis respects the jury's verdict").  Even the ratio of 7.5-to-1 would not

be outside the ten-to-one ratio suggested by *State Farm*.

    Moreover, as compared to the typical award for a year of wrongful imprisonment, an

award of $250,000 is more than reasonable.  In *Newton v. City of N.Y.*, 171 F. Supp. 3d 156, 159

(S.D.N.Y. 2016), the Court established $1 million per year as a reasonable baseline for a claim of

wrongful imprisonment, which would be closer to $1.2 million in today's dollars.  The combined

punitive damages award of $750,000 here is well within reason in that context and the overall

jury award is reasonable.

    Defendants focus on the reprehensibility prong of *Gore*'s guideposts, arguing that their

acts were not reprehensible because they were taken without malice as to any specific

individuals.  Indeed, the evil in their acts was much more banal, and instead were undertaken

with a callous disregard to the constitutional rights of thousands of New Yorkers.  Defendants

11

took no efforts to comply with constitutional mandates from the Second Circuit. They *knew with certainty* that some New Yorkers would be illegally imprisoned, as they testified. They built a database to determine how many New Yorkers might have illegally imposed sentences, and still did nothing. If a New Yorker illegally imprisoned somebody, they would be charged with kidnapping. For these three employees of DOCCS, they were simply content to let New Yorkers wallow in the dangerous prisons they oversee and thumb their noses at the Federal judiciary.

And they have continued to fight, insisting that Plaintiff and many others like him, were not actually harmed by their actions and entitled to nominal damages only. Throughout this case they have been unremorseful, exactly the sort of act that would justify increased punishment in the criminal context. They are *undeterred* and if they are not punished with punitive damages for their failures to adhere to Second Circuit mandates in this action, they will do so again. The next time the Second Circuit issues a ruling instructing these Defendants—including Mr. Annucci, who now runs DOCCS as the Acting Commissioner—New York State officials need to be deterred from simply ignoring the Second Circuit again. The jury's award is perfectly reasonable to punish and deter their callous disregard for Plaintiff's constitutional rights and should not be reduced pursuant to Rule 59.

Similarly, Defendants seek to have this Court consider Plaintiff's conduct and what Plaintiff knew about his punishment at his sentencing hearing in seeking relief from the jury's award of punitive damages. (Defs' Br. at 3, 16) ("the minutes of the plea hearing indicate that he was informed that the court would impose a sentence that included a 5-year term of PRS" and "Defendant Tracy testified that Plaintiff's plea minutes raised ambiguity about judicial imposition of PRS"). Similarly Defendants seek to blame Plaintiff for their callous disregard to his rights and to turn the punitive damages inquiry around on him, arguing "Had Plaintiff

complied with the law and his unquestionably lawful federal supervised release, he would not have been reincarcerated."

At the outset, it must be noted, the jury clearly rejected this argument as a matter of fact, and they cannot rely on factual findings that the jury rejected. But even if that were an accurate rendition of Plaintiff's plea and sentence, and the jury's understanding thereof, which it is not, they are wrong on the law.  Punitive damages focus on defendants not plaintiffs and are awarded in regard to the tortfeasors' conduct.  *In re Simon II Litig.*, No. 00-cv-2340, 2002 WL 35078407, at *75 (E.D.N.Y. Oct. 22, 2002), reversed on other grounds, 407 F.3d 125 (2d Cir. 2005) ("The individual plaintiff's action in a punitive damages case is but a vehicle for the bringing the punitive claim, which is intended to deter (more forcefully than compensatory damages) harmful behavior.").  "Compensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct.  By contrast, punitive damages serve a broader function; they are aimed at deterrence and retribution."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (internal citations omitted).  "Punitive damages are focused entirely on the defendant and its conduct." *Sowers v. R.J. Reynolds Tobacco Co.*, 975 F.3d 1112, 1137 (11th Cir. 2020).  The jury was well within its rights to punish the Defendants for their callous conduct and Defendants' view that the Court should focus on the Plaintiff's conduct is yet another attempt to blame somebody else for their egregious misconduct.

IV.    **No New Trial is Necessary and the Court Has Already Ruled Defendants' Arguments Lack Merit Regarding the Defendants' Inability to Present Certain Evidence**

      a.    **Defendants Were Rightly Not Permitted to Introduce Evidence Regarding Penal Law §70.45**

Prior to trial Defendants moved the Court *in limine* to introduce evidence that Defendants were relying on New York Penal Law §70.45.  As this Court held pre-trial, Penal Law §70.45 is not "relevant to Defendants' defense against punitive damages. '[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the *federally protected rights of others*.'" *Santiago v. Fischer*, No. 12-CV-2137 (KAM)(SLT), 2022 WL 17227673, at *2 (E.D.N.Y. Nov. 25, 2022) (quoting *Smith v. Wade*, 461 U.S. 30, 56, 103 (1983) and citing *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 115 (2d Cir. 2015) (emphasis added)).

