MANDATE

# UNITED STATES COURT OF APPEALS
# FOR THE
# SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of October, two thousand twenty-five.

Before: Gerard E. Lynch,
Susan L. Carney,
Steven J. Menashi,
*Circuit Judges*.

---

Jesus Santiago,

Plaintiff-Appellee-Cross Appellant,

v.

Brian Fischer, individually and as Commissioner of the New York State Department of Corrections and Community Supervision, Anthony J. Annucci, individually and as Deputy Commissioner of and Counsel to the New York State Department of Correctional Services, Terrence X. Tracy, individually and as Chief Counsel to the Division of Parole,

Defendants-Appellants-Cross Appellees.

---

**JUDGMENT**

Docket Nos. 23-814(L), 23-855(XAP)

The appeals in the above captioned cases from an order and judgment of the United States District Court for the Eastern District of New York were argued on the district court's record and the parties' briefs.

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the judgment of the district court is REVERSED as to the denial of the motion for a new trial related to the 2007-08 period, and VACATED as to the dismissal of the claims related to 2010 on the ground of qualified immunity. This matter is REMANDED for further proceedings consistent with this Court's opinion.

For the Court:
Catherine O'Hagan Wolfe,
Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

MANDATE ISSUED ON 11/20/2025

No. 23-814(L)
*Santiago v. Fischer*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2023
Nos. 23-814(L), 23-855

**JESUS SANTIAGO,**
*Plaintiff-Appellee-Cross-Appellant,*

v.

**BRIAN FISCHER, individually and as Commissioner of the New York State Department of Corrections and Community Supervision, ANTHONY J. ANNUCCI, individually and as Deputy Commissioner of and Counsel to the New York State Department of Correctional Services, TERRENCE X. TRACY, individually and as Chief Counsel to the Division of Parole,**
*Defendants-Appellants-Cross-Appellees.*[*]

---

On Appeal from the United States District Court
for the Eastern District of New York

---

ARGUED: JUNE 18, 2024
DECIDED: OCTOBER 30, 2025

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

Before: LYNCH, CARNEY, and MENASHI, *Circuit Judges*.

Plaintiff Jesus Santiago claimed that state officials violated his constitutional rights by enforcing terms of his post-release supervision that our court ruled unconstitutional in *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006). At trial, the defendants sought to introduce evidence that legal and administrative impediments prevented the resentencing of Santiago and correspondingly reduced the liability of the defendants for failing to achieve the resentencing. The district court barred the evidence on the grounds that it would confuse the jury and had limited probative value. After the jury returned a verdict awarding Santiago $100,000 in compensatory damages and $750,000 in punitive damages, the defendants moved for a new trial. The district court denied the motion. We hold that the district court abused its discretion by barring the evidence of impediments and therefore erred by denying the motion for a new trial. We reverse the judgment of the district court insofar as it denied the motion for a new trial related to Santiago's incarceration in 2007-08. At the same time, we conclude that our precedents require the denial of qualified immunity as to both the 2007-08 period and the period of incarceration in 2010. We vacate and remand insofar as the district court dismissed the claims related to the incarceration in 2010 on summary judgment. We remand for further proceedings consistent with this opinion.

---

BLAIR J. GREENWALD, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General of the State of New York, New York, NY, *for Defendants-Appellants-Cross-Appellees*.

ROB RICKNER, Rickner PLLC, New York, NY, *for Plaintiff-Appellee-Cross-Appellant*.

MENASHI, *Circuit Judge*:

From 2000 to 2001, Jesus Santiago committed several state and federal felonies in New York and Virginia. After serving his term in prison, Santiago began to serve his state and federal terms of post-release supervision. Santiago repeatedly violated the terms of that supervision and, accordingly, was repeatedly reincarcerated.

In 2006, we held that the rules for post-release supervision in New York violated the constitutional rights of some criminal defendants. *See Earley v. Murray*, 451 F.3d 71, 76 (2d Cir. 2006).[1] We ordered New York to remedy the constitutional violations but offered limited guidance about how to do so. In 2008, the state legislature responded to our ruling by authorizing corrections officials to initiate resentencing proceedings in order to re-impose terms of post-release supervision. After those changes were implemented, the defendants initiated a resentencing proceeding for Santiago in 2010. But from June 2007 to February 2008, Santiago had been incarcerated for violating the terms of his post-release supervision. Santiago sued for compensatory and punitive damages on the ground that he had been incarcerated in violation of his constitutional rights.

The district court dismissed the complaint insofar as it sought damages for incarceration from September to December 2010 because the defendants acted reasonably at that time. But the district court

[1] We refer to this decision as *Earley* or *Earley I*.

allowed the claims for damages related to the incarceration in 2007-08 to proceed to trial.

At trial, the defendants sought to introduce evidence that legal and administrative impediments prevented the defendants from unilaterally initiating a resentencing proceeding for Santiago during that period. The district court barred the evidence on the ground that it would confuse and prejudice the jury. After the jury returned a verdict awarding Santiago $100,000 in compensatory damages and $750,000 in punitive damages, the defendants moved for a new trial. The district court denied the motion, and the defendants now appeal. Santiago cross-appeals the dismissal of his claims related to his incarceration from September to December 2010.

We hold that the district court abused its discretion by barring the evidence of impediments and therefore erred by denying the motion for a new trial. We reverse the judgment of the district court insofar as it denied the motion for a new trial related to the 2007-08 period. At the same time, we conclude that our precedents require the denial of qualified immunity as to both the 2007-08 and 2010 periods. Accordingly, we vacate the judgment of the district court insofar as it dismissed the claims related to incarceration in 2010 on the basis of qualified immunity. We remand for further proceedings consistent with this opinion.

