UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JESUS SANTIAGO,**<br><br>Plaintiff,<br><br>*~ against ~*<br><br>**BRIAN FISCHER***;*<br>**ANTHONY J. ANNUCCI***; and*<br>**TERRENCE X. TRACY,**<br><br>Defendants. | **Case No.** 12-CV-2137-KAM |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTION**
**FOR PARTIAL SUMMARY JUDGMENT**

Submitted by: Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 401-6910

*Counsel for Plaintiff Jesus Santiago*

## A. TABLE OF CONTENTS


A. TABLE OF CONTENTS

B. TABLE OF AUTHORITIES ........ 4

C. PRELIMINARY STATEMENT ........ 6

D. STATEMENT OF FACTS ........ 9

I. The Sentence the Court Imposed Contained No Post-Release Supervision ........ 9

II. The Department Added a Five-Year Term, and the Courts Held It Could Not Stand ........ 9

III. A Parole Warrant Enforcing the Void Term Was the Only Thing Holding Mr. Santiago in 2010 ........ 10

IV. Defendants Referred Mr. Santiago on September 27, 2010, and Then Kept Him in Custody Past Every Statutory Deadline ........ 11

V. The Sentencing Court Vacated the Revocation as a Nullity and Mr. Santiago Was Released the Next Day ........ 12

VI. The Procedural Posture of This Motion ........ 13

E. ARGUMENT ........ 14

I. Qualified Immunity Issue Was Decided: The Remaining Question Is Whether there is a material fact at issue, Namely Whether a Concrete Impediment, Rather Than Defendants' Conduct, Caused the 2010 Detention ........ 14

a. The Court of Appeals Resolved Qualified Immunity Against Defendants on Their Own Concession ........ 14

b. The 2017 Finding That Defendants Acted Reasonably Was Vacated and Carries No Weight ........ 14

II. Defendants Caused the 2010 Detention Because the Only Thing Holding Mr. Santiago Was a Warrant Enforcing a Sentence No Judge Imposed ........ 16

a. The Warrant Was the Custody ........ 16

b. There Is No Such Thing as Violating a Nonexistent Sentence ........ 16

c. Parole's Own Revocation Process Cannot Be an Intervening Cause of the Custody It Wrongfully Created ........ 17

III. The Counterfactual Is Not a Mystery, Because Every Path Available in 2010 Ended in Release Without Post-Release Supervision ................................18

a. *People v. Williams* Made Resentencing to Post-Release Supervision Impossible Before Mr. Santiago Returned to New York ...............18

b. The District Attorney Consented and the Sentencing Court Declined to Resentence.....................................19

c. The Record Does Not Establish That a Virginia Hold Prevented Relief from the Unlawful PRS Term ..........20

IV. The Impediments Evidence Describes 2006 Through 2008 and Is Refuted for 2010 by Defendants' Own Proof ............................................................21

a. By September 2010 the Referral Machinery Was Working, and Defendants Had Already Used It More Than 3,700 Times .................................21

b. When the Court Did Not Timely Rule, Correction Law § 601-d(6) Required the Department to Adjust Its PRS Records........................22

c. *Vincent v. Annucci* Forecloses the Argument That State Law Prevented Release..............................23

d. These Same Defendants Have Already Litigated and Lost These Same Impediments Arguments...........23

V. Even on Defendants' Best Case the 2010 Claims Survive, Because a Proven Violation Carries at Least Nominal Damages .....................................................23

F. CONCLUSION ..................................................................................................24

CERTIFICATE OF COMPLIANCE .......................................................................................26

## B. TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ........ 14

*Betances v. Fischer,*
837 F.3d 162 (2d Cir. 2016) ........ 15, 16

*Betances v. Fischer,*
403 F. Supp. 3d 212 (S.D.N.Y. 2019) ........ 23

*Betances v. Fischer,*
No. 11-cv-3200, ECF No. 446 (S.D.N.Y. Aug. 16, 2024) ........ 21, 23

*Carey v. Piphus,*
435 U.S. 247 (1978) ........ 8, 24

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ........ 14

*Earley v. Murray,*
451 F.3d 71 (2d Cir. 2006) ........ passim

*Earley v. Murray,*
462 F.3d 147 (2d Cir. 2006) (reh'g denied) ........ 10

*Matter of Garner v. N.Y. State Dep't of Corr. Servs.,*
10 N.Y.3d 358 (2008) ........ 8, 10, 17, 21

*Hassell v. Fischer,*
879 F.3d 41 (2d Cir. 2018) ........ 15, 24

*Kerman v. City of New York,*
374 F.3d 93 (2d Cir. 2004) ........ 17, 24

*People ex rel. Belize v. Warden, Rikers Island Corr. Facility,*
Index No. 251681/08 (Sup. Ct. Bronx Cnty. Oct. 10, 2008) ........ 17