Nothing has changed in the intervening two months since the Court's decision.  The evidence at trial demonstrated, and indeed this motion shows, that the Defendants remain indifferent to the Federal courts imposing constitutional standards on those in charge of DOCCS. As this Court held "Defendants' argument that they could properly rely on Penal Law §70.45 after *Earley I* and *Earley II* is difficult to square with the statutory text and cannot be reconciled with Second Circuit precedent . . . the existence of a state law does not excuse Defendants from scrupulously following the federal Constitution." *Santiago v. Fischer*, 2022 WL 17227673, at *2. As such, Penal Law §70.45 is irrelevant to punitive damages and this Court should reject Defendants' arguments. Defendants never had the authority to impose sentences or enforce §70.45 , and they certainly never had an obligation to do either. They are liable, and the jury

14

rightly punished, Defendants for ignoring the Second Circuit's clear instruction on the limits of their power.

>    b.  **Precluding Defendants from Testifying About Their Understanding That Other State Actors Resisted *Earley* Was *Not* Prejudicial Error**

Similarly, Defendants' arguments that precluding them from offering evidence that *other* state actors were also acting with callous disregard to federally protected rights was "prejudicial error" must be rejected. Defendants argue that they "should have been able to testify that they understood the district attorneys' resistance to *Earley I* as rendering efforts to seek resentencing futile, particularly in light of State court decisions that expressly rejected the Second Circuit's reading of Penal Law §70.45," which was "relevant to their motive for not seeking resentencings at the time relevant to Plaintiff."

But it is no excuse for Defendants' actions that they could speculate about district attorneys or judges failing to heed Second Circuit law. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 644 F. Supp. 2d 310, 322 (S.D.N.Y. 2009) ("the common practice of imposing punitive damages in joint and several liability cases shows that punitive damages are available when the compensatory damages do not reflect defendant's actual (or potential) share of the harm to plaintiffs"). They had an obligation to take steps to have Plaintiff and others like him resentenced, and they did not. Defendants, who had imposed the sentences unliterally without a judge's approval could have also released Plaintiff and others like him without a resentencing. As Your Honor held at trial, "Mr. Fischer testified that he didn't have authority to vacate post-release supervision that had been imposed by DOCCS, yet DOCCS without authority imposed post-release supervision." Having unconstitutionally and illegally imposed the sentences themselves, it is a galling excuse to now to say that somebody else needed to remove

15

the sentences.  Testifying about what others would have done in response to the Constitutional

bad acts would not have illuminated the Defendants state of mind, it would have obfuscated it.

> **c.  Defendants Seek to Rehash Arguments Regarding Plaintiff's Post-Release Supervision and Incarceration as a Result of the Due Process Violation, but He Was Clearly Incarcerated on a Nullity**

Defendants argue that the jury should have been instructed that they should determine

whether, had Plaintiff received the process he was due, he would have been resentenced and

subjected to the same punishment, entitling him to merely nominal damages.  (Defs.' Br. at 25.)

This Court has already rejected this argument.  On summary judgment, when Defendants made

the same argument, the Court rejected the argument:

> As the Second Circuit has recently noted, it is the defendant's burden to establish this "no harm-no foul" defense. [*Earley v. Annucci*, No. 9:08-CV-669 (DJS), 2018 WL 5993683, at *4 n.4 (N.D.N.Y. Nov. 15, 2018)] (quoting *Warren v. Pataki*, 823 F.3d 125, 141 (2d Cir. 2016)). The instant Plaintiff, like the Plaintiff in *Earley*, was not resentenced to a term of PRS.

*Santiago v. Cuomo*, No. 12-cv-2137, 2019 WL 8587292, at *8 (E.D.N.Y. Sept. 23, 2019).  There

was no evidence supporting such a defense and so there was no right to make it to a jury.

Plaintiff was not resentenced to PRS, and speculation about what a judge might have done had

they referred Mr. Santiago for resentencing is not evidence.  Worse for Defendants, there is good

reason to believe even in their speculative scenario Mr. Santiago would *not* have been

resentenced given he had served a lengthy term of parole that could have run concurrently with

his state PRS.  Indeed, Mr. Tracy noted at trial that there was "ambiguity" in Plaintiff's plea

minutes, precisely the sort of ambiguity that would allow a reasonable juror to conclude that

Defendants' callous conduct led to his lengthy incarceration.

**CONCLUSION**

For the reasons stated above, Defendants motions for vacatur of the punitive damages

award, a new trial, and for a reduction in damages, should be rejected.


Dated:  New York, New York
         February 13, 2023

Rickner PLLC

By:            /s/

          Joel Wertheimer
          Rob Rickner

14 Wall Street, Suite 1603
New York, New York 10005
Phone: (212) 300-6506
Fax: (888) 390-5401
*Attorney for Plaintiff*

17