**BACKGROUND**

In January 2000, Santiago shot someone in the leg with a handgun in Brooklyn, New York. He was indicted in state court—in the Kings County Supreme Court in Brooklyn—for two counts of assault, two counts of criminal possession of a weapon, and one count of criminal possession of a loaded firearm. After Santiago was released on bond pending a criminal trial, he fled New York.

A year and a half later, Santiago was arrested in Virginia on separate federal charges and indicted in the U.S. District Court for the Eastern District of Virginia. In November 2001, he pleaded guilty to possession of crack cocaine with intent to distribute and was sentenced to thirty-seven months of imprisonment and four years of supervised release. The conditions of Santiago's federal supervised release required him to report regularly to his federal probation officer and to submit to drug testing.[2]

While incarcerated in December 2001, Santiago sent a letter to the state court in New York to resolve his pending charges from the Brooklyn shooting. Santiago was transferred from federal custody in Virginia to state custody in New York in January 2002.

**I**

On May 3, 2002, Santiago—while still serving his federal sentence—pleaded guilty in state court before Justice Sheldon Greenberg to one count of criminal possession of a weapon. Justice Greenberg explained during the hearing that Santiago was pleading guilty "in exchange for" the "promise" of the state court to sentence Santiago to (1) the minimum determinate term for a Class C violent felony of three and a half years of imprisonment to run concurrently with his federal sentence from January 2, 2002, and (2) the "five-year post-release supervision time that will be imposed on a Class C felony." J. App'x 352-53. As part of this arrangement, the terms of Santiago's federal supervised release would later be modified to require that he remain in New York State.

[2] *See* Minute Entry, *United States v. Santiago*, No. 01-CR-251 (E.D. Va. Nov. 16, 2001) (sentencing hearing).

**A**

Justice Greenberg asked if this arrangement reflected what Santiago "want[ed] to do," and Santiago replied "[y]es." *Id.* at 353. Santiago reiterated his understanding of and agreement with the terms of the plea agreement several times during allocution. *See id.* at 353-59. The Kings County District Attorney's Office also agreed to the plea and to the sentence. *See id.* at 359-60. After allocution, Santiago asked Justice Greenberg to impose the sentence immediately. Justice Greenberg stated that he could not do so until the court received the presentence report. Justice Greenberg scheduled the sentencing hearing for two weeks later.

Unfortunately, Justice Greenberg was unavailable on the scheduled date because of a car accident. So on May 14, 2002, a sentencing hearing was held before Justice Gustin Reichbach. The defendants have not been able to locate the minutes or a transcript from the sentencing hearing, but the parties stipulated at trial that at the hearing Santiago received a term of imprisonment of three and a half years but "there was no mention of post-release supervision." *Id.* at 614-15.

After sentencing, a court clerk filled out a form titled "Sentence and Order of Commitment" reporting the results of the sentencing hearing. The clerk recorded the term of imprisonment of three and a half years running concurrently with the federal sentence from January 2, 2002. The form did not include a section to record a term of post-release supervision, and the clerk did not separately write a term of post-release supervision in the margin.

**B**

In April 2004, Santiago was released from federal custody and transferred to the custody of the New York State Department of

Correctional Services ("DOCS") to serve the rest of his concurrent state sentence of imprisonment.[3] The DOCS calculated the remaining period of imprisonment on his state sentence, set to expire on May 29, 2005. The DOCS assumed that the state court had imposed the post-release supervision term because that term was required by then-binding New York law.

The term of post-release supervision had been required since 1998, when the state legislature reformed the sentencing framework applicable to violent felons. *See* Ch. 1, §§ 4, 15, 1998 N.Y. Laws 1, 2, 5-6. Under the reformed rules, violent felons received a determinate sentence followed by a mandatory period of post-release supervision. *See People v. Catu*, 4 N.Y.3d 242, 244 (2005). The 1998 reform eliminated the prior practice of imposing an indeterminate sentence with a maximum period of incarceration and a parole-eligibility date. The legislature instead required courts, in most cases, to impose a fixed sentence for a definite period established by statute followed by a fixed period of post-release supervision. *See* N.Y. Penal L. § 70.00(6).

**C**

On November 5, 2004, Santiago was conditionally released from state prison seven months early. Under New York law, when someone is conditionally released from prison, the remaining portion of his prison term is "held in abeyance." N.Y. Penal L. §§ 70.40(2), 70.45(5)(a). If the person then violates the conditions of his supervision, he receives no credit against the sentence until he is reincarcerated or restored to supervision. *See id.* §§ 70.40(3)(b),

---

[3] In 2011, the DOCS and the Division of Parole ("DOP") merged to form the Department of Corrections and Community Supervision. *See People v. Brown*, 25 N.Y.3d 247, 249 (2015). We refer in this opinion to the entities that existed at the relevant time.

70.45(5)(d). For that reason, seven months of Santiago's term of imprisonment was held in abeyance while he served what the DOCS believed was his mandatory term of post-release supervision.

While Santiago was serving his state-mandated post-release supervision, he was simultaneously serving a federal term of supervised release based on his 2001 conviction. Both his state term of post-release supervision and his federal term of supervised release required him to report to a probation officer, to submit to drug testing, and to remain in New York State. But within the next year, Santiago moved to Virginia in violation of the conditions of both sentences.

**D**

On October 30, 2005, local authorities in Virginia arrested Santiago on charges involving the brandishing of a firearm and possession of marijuana. Santiago was released from local custody in Virginia on November 17, 2005. It appears that neither federal nor New York authorities were notified of the arrest or the release.