*People v. Sparber,*
10 N.Y.3d 457 (2008) ........ 8, 10, 21

*People v. Williams,*
14 N.Y.3d 198 (2010), cert. denied, 562 U.S. 947 (2010) ........ 8, 18, 19

*Santiago v. Fischer,*
158 F.4th 397 (2d Cir. 2025) ........ passim

*Santiago v. Fischer,*
No. 12-cv-2137, 2017 WL 11929991 (E.D.N.Y. Sept. 30, 2017) ........ 13

*Tolan v. Cotton*,
572 U.S. 650 (2014) ..... 14

*United States v. Ben Zvi*,
242 F.3d 89 (2d Cir. 2001) ..... 14

*Uzuegbunam v. Preczewski*,
592 U.S. 279 (2021) ..... 8, 24

*Vincent v. Annucci*,
63 F.4th 145 (2d Cir. 2023) ..... passim

*Vincent v. Yelich*,
718 F.3d 157 (2d Cir. 2013) ..... 15, 16

*Warner v. Orange County Department of Probation*,
115 F.3d 1068 (2d Cir. 1997) ..... 17

**Statutes**

N.Y. Correct. Law § 601-d ..... passim

N.Y. Penal Law § 70.85 ..... 10

**Rules**

Fed. R. Civ. P. 56 ..... 14, 20

Fed. R. Evid. 602, 701, 801, 802

## C. PRELIMINARY STATEMENT

The Second Circuit has decided the core question at issue in this motion, and it decided it against the Defendants. The Court of Appeals held that "our precedents foreclose the conclusion that qualified immunity prevents Santiago from obtaining relief for the months he spent in custody in 2010." *Santiago v. Fischer*, 158 F.4th 397 (2d Cir. 2025).

What remains open is a narrow question, whether there is a material fact at issue whether there were impediments that defeat *causation* for that period. This motion does not answer that question. It re-argues reasonableness under a new name, and where it does reach causation, it is refuted by the three documents Defendants filed with it.

Start with what actually held Mr. Santiago in a cell. On September 9, 2010, he finished his federal sentence at USP Hazelton in West Virginia. One thing kept him from walking out the door: New York State Parole warrant #0577832, which charged him with violating the conditions of a five-year term of post-release supervision that no judge ever pronounced. Parole executed that warrant, extradited him to Rikers Island on September 14, 2010, and held him until December 16, 2010.

There was no other hold.

There was no detainer.

The warrant was the custody. Defendants' own records say so: on August 25, 2010, a federal official at USP Hazelton telephoned Parole to ask whether New York would extradite Mr. Santiago "because he has no documentation detainer or warrant on record," and Parole answered that it would extradite and fax over its warrant. Philbrick Decl., Ex. C (entry of Aug. 25, 2010); Pl. 56.1 Resp. & Counter-Stmt. ¶¶ 59–62.

Defendants knew the term was unconfirmable, and they say so in their own exhibit.

On September 27, 2010, Defendant Terrence Tracy signed a letter to the sentencing judge stating that the commitment order "contained no reference to a period of PRS" and that Parole "does not have a copy of the sentencing minutes within its files to confirm whether the period of PRS was pronounced by the Court at the time of sentencing." Philbrick Decl., Ex. D. Four days after signing that letter, on October 1, 2010, Parole completed a final revocation hearing on that same unconfirmable term, revoked it, and ordered Mr. Santiago to serve a thirty-eight-month time assessment. Philbrick Decl., Ex. C (entries of Oct. 13, 2010). Defendants do not explain that sequence anywhere in their papers. Pl. 56.1 Resp. & Counter-Stmt. ¶¶ 65–68.

The statute Defendants invoke gave the sentencing court twenty days to bring Mr. Santiago in, thirty days to commence the proceeding, and forty days to issue a written determination. N.Y. Correct. Law § 601-d(4). Even allowing for several days between mailing and receipt, the statutory period expired well before the December 15 determination while Mr. Santiago remained in a state prison cell. Defendants describe an office that tracked these referrals and pushed them through, Philbrick Decl. ¶¶ 44–48, but the record shows no call, no letter, and no reconsideration of his custody when the statutory period expired. More importantly, § 601-d(6) then required the Department to adjust its records to note that the court had not imposed PRS. Pl. 56.1 Resp. & Counter-Stmt. ¶¶ 70–73, 77.

On December 15, 2010, Justice Reichbach examined the court file, the sentencing judge's notes, the commitment order, and all available minutes, found "no discussion or agreement concerning post release supervision as part of the Defendant's sentence reflected anywhere in the proceedings," declined to resentence, and held that "no period of post release supervision constitutes part of Defendant's sentence." He ordered that the "[o]riginal sentence stands," and that "[a]ny pending violation or prior revocation of a DOCS assessed period of PRS is deemed a

nullity and is vacated." Philbrick Decl., Ex. E. Mr. Santiago was released from DOCS custody the next day; the present record identifies no Virginia detainer, warrant, or request that independently authorized New York to continue holding him. Pl. 56.1 Resp. & Counter-Stmt. ¶¶ 81–84.