But almost a year later in October 2006, federal authorities in Virginia arrested Santiago again.[4] As part of the ensuing proceedings, the U.S. District Court for the Eastern District of Virginia determined that Santiago had violated the terms of his federal supervision and sentenced him to eight months of imprisonment followed by thirty additional months of supervised release.

After completing the new term of federal incarceration, Santiago was transferred to New York on June 12, 2007. He was charged with violating the conditions of his state post-release supervision by absconding to Virginia and committing new crimes in

---

[4] *See* Marshal's Return on Warrant for Arrest, *United States v. Santiago*, No. 01-CR-251 (E.D. Va. Oct. 25, 2006), ECF No. 42.

2005 and 2006. Following a hearing, a state administrative law judge sustained the charges and ordered that Santiago return to the custody of the DOCS to be incarcerated until February 2, 2008. *See* J. App'x 113, 148, 616-17.

**E**

On February 1, 2008, Santiago was released from state prison.[5] But he remained subject to federal supervised release and to state post-release supervision. *See* J. App'x 617. As before, the conditions of both forms of supervision barred him from leaving New York State. But by February 6—only a few days after his release from state prison—Santiago had again left for Virginia in violation of those conditions.

Two months later, Virginia authorities arrested Santiago for the 2005 offenses involving the brandishing of a firearm and possession of marijuana. Santiago pleaded guilty to possession of marijuana with intent to distribute and was sentenced in a Virginia state court to ten years of imprisonment with eight years suspended on the condition that he serve one year of supervised probation.

While serving that sentence in June 2008, Santiago appeared before the U.S. District Court for the Eastern District of Virginia to address charges regarding his violation of the conditions of the federal term of supervised release that began when Santiago left New York state prison in February 2008. The district court determined that Santiago violated the terms of supervised release and sentenced him

---

[5] Because February 2, 2008, was a Saturday, Santiago was released on February 1. *See* N.Y. Corr. L. § 500-*l* ("When the date of release … falls on Saturday or Sunday, it shall be deemed to fall on the preceding Friday.").

to seven months of imprisonment and two further years of supervised release.

## II

In September 2010, Santiago was released from federal prison in Virginia, and he was transferred back to New York on charges of violating the conditions of his state post-release supervision in February 2008. But the law applicable to mandatory post-release supervision in New York had changed while Santiago was incarcerated.

### A

In 2006, this court held that the Due Process Clause of the U.S. Constitution requires a state court that imposes a determinate sentence of incarceration on a defendant to make a separate oral pronouncement of any term of post-release supervision, even if the term is statutorily required. *See Earley*, 451 F.3d at 75-76. If the state court does not orally pronounce the term of post-release supervision, it "is a nullity." *Id.* at 76. Recognizing that this holding could cause substantial disruption, our court emphasized that "[o]ur ruling is not intended to preclude the state from moving in the New York courts to modify" a defendant's "sentence to include the mandatory PRS term." *Id.* at 77. We explained that when the DOCS has "discovered the oversight" of a lack of oral pronouncement of the mandatory term of post-release supervision, "the proper course would [be] to inform the state of the problem, not to modify the sentence unilaterally. The state then could [move] to correct the sentence through a judicial proceeding, in the defendant's presence, before a court of competent jurisdiction." *Id.* at 76. Based on these instructions, the district court on remand in *Earley* stayed the grant of habeas relief "to permit the sentencing court to exercise its power to conform the sentence to the

mandate of New York law." *Earley v. Murray*, No. 03-CV-3104, 2007 WL 1288031, at *3 (E.D.N.Y. May 1, 2007).

The *Earley* decision called into question the sentences of thousands of defendants whose terms of post-release supervision may not have been orally pronounced at sentencing. *See* J. App'x 562-63. At the time, however, the remedy that *Earley* identified—a resentencing that would cure the initial failure to pronounce the mandatory term of post-release supervision under state law—could be initiated only by the courts, state prosecutors, and defendants. State corrections officials had no authority to refer cases to state court for resentencing.

And state prosecutors were not always willing to make the referrals. The *Earley* decision "was 'met with resistance at the state level,' and many officials and offices failed to take action to address the many offenders subjected to administratively imposed PRS." *Santiago v. Cuomo*, No. 12-CV-2137, 2019 WL 8587292, at *3 (E.D.N.Y. Sept. 23, 2019) (quoting *Betances v. Fischer*, 837 F.3d 162, 166 (2d Cir. 2016)).[6] "The Kings County District Attorney remained similarly resistant to addressing this issue, filing briefs challenging the notion that individuals … were entitled to have the administrative PRS component of their sentence stricken." *Id.* Claims by individual defendants in state court often failed because the state courts decided that the DOP was required to enforce the mandatory term of post-release supervision despite *Earley*.[7] State courts also denied requests

[6] We refer to the *Betances* decision as *Betances* or *Betances II*.

[7] *See, e.g.*, *People ex rel. Joyner v. DOP*, No. 75045, 2007 WL 1345702, at *5-6 (N.Y. Sup. Ct. May 8, 2007) ("[T]he Division of Parole would itself be in violation of the law if it did not enforce the statute mandating post-release supervision and supervise all violent felony offenders following their release from state prison, as 'Jenna's Law' requires. Every judgment of

by the DOCS and the DOP to refer defendants to the relevant sentencing courts for resentencing.[8] The DOCS and the DOP even "filed a declaratory judgment action in state court seeking judicial approval of a plan that would permit state agencies, district attorneys, and state courts to systematically identify and refer improperly sentenced inmates back to the sentencing courts to be resentenced." *Betances*, 837 F.3d at 170. "The state court, however, did not grant the injunctive relief sought by DOCS and DOP." *Id*.