That sequence answers the causation question Defendants say cannot be answered. In *Vincent v. Annucci*, the Second Circuit vacated a damages award because the district court refused to engage with the counterfactual and called the outcome a mystery. 63 F.4th 145, 152–55 (2d Cir. 2023). Here the counterfactual is a matter of record. By February 2010 the New York Court of Appeals had held that a defendant who has completed his determinate term and been released cannot be resentenced to add post-release supervision. *People v. Williams*, 14 N.Y.3d 198 (2010). Mr. Santiago completed his term on November 7, 2004. So when the referral was finally made, the District Attorney consented and the court declined to resentence.

There was never a version of this case in which Mr. Santiago ends up serving a lawful term of post-release supervision.

The "impediments" evidence cannot be said to foreclose the material fact question of causation. By September 2010, *People v. Sparber* and *Matter of Garner* were two years old, Correction Law § 601-d had been in force for twenty-seven months, and Defendants had already used it to refer more than 3,700 people. Philbrick Decl. ¶ 40. Their own proof shows the machinery working.

Last, Defendants ask this Court to dismiss "all claims" arising from the 2010 custody. Even if every impediments argument were accepted, that is not an available outcome. Liability for enforcing a void sentence is not immunized, and a plaintiff who proves a constitutional violation recovers at least nominal damages. *Carey v. Piphus*, 435 U.S. 247, 266 (1978); *Uzuegbunam v. Preczewski*, 592 U.S. 279, 292 (2021). The most this motion could yield is an

argument about how many of the ninety-three days are compensable. That is a jury question, not a basis for judgment.

For these reasons the Plaintiff respectfully submits that the motion should be denied.

## D. STATEMENT OF FACTS

The facts material to this motion are short, and most of them come from Defendants' own submissions. Plaintiff's Response to Defendants' Local Civil Rule 56.1 Statement and Counter-Statement of Material Facts is submitted with this Memorandum and is cited as "Pl. 56.1 Resp. & Counter-Stmt." Defendants' May 29, 2026 Statement is cited as "Def. 56.1." The stipulated facts read to the jury as Joint Exhibit 1 at the November 2022 trial are cited as "Stip."

### I. The Sentence the Court Imposed Contained No Post-Release Supervision

On May 3, 2002, Mr. Santiago pleaded guilty in Kings County Supreme Court before Justice Sheldon Greenberg to one count of criminal possession of a weapon in the second degree, in satisfaction of all five counts of Indictment 1141/2000. Stip. ¶ 9; Def. 56.1 ¶ 30. He could not be sentenced that day because the pre-sentence report had not been prepared. Stip. ¶ 10; Def. 56.1 ¶ 32.

On May 15, 2002, he was sentenced to a determinate term of three and one-half years. Def. 56.1 ¶ 32. The parties stipulated at trial that "[a]t Mr. Santiago's sentencing on May 14th, 2002, there was no mention of post-release supervision." Stip. ¶ 15; Pl. 56.1 Resp. ¶ 55. The sentencing minutes have never been located. Def. 56.1 ¶ 33. The Sentence and Order of Commitment is silent as to post-release supervision. Def. 56.1 ¶ 34.

## II.The Department Added a Five-Year Term, and the Courts Held It Could Not Stand

Mr. Santiago entered the custody of the Department of Correctional Services on April 22, 2004. Def. 56.1 ¶ 36. Agency personnel calculated his sentence on the Department's mainframe and added a five-year term of post-release supervision to it. Philbrick Decl. ¶¶ 8–11, 51. No judge imposed that term. Plaintiff completed the determinate term the court did impose on November 7, 2004, and was released to supervision on the term the agency had written in. Stip. ¶¶ 21–22; Def. 56.1 ¶ 37.

On June 9, 2006, the Second Circuit held that a term of post-release supervision added by corrections officials rather than pronounced by a judge violates due process and is "a nullity." *Earley v. Murray*, 451 F.3d 71, 75–76 (2d Cir. 2006), *reh'g denied*, 462 F.3d 147 (2d Cir. 2006). On April 29, 2008, the New York Court of Appeals issued complementary state-law rulings: *Garner* held that DOCS could not administratively add PRS, while *Sparber* identified judicial resentencing as the ordinary remedy for a sentencing court's failure to pronounce mandatory PRS. *People v. Sparber*, 10 N.Y.3d 457, 469–71 (2008); *Matter of Garner v. N.Y. State Dep't of Corr. Servs.*, 10 N.Y.3d 358, 362–63 (2008). In June 2008 the Legislature enacted Correction Law § 601-d, which for the first time let the agencies refer these cases back to the sentencing courts, and Penal Law § 70.85, which let a court re-impose the original determinate sentence without post-release supervision when the District Attorney consents. Def. 56.1 ¶¶ 24-27. Pl. 56.1 Resp. & Counter-Stmt. ¶¶ 57, 74-78.