In April 2008, the New York Court of Appeals held that state statutes required the oral pronouncement of a mandatory term of post-release supervision in the presence of a defendant. *See People v. Sparber*, 10 N.Y.3d 457, 469-71 (2008); *Garner v. DOCS*, 10 N.Y.3d 358, 362 (2008) ("[T]he sentencing judge—and only the sentencing judge—is authorized to pronounce the PRS component of a defendant's

---

conviction for a second violent felony offense includes a discretionary period of determinate incarceration, within a minimum and maximum range set by the legislature, and a mandatory five year period of post-release supervision. In these cases, the judgments of conviction included both the incarceratory periods actually pronounced, and the five year period of post-release supervision period mandated by law. Since that is the law, habeas corpus release is entirely inappropriate."); *Betances*, 837 F.3d at 166 ("New York courts were inconsistent in adhering to *Earley I*'s holding.") (citing cases).

[8] *See* J. App'x 195-96 ("Although DOCS and Parole asked Article 70 and 78 courts to refer PRS matters to the sentencing courts, such courts rarely granted such applications. Indeed, in the *habeas* proceeding brought in the Bronx County Supreme Court by a named plaintiff in the *Betances* class action pending in the Southern District of New York, the Bronx County Supreme Court denied the application of Parole to transfer the matter to the criminal court, and in declining to refer the proceedings, stated that the court did not have the authority to transfer petitioner to the criminal court in order to resolve the PRS issues.").

sentence.”).[9] The Court of Appeals explained that “[t]he sole remedy for a procedural error such as this is to vacate the sentence and remit for a resentencing hearing so that the trial judge can make the required pronouncement.” *Sparber*, 10 N.Y.3d at 471.

In June 2008, the state legislature authorized the DOCS and the DOP to refer defendants to state courts for resentencing. *See* Ch. 141, § 5, 2008 N.Y. Laws 3168, 3169-70 (codified at N.Y. Corr. L. § 601-d). The new statutory procedure allowed the DOCS and the DOP to notify state courts and defendants about potentially unpronounced terms of post-release supervision and thereby to trigger remedial proceedings. If the state court determined that the term of post-release supervision had been pronounced, the state court was required to issue a superseding commitment order and accompanying decision confirming as much. If the state court determined that the term may not have been pronounced, the state court would convene a resentencing proceeding with the prosecutor and the defendant at which the defendant could be properly sentenced with or without the otherwise mandatory term of post-release supervision. *See* N.Y. Corr. L. § 601-d(2)-(5); N.Y. Penal L. § 70.85.

[9] The New York Court of Appeals did not address whether that pronouncement was constitutionally required. *See Sparber*, 10 N.Y.3d at 471 n.5 (“Because defendants are entitled to relief under the CPL, we need not reach their constitutional claims, which rely primarily upon the Second Circuit’s decision in *Earley*.”); *Garner*, 10 N.Y.3d at 363 (“Having resolved this issue on statutory grounds, we need not reach petitioner’s constitutional arguments and decline to do so. Neither do we pass on the applicability of *Earley*.”) (citations omitted).

**B**

Based on the new legislation, the DOP referred Santiago to the state court in 2010 to determine whether the term of post-release supervision should remain in force after he was transferred back to New York. On December 15, 2010, Santiago and the Kings County District Attorney's Office appeared before Judge Reichbach. Santiago sought resentencing without a term of post-release supervision, and the District Attorney's Office consented to that resentencing. *See* J. App'x 608. Based on that agreement, Judge Reichbach orally resentenced Santiago without a term of post-release supervision and issued a written order to that effect. *See id.* at 605. Santiago was then released.

## PROCEDURAL HISTORY

This civil case began in May 2012 when Santiago sued state corrections officers for violating his rights under 42 U.S.C. § 1983. Santiago sought compensatory and punitive damages for the purported constitutional violation of enforcing a term of post-release supervision that was not pronounced by the state court at his sentencing in 2002.

**I**

In 2017, the parties cross-moved for summary judgment.[10] The district court denied summary judgment to those defendants whom

---

[10] In May 2012, Santiago was sentenced by the federal district court to nine months of imprisonment for violating the terms of his federal term of supervised release. *See* Minute Entry, *United States v. Santiago*, No. 01-CR-251 (E.D. Va. May 17, 2012), ECF No. 71. In November 2012, Santiago was charged in a Virginia state court with additional crimes. He pleaded guilty to issuing a bomb threat and to assault. Santiago was incarcerated in Virginia until May 2015.

it determined were personally involved in the alleged constitutional deprivation: the commissioner of the New York State Department of Corrections and Community Supervision, the deputy commissioner of the DOCS, and the chief counsel of the DOP. The district court held that these defendants were entitled to qualified immunity for the period preceding the *Earley* decision in 2006 and before June 12, 2007, because Santiago "was not in New York State custody, and would not have been available for a resentencing proceeding." *Santiago v. Cuomo*, No. 12-CV-2137, 2017 WL 11929991, at *10 (E.D.N.Y. Sept. 30, 2017).

The district court decided that these defendants were not entitled to qualified immunity, however, for the period following *Earley* in which Santiago was in New York State custody and his term of post-release supervision was enforced. That period began on June 12, 2007, and ended when Santiago fled New York on February 6, 2008. And the district court decided that the defendants were entitled to qualified immunity again for the period that followed Santiago's transfer to New York in September 2010 because at that point the defendants took prompt and objectively reasonable steps to refer him to state court for resentencing.