## III. A Parole Warrant Enforcing the Void Term Was the Only Thing Holding Mr. Santiago in 2010

Mr. Santiago completed his federal sentence at USP Hazelton on September 9, 2010. Philbrick Decl., Ex. C (entries of Aug. 19, Aug. 25 and Aug. 30, 2010). The only hold against him

was New York State Parole warrant #0577832, issued on charges that he violated the conditions of the administratively added term. Parole's own jail-time certificate for that warrant runs from September 9, 2010. *Id.* (entry of Oct. 19, 2010). Pl. 56.1 Resp. & Counter-Stmt. ¶¶ 59, 61–62.

Parole extradited him from West Virginia to Rikers Island on September 14, 2010. Def. 56.1 ¶ 47. A preliminary revocation hearing was held on September 21, 2010, and probable cause was found. Philbrick Decl., Ex. C (entry of Sept. 21, 2010). On October 1, 2010, Parole completed the final revocation hearing, revoked the term, and imposed a thirty-eight-month time assessment. *Id.* (entries of Oct. 13, 2010). On October 17, 2010, he was transferred from Rikers Island into the custody of the Department of Correctional Services. *Id.* (entries of Oct. 14 and Oct. 19, 2010). Pl. 56.1 Resp. & Counter-Stmt. ¶¶ 63–69.

Nothing else was holding him.

Defendants point to a September 20, 2010 telephone entry in which a Virginia probation officer said that Mr. Santiago "still owes time with Virginia" and would "have to do 2 years with Virginia" once New York released him. Def. 56.1 ¶ 50; Philbrick Decl., Ex. C (entry of Sept. 20, 2010). That is a phone message. There is no Virginia detainer, warrant, or hold anywhere in this record. Three weeks before the extradition, the federal facility holding Mr. Santiago told Parole the opposite: on August 25, 2010, USP Hazelton advised that he had "no documentation detainer or warrant on record," and asked whether New York intended to extradite him. Parole said it would, and faxed its warrant. Philbrick Decl., Ex. C (entry of Aug. 25, 2010). Pl. 56.1 Resp. & Counter-Stmt. ¶¶ 60, 84–85.

## IV. Defendants Referred Mr. Santiago on September 27, 2010, and Then Kept Him in Custody Past Every Statutory Deadline

On September 27, 2010 Defendant Tracy signed and sent a notice under Correction

Law § 601-d to Justice Reichbach. Philbrick Decl., Ex. D; Def. 56.1 ¶ 51. The notice states that the commitment order "contained no reference to a period of PRS," that Parole "does not have a copy of the sentencing minutes within its files to confirm whether the period of PRS was pronounced by the Court at the time of sentencing," and that Mr. Santiago was therefore a "designated person" under the statute. Philbrick Decl., Ex. D. Copies went to the Kings County District Attorney, to the Administrative Judge, and to the Department's Office of Sentencing Review. *Id.* Pl. 56.1 Resp. & Counter-Stmt. ¶¶ 65–67.

Correction Law § 601-d(4) then set the clock. Measured from the court's receipt of the notice, the designated person must appear "no later than twenty days after receipt of said notice"; the proceeding must be commenced "no later than thirty days after receiving notice"; and the court must issue a written determination "no later than forty days after receipt of such notice." The People may seek "an extension of ten days on the basis of extraordinary circumstances." N.Y. Correct. Law § 601-d(4). The statutory period expired well before the December 15 determination. Pl. 56.1 Resp. & Counter-Stmt. ¶ 70.

No determination issued within that period. Mr. Santiago remained in the custody of the Department of Correctional Services. The record contains no follow-up letter, no telephone call to chambers, no application to advance the matter, and no re-examination of whether he should still be held — even though Mr. Philbrick describes an office that monitored court responses to these referrals and pushed the Department to recalculate sentences and release people when the courts acted. Philbrick Decl. ¶¶ 44–48. Pl. 56.1 Resp. & Counter-Stmt. ¶¶ 71–73, 77.

## V. The Sentencing Court Vacated the Revocation as a Nullity and Mr. Santiago Was Released the Next Day

On December 15, 2010, Justice Reichbach ruled. His order recites that the court

"examined the Court file, the sentencing Judge's notes, the original commitment order, and all available stenographic minutes of the plea and/or sentence," and that it heard from defense counsel and the Assistant District Attorney. It then finds "there being no discussion or agreement concerning post release supervision as part of the Defendant's sentence reflected anywhere in the proceedings." Philbrick Decl., Ex. E.

The court declined to resentence Mr. Santiago at all, holding "that no period of post release supervision constitutes part of Defendant's sentence" and that the "[o]riginal sentence stands." It further ordered that "[a]ny pending violation or prior revocation of a DOCS assessed period of PRS is deemed a nullity and is vacated." *Id.* The District Attorney consented to that disposition. *Santiago*, 158 F.4th 397.