**A**

The district court scheduled a trial on the remaining claims. In pretrial motions in limine filed in July 2022, the defendants asked the district court to permit the introduction of evidence of how state law, state prosecutors, and state courts obstructed the defendants from releasing Santiago before February 2008. The defendants also moved to adjourn the trial pending decisions from our court that would address the propriety of introducing such evidence. *See Vincent v. Annucci* (*Vincent II*), 63 F.4th 145 (2d Cir. 2023); *Aponte v. Perez*, 75 F.4th 49 (2d Cir. 2023).

The district court held a status conference in October 2022 at which it stated that it would not allow the evidence of impediments to Santiago's release to be presented at trial. The district court believed that the evidence was irrelevant because the jury would not decide the issue of causation but only the amount of damages to be awarded. The district court explained that the "jury will hear" that "nobody sent [Santiago] back for resentencing" after *Earley* and that "[t]he people who could have sent him back for resentencing are the three defendants who had custody of him and should have done it, and they didn't. It's very simple." J. App'x 474.

**B**

The district court reiterated its decision in November 2022, stating that it would reject the defendants' attempt to introduce evidence of impediments even if the evidence were proffered solely to explain the defendants' subjective understanding that they lacked the authority to release Santiago without judicial intervention. *See id.* at 480-81. The defendants argued that the district court should admit evidence of their understanding of state law and the practices of state officials at least in the context of determining whether the defendants had the requisite intent for an award of punitive damages. The district court agreed to permit additional briefing on that issue.

With the supplemental briefing, the defendants submitted a 2008 memorandum of the governor explaining that the participation of state courts was "crucially important" for the DOCS and the DOP in addressing the need for resentencing.[11] The memorandum

---

[11] Defendants' Supplemental Memorandum of Law in Response to the Court's Request for Further Briefing on the Relevance of Penal Law § 70.45 to Punitive Damages, Exhibit A, at 4, *Santiago v. Cuomo*, No. 12-CV-2137 (E.D.N.Y. Nov. 21, 2022), ECF No. 198-1.

acknowledged that in many cases "the absence of sentencing minutes" would make it "impossible" for the DOCS and the DOP "to know whether PRS was properly imposed at the time of sentence" and that "[s]uch matters are appropriate for judicial resolution." J. App'x 493.

The district court decided that the defendants could not introduce evidence of their understanding that they lacked the legal authority to release Santiago or to refer him to the state courts. *See Santiago v. Fischer*, No. 12-CV-2137, 2022 WL 17227673, at *1 (E.D.N.Y. Nov. 25, 2022). The district court reasoned that the admission of such evidence could confuse the jury and that the risk of confusion outweighed any probative value because the "[d]efendants' liability (including causation) for their unconstitutional conduct has not only been extensively litigated, but also repeatedly determined by the Second Circuit." *Id.* at *3.

**II**

The case was tried to a jury in November 2022. The jury did not hear the proposed evidence regarding the defendants' understanding of state law. Nor did the jury hear that state prosecutors, state courts, or state law might have impeded the defendants from addressing Santiago's unpronounced term of post-release supervision. The jury heard that the defendants imposed an unlawful term of post-release supervision and did not release Santiago or refer him to a state court between June 2007 and February 2008 to address his sentence. *See, e.g.*, J. App'x 531, 534, 554, 563.

In closing, counsel for Santiago emphasized that the defendants could have referred Santiago for resentencing or released him immediately after *Earley*. *See id.* at 586-88, 593-94. The defendants could not respond to the argument with evidence of the impediments

to doing so. S*ee id.* at 589-93. The jury awarded Santiago $100,000 in compensatory damages and $750,000 in punitive damages.

**III**

The defendants filed a renewed motion for judgment as a matter of law or, alternatively, for a new trial. While that motion was pending, our court decided *Vincent II*. In supplemental briefing, the defendants argued that a new trial was warranted in light of *Vincent II* because, just as in that case, the district court here had prohibited the defendants from testifying about impediments to releasing Santiago after *Earley*. As a result, Santiago had been improperly relieved of the burden of proving causation.

The district court denied the motion. The district court concluded that *Vincent II* did not require a new trial because the defendants had "testified to their understanding, experiences, and perceived obstacles to complying with *Earley I*, and the steps they took specifically with respect to Santiago's illegal PRS sentence." *Santiago v. Fischer*, No. 12-CV-2137, 2023 WL 2974201, at *6 (E.D.N.Y. Apr. 16, 2023). The defendants testified, for example, "about the logistical process and perceived impediments in acting expeditiously in response to *Earley*, including that they believed they needed a court order to excise a sentence, the lack of complete records such as individuals' sentencing minutes, their efforts to create a comprehensive database of the illegal PRS sentences, and their efforts to organize and disseminate that information to county officials." *Id.* at *21 (citations omitted).

The district court rejected the challenge to the award of punitive damages because, "[b]ased on evidence at trial, the jury decided whether Defendants' unreasonable delay in complying with *Earley I* constituted callous and reckless disregard of Plaintiff's

constitutional rights and caused his injuries." *Id.* at *10. The district court emphasized that the testimony the defendants managed to offer "about Jenna's Law was of marginal relevance in explaining why they disregarded the mandates of *Earley I*, and also risked juror confusion." *Id.* at *19.