Mr. Santiago was released from the custody of the Department of Correctional Services on December 16, 2010. Philbrick Decl. ¶ 66; Def. 56.1 ¶ 53; Pl. 56.1 Resp. & Counter-Stmt. ¶¶ 84–85. He was released to the community. Virginia did not take custody of him. He was not committed to the Virginia Department of Corrections until July 5, 2013, after he pleaded guilty to charges brought in 2011 — charges that did not exist in 2010. Stip. ¶¶ 38–39.

## VI. The Procedural Posture of This Motion

On September 30, 2017, this Court granted Defendants summary judgment on the 2010 claims, reasoning that they had begun taking reasonable steps toward compliance with *Earley* and that Mr. Santiago "was not within New York's jurisdiction until September 14, 2010." *Santiago v. Fischer*, No. 12-cv-2137, 2017 WL 11929991, at *10 (E.D.N.Y. Sept. 30, 2017). The 2007–08 claims proceeded to trial and verdict.

On October 30, 2025, the Second Circuit vacated the dismissal of the 2010 claims. It held that "our precedents foreclose the conclusion that qualified immunity prevents Santiago

from obtaining relief for the months he spent in custody in 2010," noting that the parties agreed on the point. It observed that impediments evidence "may be relevant to any renewed motion for summary judgment with respect to liability for 2010," and remanded so that this Court could consider "the effect that evidence of impediments may have on the defendants' defense to liability for that period." *Santiago*, 158 F.4th 397. The Court separately ordered a new trial on the 2007–08 period. *Id. Pl. 56.1 Resp. & Counter-Stmt.* ¶¶ *86, 88.*

## E. ARGUMENT

Summary judgment is available only where there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a). The Court must view the evidence in the light most favorable to Mr. Santiago and draw every reasonable inference in his favor, and it may not weigh evidence or make credibility findings. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Defendants bear the initial burden of showing the absence of a genuine dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### I. Qualified Immunity Issue Was Decided: The Remaining Question Is Whether there is a material fact at issue, Namely Whether a Concrete Impediment, Rather Than Defendants' Conduct, Caused the 2010 Detention

The mandate rule forecloses relitigation of any issue the Court of Appeals decided "expressly or impliedly." *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001). The Second Circuit decided qualified immunity for the 2010 period. It is gone from this case.

#### a. The Court of Appeals Resolved Qualified Immunity Against Defendants on Their Own Concession

The holding is unqualified: "We agree with the parties that our precedents foreclose

the conclusion that qualified immunity prevents Santiago from obtaining relief for the months he spent in custody in 2010." *Santiago*, 158 F.4th 397. Defendants agreed to that proposition on appeal. They cannot now un-agree to it.

That holding rests on a line of decisions involving these same officials. *Earley* clearly established, as of June 9, 2006, that administratively imposed post-release supervision violates due process, and officials who enforce such a term afterward are not immune. *Vincent v. Yelich*, 718 F.3d 157, 168–77 (2d Cir. 2013). In the class action against Fischer, Annucci, and Tracy themselves, the Second Circuit held that they "did not take objectively reasonable steps" to bring their agencies into compliance and denied them immunity. *Betances v. Fischer*, 837 F.3d 162, 171–74 (2d Cir. 2016). And a defendant in this posture is "foreclosed by *Betances II* from arguing that their belated, albeit reasonable, steps to comply with *Earley I* excuse the initial unreasonable delay." *Hassell v. Fischer*, 879 F.3d 41, 51 (2d Cir. 2018).

#### b. The 2017 Finding That Defendants Acted Reasonably Was Vacated and Carries No Weight

Defendants lean on this Court's 2017 observation that they were taking reasonable steps by 2010. That ruling was vacated. *Santiago*, 158 F.4th 397. A vacated holding is not law of the case and cannot support a renewed motion.

This matters because of how the two questions differ. Qualified immunity asks whether Defendants behaved reasonably. Causation asks something else entirely: whether Mr. Santiago's detention would have happened without their conduct. *Vincent v. Annucci*, 63 F.4th 145, 151 (2d Cir. 2023). An argument that Defendants moved promptly, followed state procedure, or did their best is an answer to the first question. It does not reopen qualified immunity. The remaining inquiry is whether Defendants have identified a concrete legal or practical impediment

that would have produced the same detention absent their continued enforcement of the unpronounced PRS term.

## II. Defendants Caused the 2010 Detention Because the Only Thing Holding Mr. Santiago Was a Warrant Enforcing a Sentence No Judge Imposed

### a. The Warrant Was the Custody

Mr. Santiago's federal sentence ended on September 9, 2010. From that moment, one instrument kept him in a cell: Parole warrant #0577832. Parole issued it, Parole executed it, Parole extradited him on it, and Parole's jail-time certificate for it runs from September 9. Philbrick Decl., Ex. C. Every charge on that warrant was a charge that he violated conditions of the five-year term the Department had written into its computer in 2004.