## DISCUSSION

The defendants argue that the district court abused its discretion by excluding evidence of impediments and by denying the motion for a new trial with respect to the 2007-08 period. *See* Appellants' Br. 40-48. The defendants emphasize that the exclusion of that evidence prejudiced the defense, particularly with respect to the award of punitive damages. *See id.* at 49-51. The defendants also challenge the denial of qualified immunity with respect to the 2007-08 period. *See id*. at 52-55. Meanwhile, Santiago argues that the district court erred in holding that the defendants acted reasonably in 2010 and could not be liable for damages for his incarceration from September to December 2010. *See* Appellee's Br. 47-48.

### I

We review for abuse of discretion a district court's evidentiary rulings and denial of a motion for a new trial. *See United States v. Miller*, 626 F.3d 682, 687-88 (2d Cir. 2010); *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 82 (2d Cir. 2006). A district court abuses its discretion when "its decision rests on an error of law (such as application of the wrong legal principle)." *United States v. Figueroa*, 548 F.3d 222, 226 (2d Cir. 2008) (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)).

**A**

In *Vincent II*, we held that the district court erred by awarding compensatory damages for the enforcement of an unpronounced term of post-release supervision without holding the plaintiff to the burden of proving that the defendant state corrections official caused the harm. *See* 63 F.4th at 151, 154-55. To meet that burden, it matters "whether there was any impediment, legal or otherwise," to the corrections official "unilaterally releasing" the plaintiff. *Id.* at 154.

We explained that "[t]he burden is 'normally on the plaintiff to prove each element of a § 1983 claim, including those elements relating to damages.'" *Id.* at 151 (quoting *Miner v. City of Glens Falls*, 999 F.2d 655, 660 (2d Cir. 1993)). First, "a plaintiff seeking compensatory damages in a § 1983 suit must prove more than just a deprivation of his rights; he must also establish that the 'deprivation caused him some actual injury.'" *Id.* (quoting *McCann v. Coughlin*, 698 F.2d 112, 126 (2d Cir. 1983)). Second, "when a defendant has deprived the plaintiff of liberty, but the adverse action would have been taken even in the absence of the wrongful conduct, the plaintiff is entitled only to nominal damages." *Id.* (alteration omitted) (quoting *Rentas v. Ruffin*, 816 F.3d 214, 223 (2d Cir. 2016)). For that reason, the district court must "reconstruct what would have 'occurred had proper procedure been observed.'" *Id.* (quoting *Patterson v. City of Utica*, 370 F.3d 322, 338 (2d Cir. 2004)).

We said that the district court "improperly declined to consider what steps were feasibly and legally available to [the state corrections official], did not discuss [the plaintiff's] burden of proving damages, and did not determine whether [the plaintiff] had met that burden." *Id.* at 152. That "cursory treatment of damages causation does not

comport with our precedent and thus warrants remand and reconsideration." *Id.*

The same reasoning applies here. When it addressed *Vincent II* in its decision denying the motion for a new trial, the district court explained that the "jury weighed the evidence, drew inferences based on the evidence, made credibility determinations, and reached findings in reaching their verdict, including the award of damages." *Santiago*, 2023 WL 2974201, at *6. According to the district court, the jury declined to credit the defendants' testimony that they believed they "had no authority to release individuals without a court order." *Id.* at *13 (internal quotation marks omitted). The district court acknowledged, however, that the jury did not hear testimony regarding the reasons for the defendants' belief that "the DOCS and DOP could not have excised the illegally imposed PRS" or the reasons why the defendants "did not inform the District Attorneys' offices or [otherwise] rectify the situation." *Id.* at *11.

The district court criticized the "trial testimony about Jenna's Law" that the defendants managed to present as "of marginal relevance in explaining why they disregarded the mandates of *Earley*" and as unpersuasive to the jury, which decided to "reject" the "testimony regarding the justifications for why Defendants took as long as they did to initiate compliance with *Earley*." *Id.* at *19, *11. But the absence of evidence that would explain the defendants' conduct resulted from the pretrial decision of the district court to exclude relevant testimony about "what kind of constant litigation there was about the meaning of *Earley*" and "what actions [the defendants] took after the ruling in the Second Circuit." J. App'x 534. The defendants argued that "the jury should be able to hear what, in fact, was done and why actions weren't taken rather than leaving them with the impression that the decision came across their desk and they looked

at it and threw it on the side." *Id.* at 535. The defendants sought to explain that "[i]t is not as if they weren't taking action," *id.*, and that "the law and the conduct of other State actors intervened to render futile any efforts Defendants might have made in seeking resentencing."[12] The defendants would have explained, for example, that they "reached out to the [Office of Court Administration]" and "the D.A.s who were not going to do anything" because "the district attorneys were arguing until they were blue in the face … that PRS is mandatory." J. App'x 536.[13]

---

[12] Defendants' Memorandum of Law in Support of Their Motions in Limine at 12, *Santiago v. Cuomo*, No. 12-CV-2137 (E.D.N.Y. July 29, 2022), ECF No. 178.

[13] Santiago suggests that some of this testimony would have been inadmissible hearsay. *See* Appellee's Br. 11, 29-30, 39. But the defendants' testimony regarding arguments that district attorneys had made would have been offered to prove that the district attorneys had made those arguments, not that the arguments were substantively true. In other words, statements of district attorneys would have been "introduced not for their truth but only to show they were uttered." *United States v. Fernandez*, 914 F.3d 1105, 1111 (7th Cir. 2019). Such evidence would have served "a legitimate non-hearsay purpose aimed at providing the jury with the full context" of the defendants' actions by describing the impediments the defendants faced, whether or not the impediments were justified. *Id.*; *see also United States v. Dupree*, 706 F.3d 131, 136-38 (2d Cir. 2013) (explaining that a court order may be introduced when "the significance of the Order lies in the fact that it issued"). Moreover, "a statement offered to show its effect on the listener is not hearsay." *Dupree*, 706 F.3d at 136; *see also United States v. Johnson*, 117 F.4th 28, 49 (2d Cir. 2024) (explaining that an email was "admitted not for the truth of the matter asserted but to establish 'a state of mind,' which 'can be proved circumstantially by statements which are not intended to assert the truth of the fact being proved'") (quoting *United States v. Quinones*, 511 F.3d 289, 312 (2d Cir. 2007)).