Under *Earley*, that term was "a nullity" and "of no effect" from the moment it was added. 451 F.3d at 75–76. Under *Vincent I* and *Betances II*, what these Defendants were not permitted to do — without immunity — was *enforce* it. 718 F.3d at 168–77; 837 F.3d at 171–74. They enforced it for ninety-three days. Pl. 56.1 Resp. & Counter-Stmt. ¶ 87.

### b. There Is No Such Thing as Violating a Nonexistent Sentence

Defendants' central causation argument is that Mr. Santiago was held because he absconded and committed new crimes, and that a hearing officer, after a hearing at which he had counsel, revoked his supervision and imposed a thirty-eight-month assessment. The argument assumes the very thing that was void. If there was no lawful term of post-release supervision, there were no conditions to violate, no lawful warrant to execute, and nothing for a hearing officer to revoke.

The sentencing court said exactly that, in the order Defendants themselves filed:

"[a]ny pending violation or prior revocation of a DOCS assessed period of PRS is deemed a nullity and is vacated." Philbrick Decl., Ex. E. And Defendants' own Exhibit F says it too. In *People ex rel. Belize v. Warden*, Justice Sonberg sustained a writ of habeas corpus, vacated the parole warrant, and discharged a man held on identical charges, because "petitioner is being detained for violating a non-existing portion of his sentence." Philbrick Decl., Ex. F (Sup. Ct. Bronx Cnty. Oct. 10, 2008). He collected four other Bronx County decisions doing the same thing in the space of a month. *Id.* Defendants offer that exhibit to show that courts refused to transfer these matters. What it shows is that by 2008, custody on a violation of an administratively added term was treated as illegal on its face. Pl. 56.1 Resp. & Counter-Stmt. ¶ 78.

#### c. Parole's Own Revocation Process Cannot Be an Intervening Cause of the Custody It Wrongfully Created

A revocation proceeding conducted by Parole's own hearing officers, on Parole's own warrant, enforcing a term Parole had no authority to impose, is not an independent cause that breaks the chain. It is the mechanism of the violation. Section 1983 defendants remain responsible for the natural and reasonably foreseeable consequences of their conduct, including foreseeable intervening acts. *Kerman v. City of New York*, 374 F.3d 93, 126 (2d Cir. 2004) (quoting *Warner v. Orange County Department of Probation*, 115 F.3d 1068, 1071 (2d Cir. 1997)). The hearing officer had no more power to enforce an unpronounced sentence than the clerk who first entered it did. *Matter of Garner*, 10 N.Y.3d at 362–63.

The sequence here permits the same inference. Defendant Tracy signed the letter conceding that the term could not be confirmed on September 27, 2010. Parole completed the final revocation hearing on that same term on October 1, 2010 — four days later — and imposed a thirty-eight-month hold. Philbrick Decl., Exs. C, D. A jury could readily find that prosecuting a

revocation to a thirty-eight-month assessment, four days after telling a judge you cannot confirm the sentence exists, is not an "objectively reasonable step" toward compliance with anything. Pl. 56.1 Resp. & Counter-Stmt. ¶¶ 65-68.

## III. The Counterfactual Is Not a Mystery, Because Every Path Available in 2010 Ended in Release Without Post-Release Supervision

Mr. Santiago bears the burden of showing that he suffered an injury "that would not have occurred otherwise." *Vincent II*, 63 F.4th at 151. He can carry it on this record, because the December 2010 proceeding shows what happened the one time the question was actually put to a court.

### a. *People v. Williams* Made Resentencing to Post-Release Supervision Impossible Before Mr. Santiago Returned to New York

On February 23, 2010, the New York Court of Appeals held that once a defendant has completed his determinate term and been released, the Double Jeopardy Clause bars resentencing him to add post-release supervision, because he has acquired a legitimate expectation of finality in the sentence actually imposed. *People v. Williams*, 14 N.Y.3d 198, 217–20 (2010), *cert. denied*, 562 U.S. 947 (2010). Mr. Santiago completed his determinate term on November 7, 2004, and was released. Def. 56.1 ¶ 37. Pl. 56.1 Resp. & Counter-Stmt. ¶¶ 79–80.

So by the time he was extradited in September 2010, it was settled law that no court could lawfully put post-release supervision back onto his sentence. The Second Circuit reached the same conclusion in *Vincent II*, explaining that a person in this position "could not have been resentenced *nunc pro tunc* for the simple reason that courts do not have the power to substantively rewrite history." 63 F.4th at 153. Whatever might be argued about a hypothetical 2007 resentencing, for the 2010 period the counterfactual has exactly one outcome.

Defendants' reliance on the plea colloquy does not change this. They emphasize that the May 3, 2002 plea was entered "in exchange for" a promise of the minimum determinate term and "the mandatory term of five years' PRS." Def. 56.1 ¶ 31. But what was discussed at a plea hearing is not the sentence. Under Earley, "the sentence imposed by the sentencing judge is controlling," 451 F.3d at 74, and the parties stipulated that at the sentencing itself "there was no mention of post-release supervision." Stip. ¶ 15. A plea discussion cannot supply a term the sentencing court never pronounced, and after Williams no court could add one. Pl. 56.1 Resp. & Counter-Stmt. ¶¶ 31, 55, 79.