The exclusion of such evidence relieved Santiago of the burden of proving causation and therefore the district court never determined whether he "carried his burden of proving the extent to which he is entitled to compensatory damages." *Vincent II*, 63 F.4th at 155. Because the exclusion of evidence of impediments did "not comport with our precedent," it "warrants remand and reconsideration." *Id.* at 152.

**B**

Our decision in *Vincent II* involved compensatory damages, but its logic applies with all the more force in a case such as this one involving an award of punitive damages. "Punitive damages are available in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). A procedural due process violation will not justify punitive damages absent "evidence of the sort of egregious behavior that would warrant such damages." *Kim v. Hurston*, 182 F.3d 113, 121 (2d Cir. 1999); *see also Earley*, 451 F.3d at 76 n.1 (describing the "procedural requirements in sentencing" as "based in the due process guarantees of the United States Constitution").

No direct evidence was presented at trial of malicious intent or evil motive. The evidence at trial showed only that the defendants did not promptly release Santiago after *Earley* or contact other state actors who had the authority to seek his release. As the district court recognized, "the jury decided" that the "unreasonable delay in complying with *Earley*"—and that delay alone—"constituted callous and reckless disregard of [Santiago's] constitutional rights and caused his injuries." *Santiago*, 2023 WL 2974201, at *10.

We explained in *Aponte* that a plaintiff may be able to show callous indifference based on the "failure to take prompt action to end the custody of prisoners unconstitutionally detained for violating PRS terms" despite being "aware of the holding and implications of *Earley*." 75 F.4th at 56. The inference would be possible when an "unexcused delay" evinces a "deliberate refusal to comply with *Earley*" that "shows 'conscious wrongdoing' and a 'reckless or callous indifference to federally protected rights,' and hence can serve as a basis for punitive damages." *Id.* (alteration omitted) (quoting *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 121 (2d Cir. 2006)).

But the defendants here sought to establish that the delay was not "unexcused" and did not establish callous indifference because the defendants faced "impediment[s], legal or otherwise," to "unilaterally releasing" Santiago or persuading the state actors with authority to resolve the problem of an unpronounced term of post-release supervision. *Vincent II*, 63 F.4th at 150, 154. Neither the district court nor the jury made any determination about the "validity and effect" of the purported impediments on either "the length of [Santiago's] unlawful incarceration" or the defendants' state of mind during the period of delay in 2007-08. *Id.* at 154. The district court simply put the evidence of those impediments aside. But a delay in complying with *Earley* when the corrections official has been thwarted in seeking to address terms of post-release supervision or believes he lacks the authority to order release would not establish conscious wrongdoing or the reckless or callous indifference required for an award of punitive damages. The district court abused its discretion by excluding the evidence of impediments that would have allowed the defendants to present that defense.

### C

Santiago argues that the exclusion of the defendants' evidence of impediments was a harmless error. We disagree.

An evidentiary error may be considered harmless only "if we can conclude with 'fair assurance' that the jury's 'judgment was not substantially swayed by the error.'" *United States v. Paulino*, 445 F.3d 211, 219 (2d Cir. 2006) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)). In this case, "the burden rests upon [Santiago]," *Vincent II*, 63 F.4th at 154, to "establish[] that he suffered an injury as a result of [the defendants'] failure to follow our directive in *Earley* that *would not have occurred otherwise*," *Aponte*, 75 F.4th at 57 (emphasis added) (quoting *Vincent II*, 63 F.4th at 152). We cannot conclude that the jury would have found that Santiago would have been released but for the defendants' failure to act to release him if it had heard evidence that the defendants could not accomplish that result. Similarly, Santiago was required to establish that the defendants acted with at least "reckless or callous indifference." *Id.* at 55. A reasonable jury might conclude that an unexplained failure to release Santiago showed such indifference based on the assumption that the defendants were aware that they could release him. But we cannot conclude that the jury would have made the same inference after hearing evidence of the reasons that the defendants believed they could not.

The district court abused its discretion by excluding the evidence of impediments and therefore erred by denying the motion for a new trial.

### II

We review the denial of qualified immunity *de novo*. *See Vega v. Semple*, 963 F.3d 259, 272 (2d Cir. 2020). "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal

statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The unlawfulness was not clearly established unless, "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Id.* at 63 (internal quotation marks omitted).

With respect to the 2007-08 period, the defendants explain that they "primarily raise the issue of qualified immunity here to preserve it for further review," acknowledging "earlier decisions" of this court "denying qualified immunity in connection with post-*Earley* enforcement of PRS terms not separately pronounced at sentencing." Appellants' Br. 52.