**b. The District Attorney Consented and the Sentencing Court Declined to Resentence**

That is not theory. It is what happened. When the question reached Justice Reichbach, the Kings County District Attorney consented to resentencing without post-release supervision, *Santiago*, 158 F.4th 397, and the court went further, declining to resentence at all and holding that the original sentence stands. Philbrick Decl., Ex. E. Pl. 56.1 Resp. & Counter-Stmt. ¶¶ 81–83.

Defendants have never explained why that same result would not have followed from a referral made on September 14, or on September 9, or at any point in the twenty-seven months between the enactment of § 601-d and Mr. Santiago's return. Nothing about the file changed between September and December 2010. The commitment order was silent the whole time. The minutes were missing the whole time. *Williams* had been decided the whole time. The only thing that changed was the calendar.

**c.** The Record Does Not Establish That a Virginia Hold Prevented Relief from the Unlawful PRS Term

Mr. Philbrick states that even after a resentencing Mr. Santiago "could not be released to the community, as he owed time to the State of Virginia." Philbrick Decl. ¶ 67. Three problems.

First, the event itself undercuts the assertion. On December 16, 2010, the Department released him to the community. Philbrick Decl. ¶ 66; Def. 56.1 ¶ 53. The present record identifies no Virginia detainer, warrant, or request executed that day. What actually happened when the hold dissolved is the best available evidence of what would have happened had it dissolved sooner.

Second, there is no Virginia hold in this record — no detainer, no warrant, no request. The affirmative evidence runs the other way. On August 25, 2010, USP Hazelton told Parole that Mr. Santiago had "no documentation detainer or warrant on record" and asked whether New York would extradite him; Parole answered that it would, and faxed its own warrant to be lodged against him. Philbrick Decl., Ex. C (entry of Aug. 25, 2010). The only instrument lodged against Mr. Santiago when his federal sentence ended was Parole's. There is a September 20, 2010 telephone note relaying a probation officer's expectation. Philbrick Decl., Ex. C. That is hearsay about a non-party's intentions, and it is not competent to establish that a sovereign would have taken custody. Fed. R. Civ. P. 56(c)(2), (4). The statement is also hearsay offered for its truth. Fed. R. Evid. 801, 802. And Mr. Philbrick has no personal knowledge of what Virginia would have done. Fed. R. Evid. 602, 701.

Third, the later history further undermines it. Mr. Santiago was not committed to the Virginia Department of Corrections until July 5, 2013, and only after pleading guilty to charges filed in 2011. Stip. ¶¶ 38–39. In the S.D.N.Y. class litigation against these same Defendants, the

court rejected materially identical arguments that detainers and holds excused continued enforcement of void supervision terms. *Betances v. Fischer*, No. 11-cv-3200, ECF No. 446 (S.D.N.Y. Aug. 16, 2024).

## IV. The Impediments Evidence Describes 2006 Through 2008 and Is Refuted for 2010 by Defendants' Own Proof

### a. By September 2010 the Referral Machinery Was Working, and Defendants Had Already Used It More Than 3,700 Times

Defendants' impediments showing is a period piece. The certiorari petition in *Buhrle v. Earley* was filed in April 2007; the reply in June 2007; the District Attorney's brief in *Sparber* in December 2007; the declaratory judgment action was dismissed in December 2008; and the habeas decisions collected in Exhibit F are all from 2008. 2018 Keane Decl., Exs. A–D; Def. 56.1 ¶¶ 12–23.

Everything changed after that, and Defendants' own declarant says so. *Sparber* and *Garner* were decided in April 2008. Section 601-d took effect June 30, 2008. Parole then referred "over 3,700 parolees" to their sentencing courts under it. Philbrick Decl. ¶ 40. A Memorandum of Understanding with the Office of Court Administration governed how the referrals would be prioritized. *Id.* ¶ 43. Counsel's office monitored the courts' responses, notified the Department when recalculation was needed, and terminated supervision when the term came off. *Id.* ¶¶ 44–48. That is not a description of impediment. It is a description of a functioning process. Pl. 56.1 Resp. & Counter-Stmt. ¶¶ 74–77.

And in Mr. Santiago's own case, the supposed obstacle never materialized: the District Attorney consented. The one piece of evidence about how *this* referral went shows no resistance at all.