The qualified immunity analysis "focuses on the specific factual situation the officers confronted, and the defendants will be entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *McKinney v. City of Middletown*, 49 F.4th 730, 739 (2d Cir. 2022) (internal quotation marks and alterations omitted). The defendants argue that the circumstances of this case are distinguishable from those in *Earley* and, as a result, *Earley* does not preclude the application of qualified immunity. In *Earley*, the plaintiff "was not informed of this mandatory provision [of post-release supervision] during plea negotiations, the plea allocution, or at the time his … sentence was imposed." 451 F.3d at 73; *see Vincent v. Yelich* (*Vincent I*), 718 F.3d 157, 162 (2d Cir. 2013) ("Neither prior to the entry of his guilty plea nor at his sentencing was [Earley] informed that he

was subject to a term of PRS, and his commitment order did not refer to PRS conditions.”).[14]

In this case, however, Santiago was informed during his plea hearing that he would be subject to a mandatory term of five years of post-release supervision, and he agreed to that sentence. *See* J. App'x 353. The record does not suggest that the sentencing court altered the plea bargain that Santiago accepted.

In addition, the defendants identify evidence explaining why they believed that they lacked the authority to release Santiago or to refer him for resentencing. We have previously denied qualified immunity on the understanding that “immediately after *Earley I* and *II* were decided in 2006 [the corrections officials] could have undertaken the remedial measures that they later took when prompted by *Smith*, *Garner* and *Sparber* in the spring of 2008.” *Betances*, 837 F.3d at 170. Only later did we “clarify” that a resentencing was not “a viable avenue” for all defendants and that the “remaining option” of excising sentences of post-release supervision might have required “court approval.” *Vincent II*, 63 F.4th at 154. The defendants suggest that the new evidence—of “any impediment, legal or otherwise, to [the DOCS] simply and unilaterally releasing” an inmate—ought to affect the determination

[14] The *Vincent I* plaintiffs similarly “alleged that each of the plaintiffs pleaded guilty to a felony under New York law; that none of the plaintiffs was informed by the sentencing judge that he was subject to a PRS term; that none of the plaintiffs' commitment orders mentioned a PRS term; and that each plaintiff was subjected to a PRS term administratively imposed by DOCS.” *Vincent I*, 718 F.3d at 175. Those circumstances led us to conclude that state corrections officials were not “entitle[d] to qualified immunity.” *Id.*

of what a reasonable official would have been expected to do under the circumstances. *Id.*

As the defendants acknowledge, however, that is not how we have previously addressed the question of qualified immunity in this context. We have understood *Earley* to stand for the proposition that "[o]nly the judgment of a court, as expressed through the sentence imposed by a judge, has the power to constrain a person's liberty." *Earley*, 451 F.3d at 75. Accordingly, we have identified the "precise conduct" that *Earley* prohibits as the "administrative imposition of PRS on a prisoner who has not had that condition imposed on him by the sentencing court." *Vincent I*, 718 F.3d at 168. That prohibition does not appear to turn on whether the defendant was made aware of the PRS term during a plea hearing that preceded the sentencing.

We have also categorially held that the state corrections officials "understood that *Earley I* required them to change their practices" but "did not take objectively reasonable steps to comply." *Betances*, 837 F.3d at 172. In *Betances*, we "determined" that the steps the defendants eventually took to comply with *Earley* "were not an objectively reasonable justification for the defendants' delay in seeking resentencing of prisoners with administratively imposed PRS terms." *Hassell v. Fischer*, 879 F.3d 41, 51 (2d Cir. 2018).

Given these precedents, we agree with the district court that the defendants are not entitled to qualified immunity for conduct during the 2007-08 period. The defendants offer a reasonable argument that (1) the evidence of impediments may ultimately show that any further actions they might have taken would have been futile given the conduct of state actors with the relevant authority, so (2) "a reasonable officer" in their position could not have been expected to act differently. *Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014) (quoting

*Graham v. Connor*, 490 U.S. 386, 396 (1989)). But while we have held that such evidence is relevant to the issues of causation and punitive damages, we have also held that "[t]he efforts made, or not made, by other parties are beside the point for the purposes of determining qualified immunity." *Betances*, 837 F.3d at 174. That holding controls the decision here.

**III**

Santiago argues that the decision of the district court with respect to his claims for the incarceration from September to December 2010 conflicts with our statement in *Hassell v. Fischer* that "the defendants are foreclosed by *Betances II* from arguing that their belated, albeit reasonable, steps to comply with *Earley I* excuse the initial unreasonable delay." 879 F.3d at 51. He contends that the district court erred in ruling on summary judgment that qualified immunity bars relief for the time Santiago spent in custody in 2010. In this appeal, the defendants "do not contest this asserted error." Appellants' Reply Br. 29. Instead, the defendants argue that "an impediments analysis is nonetheless warranted for this time period." *Id.*

We agree with the parties that our precedents foreclose the conclusion that qualified immunity prevents Santiago from obtaining relief for the months he spent in custody in 2010. As a result, we vacate the judgment insofar as the district court granted summary judgment on those claims based on qualified immunity. But for the reasons explained above, the evidence of impediments is relevant to determining whether the defendants caused Santiago's detention during that period. On summary judgment, the district court determined that in 2008 the defendants "began to take what the Second Circuit termed 'reasonable steps toward bringing DOCS and

DOP into compliance with *Earley I*'" but that the defendants could not have acted before September 2010 with respect to Santiago, who "was not within New York's jurisdiction until September 14, 2010." *Santiago*, 2017 WL 11929991, at *10 (quoting *Betances*, 837 F.3d at 172). While the defendants cannot obtain qualified immunity, these arguments may be relevant to any renewed motion for summary judgment with respect to liability for 2010. We remand to allow the district court to consider, on any such motion, the effect that evidence of impediments may have on the defendants' defense to liability for that period.

## CONCLUSION

We reverse the judgment of the district court insofar as it denied the motion for a new trial related to the 2007-08 period. We vacate the judgment insofar as the district court dismissed the claims related to 2010 on the ground of qualified immunity. We remand for further proceedings consistent with this opinion.