**b.** When the Court Did Not Timely Rule, Correction Law § 601-d(6) Required the Department to Adjust Its PRS Records

Section 601-d(4) required the designated person to appear "no later than twenty days after receipt of said notice," the proceeding to be commenced "no later than thirty days after receiving notice," and a written determination "no later than forty days after receipt of such notice," subject to a single ten-day extension for extraordinary circumstances. N.Y. Correct. Law § 601-d(4). The record does not identify the date on which the sentencing court received that notice. But the written determination did not issue until December 15, 2010 — seventy-nine days after Defendant Tracy signed the notice — which is beyond the forty days § 601-d(4) allows and beyond fifty days even with the ten-day extension, and the record reflects no application for an extension. Pl. 56.1 Resp. & Counter-Stmt. ¶¶ 70-71.

The determination came on December 15, while Mr. Santiago remained in state custody. Section 601-d(6) addressed that circumstance: when the Department had not been informed of a timely determination, it could notify the court and, 'in any event,' was required to adjust its records to note that the court had not imposed PRS. N.Y. Correct. Law § 601-d(6). At a minimum, whether continued enforcement after the § 601-d clock expired caused the resulting detention is a question for a jury.

**c.** ***Vincent v. Annucci*** **Forecloses the Argument That State Law Prevented Release**

Mr. Philbrick states that "[a]t no time was Parole authorized to unilaterally vacate, expunge or otherwise strike a term of PRS." Philbrick Decl. ¶ 37. The Second Circuit has answered that. Officials in this position are "not permitted to flout the Constitution or federal law, even if there were state laws to the contrary," and were obliged to "at least attempt to cease" the "administrative and custodial operations that had been held to violate federal law." *Vincent II*, 63

F.4th at 154–55.

Parole needed no new authority to decline to execute its own warrant, to decline to prosecute a revocation on charges it had just told a judge it could not confirm, to move to vacate the warrant as courts across the state were doing, or to follow up when the statutory deadlines lapsed. Whether any concrete impediment stood in the way of *any* of those steps is, at most, a disputed question of fact — which is precisely why *Vincent II* remanded rather than directing judgment for the official. *Id.* at 155.

#### d. These Same Defendants Have Already Litigated and Lost These Same Impediments Arguments

The impediments defense is not new. Fischer, Annucci, and Tracy raised it in the certified class action arising from the same practice, and the January 17, 2024 order found no legal impediments but initially identified factual issues concerning practical impediments; on reconsideration, the court found no legal or practical impediments for the Sentencing Minutes Members after an initial six-week review period and explained that an independent detainer did not prevent relief from unlawful PRS. *Betances v. Fischer*, No. 11-cv-3200, ECF No. 446 (S.D.N.Y. Aug. 16, 2024); *see also Betances v. Fischer*, 403 F. Supp. 3d 212, 218–19 (S.D.N.Y. 2019). Those rulings are not binding here, but they are the closest thing to a controlled experiment on this defense, and it failed.

### V. Even on Defendants' Best Case the 2010 Claims Survive, Because a Proven Violation Carries at Least Nominal Damages

Defendants ask for dismissal of "all claims" arising from the 2010 custody. That relief does not follow from their own theory. Their argument, at its strongest, is that Mr. Santiago cannot prove he would have been released sooner. Assume it. The consequence is a limit on

compensatory damages, not dismissal.

A plaintiff who proves a constitutional violation is entitled to at least nominal damages even without proof of actual injury. *Carey v. Piphus*, 435 U.S. 247, 266 (1978). Nominal damages redress a completed violation and keep the claim alive. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 292 (2021). *Vincent II* says the same thing in the same breath as the causation rule it announces: where the detention would have occurred anyway, "the plaintiff is entitled only to nominal damages." 63 F.4th at 151. Entitled — not dismissed.

And the compensatory question is for a jury in any event. Loss of liberty is itself a compensable injury, and its valuation does not require proof of separate pecuniary or emotional harm. *Kerman v. City of New York*, 374 F.3d 93, 125–26 (2d Cir. 2004). Ninety-three days in a state prison cell on a sentence no judge imposed is the paradigm case. Compare *Hassell*, 879 F.3d at 49–51, where the plaintiff was subject only to supervision in the community and could not show it was more onerous than the lawful conditional release he would otherwise have served. Pl. 56.1 Resp. & Counter-Stmt. ¶ 87.

If the Court concludes that some initial processing period is not fairly attributable to Defendants, the remedy is to define the compensable window and send the rest to the jury — not to dismiss claims the Second Circuit revived last October.

## F. CONCLUSION

For the reasons stated above, Defendants' motion for partial summary judgment should be denied in its entirety.

DATED: September 15, 2026

RESPECTFULLY SUBMITTED,

By:

Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
*Counsel for Plaintiff Jesus Santiago*

**CERTIFICATE OF COMPLIANCE**

I certify that this Memorandum of Law complies with the page and formatting limits set by Local Civil Rule 7.1 of this Court and by the Individual Practice Rules of the Honorable Kiyo A. Matsumoto. Excluding the caption, table of contents, table of authorities, signature block and this certificate, this Memorandum is 19 pages and contains 5,688 words.

DATED: September 15, 2026
`

*Baruch S. Gottesman, Esq.*