**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| JESUS SANTIAGO,<br><br>Plaintiff,<br><br>- against -<br><br>BRIAN FISCHER, ANTHONY J. ANNUCCI, and TERRENCE X. TRACY,<br><br>Defendants. | ) | 12-CV-2137 (KAM) (ST) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS AND COUNTER-STATEMENT OF ADDITIONAL MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

Plaintiff Jesus Santiago, by his attorneys, Gottesman Legal PLLC, submits this Response to Defendants' May 29, 2026 Statement of Undisputed Material Facts (cited as "Def. 56.1"), and this Counter-Statement of Additional Material Facts, pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Each numbered response below corresponds to the identically numbered paragraph of Def. 56.1. Record citations are to the Declaration of Steven H. Philbrick, dated December 23, 2016 ("Philbrick Decl.") and its exhibits, which Defendants submitted with this motion; to the stipulated facts read to the jury as Joint Exhibit 1 at the November 2022 trial ("Stip."); to the trial transcript ("TS"); and to the reported decisions in this case.

Two preliminary matters apply throughout. *First*, this motion is limited by order of the Court to Plaintiff's incarceration from September 14, 2010 to December 16, 2010. Paragraphs 1 through 27 of Def. 56.1 recite the history of post-release supervision in New York, and

Paragraphs 28 through 46 recite Plaintiff's own criminal and custodial history through April 2008. Plaintiff responds to them to preserve the record, but they are not material to the period at issue within the meaning of Local Civil Rule 56.1, except insofar as they bear on the authority and information available to Defendants in September 2010, and Plaintiff's responses to them should not be read as conceding materiality. *Second*, a substantial number of the paragraphs in Def. 56.1 recite propositions of law, quote judicial opinions, or characterize the holdings of cases and statutes. A Rule 56.1 statement is a vehicle for material facts, not legal argument, and no response is required to a legal conclusion. Where Plaintiff states that a paragraph asserts a proposition of law, that statement is made without prejudice to the arguments in Plaintiff's accompanying Memorandum of Law.

## I. RESPONSES TO DEFENDANTS' NUMBERED PARAGRAPHS

**Post-Release Supervision in New York (Def. 56.1 ¶¶ 1-27)**

1. Paragraph 1 asserts a proposition of law and characterizes a statute and a judicial decision, to which no response is required. To the extent a response is required, Plaintiff admits that in 1998 the New York Legislature enacted a determinate sentencing scheme for violent felony offenders that included a period of post-release supervision ("PRS"), and otherwise denies the paragraph as immaterial to the September to December 2010 period at issue on this motion.

2. Paragraph 2 asserts a proposition of law describing Penal Law §§ 70.00(6) and 70.45, to which no response is required. To the extent a response is required, Plaintiff admits that those statutes provide what they provide, and respectfully refers the Court to the statutes themselves.

3. Paragraph 3 asserts a proposition of law and quotes a statute, to which no response is required. Plaintiff respectfully refers the Court to the statute.

4. Paragraph 4 quotes a holding of *Scott v. Fischer*, 616 F.3d 100 (2d Cir. 2010), and is a proposition of law to which no response is required. Plaintiff further states that whatever the 1998 statute required, the Second Circuit held in 2006 that federal due process requires judicial pronouncement of PRS, *Earley v. Murray*, 451 F.3d 71, 75-76 (2d Cir. 2006), and that holding governed at all times relevant to this motion.

5. Paragraph 5 characterizes a decision of a state trial court and is a proposition of law to which no response is required. To the extent a response is required, Plaintiff admits solely for purposes of this motion that the decision contains the quoted language, and states that the paragraph is immaterial to the September 14 to December 16, 2010 period at issue.

6. Paragraph 6 collects and characterizes Appellate Division decisions and is a proposition of law to which no response is required. To the extent a response is required, Plaintiff admits solely for purposes of this motion that those decisions say what they say, and states that the paragraph is immaterial to the September 14 to December 16, 2010 period at issue. Plaintiff further denies the paragraph to the extent it suggests that these decisions remained good law after *Matter of Garner v. New York State Department of Correctional Services*, 10 N.Y.3d 358 (2008), which was decided more than two years before the period at issue.

7. Paragraph 7 characterizes an order denying leave to appeal and is a proposition of law to which no response is required. To the extent a response is required, Plaintiff admits solely for purposes of this motion that the order says what it says, and states that the paragraph is immaterial to the September 14 to December 16, 2010 period at issue.

8. Admitted in part and denied in part. Plaintiff admits that before *Earley*, DOCS personnel calculated PRS as an automatic component of a determinate sentence, and that state courts at that time upheld the practice. Plaintiff denies the paragraph to the extent it implies that this practice remained lawful after June 9, 2006, and states that the paragraph is otherwise immaterial to the September 14 to December 16, 2010 period at issue.

9. Paragraph 9 states the holding of *Earley* and is a proposition of law to which no response is required. Plaintiff admits that *Earley* so held, and states that *Earley* further held that a PRS term added by corrections officials rather than pronounced by a judge is "a nullity." 451 F.3d at 76.

10. Paragraph 10 characterizes *Earley* and is a proposition of law to which no response is required. To the extent a response is required, Plaintiff admits that *Earley* contains the quoted language, and denies the paragraph to the extent it implies that *Earley* authorized corrections officials to continue enforcing an unpronounced PRS term pending a resentencing that no one had sought.

11. Admitted that the district court on remand in *Earley* stayed habeas relief as described. Immaterial to the September 14 to December 16, 2010 period at issue.

12. Admitted that the Kings County District Attorney declined to pursue resentencing in Earley in 2007. Immaterial to the September 14 to December 16, 2010 period at issue, and Plaintiff further states that in this case, when the question was actually presented in 2010, the Kings County District Attorney consented to a disposition without PRS. See Pl. 56.1 Resp. ¶ 81.

13. Paragraph 13 asserts a proposition of law. To the extent a response is required, Plaintiff admits that DOCS and Parole lacked statutory authority to refer individuals to sentencing courts before Correction Law § 601-d took effect on June 30, 2008, and denies the paragraph as immaterial to the 2010 period, by which time § 601-d had been in force for twenty-seven months and Parole had used it to refer more than 3,700 parolees. Philbrick Decl. ¶ 40.

14. Immaterial. Paragraph 14 concerns the period from June 12, 2007 to February 6, 2008, which is not at issue on this motion. Plaintiff admits only that *Betances v. Fischer*, 837 F.3d 162 (2d Cir. 2016), contains the quoted language.

15. Immaterial to the September 14 to December 16, 2010 period at issue. The certiorari petition and reply in Buhrle v. Earley were filed in 2007. Plaintiff admits only that those documents say what they say. Plaintiff further states that the position the Kings County District Attorney took in 2007 was not the position that office took when this referral was made: in December 2010 that office consented to a disposition without PRS. Pl. 56.1 Resp. ¶ 81.

16. Admitted that the Kings County District Attorney declined to pursue Earley's resentencing in 2007. Immaterial to the September 14 to December 16, 2010 period at issue.

17. Immaterial. Paragraph 17 concerns the New York County District Attorney, who had no role in Plaintiff's case, and concerns a period ending April 29, 2008.

18. Immaterial for the reasons stated in response to Paragraph 17. Plaintiff admits only that the brief says what it says.

19. Paragraph 19 collects decisions issued between 2005 and 2007 and asserts a proposition of law to which no response is required. To the extent a response is required, Plaintiff admits solely for purposes of this motion that those decisions say what they say, and states that the paragraph is immaterial to the September 14 to December 16, 2010 period at issue. Plaintiff further states that by 2008 state courts were sustaining habeas petitions and vacating parole warrants in these cases, holding that a petitioner held on such a warrant "is being detained for violating a non-existing portion of his sentence." Philbrick Decl., Ex. F (*People ex rel. Belize v. Warden*, Index No. 251681/08 (Sup. Ct. Bronx County Oct. 10, 2008)).

20. Admitted that DOCS and Parole made such requests in Article 70 and Article 78 proceedings before June 2008 and that those requests were often rejected. Immaterial to the September 14 to December 16, 2010 period at issue, when Defendants possessed and used direct statutory referral authority under § 601-d and did not need any court's permission to make a referral.

21. Admitted that the declaratory judgment action was filed in 2008 and that the relief sought was denied. Immaterial to the September 14 to December 16, 2010 period at issue.

22. Paragraph 22 states the holdings of *Sparber* and *Garner* and is a proposition of law to which no response is required. Plaintiff admits that those decisions issued on April 29, 2008 — approximately twenty-nine months before the period at issue.

23. Paragraph 23 states a proposition of law to which no response is required. Plaintiff admits that Sparber contains the quoted language, and denies the paragraph to the extent it implies that resentencing was an available remedy as to Plaintiff in 2010. By then, *People v.*

*Williams*, 14 N.Y.3d 198 (2010), decided February 23, 2010, barred resentencing to add PRS where, as here, the defendant had completed his determinate term and been released. Pl. 56.1 Resp. ¶¶ 79-80.

24. Admitted that Correction Law § 601-d was enacted in June 2008 and took effect June 30, 2008. Plaintiff denies the characterization of the statute as merely "enabling" to the extent it implies that the statute limited Defendants' obligations; § 601-d imposed a mandatory duty to refer ("the department *shall* make notification") and imposed binding deadlines on the resentencing process. § 601-d(2), (4).

25. Admitted that § 601-d(2) contains the quoted language.

26. Admitted in part and denied in part. Plaintiff admits that the sentencing court convenes the resentencing proceeding. Plaintiff denies Paragraph 26 as materially incomplete. Paragraph 26 omits § 601-d(4), which required the designated person to appear no later than twenty days after receipt of the notice, the proceeding to be commenced no later than thirty days after receipt, and a written determination to issue no later than forty days after receipt, subject to a single ten-day extension for extraordinary circumstances. Paragraph 26 further omits § 601-d(6), which addressed the circumstance in which no timely determination was received and required the Department to adjust its records to note that the sentencing court had not imposed PRS. Plaintiff respectfully refers the Court to the statute in full.

27. Admitted that § 601-d describes the two dispositions summarized. Denied as materially incomplete for the reasons stated in response to Paragraph 26.

**Plaintiff's Convictions and Custody Before 2010 (Def. 56.1 ¶¶ 28-46)**

28. Admitted that the Second Circuit's opinion so states. Immaterial to the September 14 to December 16, 2010 period at issue, and Plaintiff further states that the conduct underlying his 2002 conviction has no bearing on whether Defendants caused his detention in 2010 on a sentence no judge imposed.

29. Admitted; immaterial to the September 14 to December 16, 2010 period at issue.

30. Admitted that Plaintiff pleaded guilty on May 3, 2002 before Justice Sheldon Greenberg to one count of criminal possession of a weapon, in satisfaction of all five counts of Indictment No. 1141/2000. Stip. ¶ 9.

31. Admitted that the plea minutes reflect the exchange described. Plaintiff denies Paragraph 31 to the extent it suggests that what was discussed at the plea hearing has any legal effect on the sentence actually imposed. Under *Earley*, "the sentence imposed by the sentencing judge is controlling," 451 F.3d at 74, and the parties stipulated at trial that at sentencing "there was no mention of post-release supervision." Stip. ¶ 15.

32. Admitted that Plaintiff was sentenced on May 15, 2002 by Justice Gustin Reichbach, Justice Greenberg being unavailable.

33. Admitted. Plaintiff's sentencing minutes have never been located. Plaintiff further states that the sentencing court in December 2010, having examined "the Court file, the sentencing Judge's notes, the original commitment order, and all available stenographic minutes of the plea and/or sentence," found "no discussion or agreement concerning post release supervision as part of the Defendant's sentence reflected anywhere in the proceedings." Philbrick Decl., Ex. E.

34. Admitted. The Sentence and Order of Commitment — the document delivered to DOCS and relied upon by DOCS to execute the sentence — is silent as to post-release supervision.

35. Admitted.

36. Admitted that Plaintiff entered DOCS custody on April 22, 2004. Plaintiff notes that the sentence was imposed on May 15, 2002, not in 2004, and denies any suggestion to the contrary.

37. Admitted that Plaintiff was released from DOCS to Parole supervision on November 7, 2004 upon completion of the determinate term of his sentence, and that Parole then calculated a maximum expiration date for a PRS term. Plaintiff denies Paragraph 37 to the extent it characterizes that term as "his PRS term." No judge ever imposed a term of post-release supervision on Plaintiff. The five-year term was added by agency personnel to the Department's records. Philbrick Decl. ¶¶ 8-11, 51; Stip. ¶ 15.

38. Admitted that Plaintiff left New York and that Parole treated his PRS term as suspended. Immaterial to the September 14 to December 16, 2010 period at issue.

39. Admitted; immaterial to the September 14 to December 16, 2010 period at issue.

40. Admitted; immaterial to the September 14 to December 16, 2010 period at issue.

41. Admitted; immaterial to the September 14 to December 16, 2010 period at issue.

42. Admitted that the parole violation charges arising in 2007 were sustained and that a twelve-month time assessment was imposed. Plaintiff denies Paragraph 42 to the extent it assumes the existence of a lawful term of post-release supervision capable of being violated. Immaterial to the September 14 to December 16, 2010 period at issue.

43. Admitted.

44. Admitted.

45. Admitted that Plaintiff did not report on February 6, 2008. Immaterial to the September 14 to December 16, 2010 period at issue, and denied to the extent the paragraph assumes a lawful reporting obligation.

46. Admitted; immaterial to the September 14 to December 16, 2010 period at issue.

**Plaintiff's Return to New York Custody and the 2010 Referral (Def. 56.1 ¶¶ 47-54)**

47. Admitted that Plaintiff was extradited from federal prison in West Virginia to Rikers Island on September 14, 2010. Plaintiff denies Paragraph 47 as materially incomplete. Plaintiff's federal sentence ended on September 9, 2010. The instrument on which New York took and held custody of him was New York State Parole warrant #0577832, issued on charges that he violated the conditions of the five-year PRS term that the Department had added to its records and that no judge had pronounced. Philbrick Decl., Ex. C (entries of Aug. 25, Sept. 14 and Oct. 19, 2010).

48. Admitted that Plaintiff was charged with parole violations. Plaintiff denies Paragraph 48 to the extent it assumes the existence of a lawful term of post-release supervision capable of being violated. The sentencing court subsequently held that "[a]ny pending violation or prior revocation of a DOCS assessed period of PRS is deemed a nullity and is vacated." Philbrick Decl., Ex. E.

49. Admitted that Plaintiff's parole was revoked with a thirty-eight-month time assessment. Plaintiff denies Paragraph 49 as materially incomplete. The final revocation hearing was

completed on October 1, 2010 — four days after Defendant Tracy signed the letter advising the sentencing court that Parole could not confirm that any PRS term had been pronounced. Philbrick Decl., Ex. C (entry of Oct. 13, 2010, reporting "FINAL REVOCATION HEARING COMPLETED ON 10/01/2010 FOR WARRANT #0577832"); Philbrick Decl., Ex. D.

50. Denied. Paragraph 50 is not supported by admissible evidence and is immaterial. The sole support is a September 20, 2010 telephone entry recording a Virginia probation officer's statement that Plaintiff "still owes time with Virginia" and "will still have to do 2 years with Virginia" when New York releases him. Philbrick Decl., Ex. C. That entry is hearsay offered for its truth and is not competent evidence of what a separate sovereign would have done. Fed. R. Civ. P. 56(c)(2), (4); Fed. R. Evid. 602, 701, 801, 802. The record contains no Virginia detainer, warrant, or hold. To the contrary, on August 25, 2010, federal officials at USP Hazelton advised Parole that Plaintiff had "no documentation detainer or warrant on record," and Parole responded that it would extradite and fax its own warrant. Philbrick Decl., Ex. C (entry of Aug. 25, 2010). When New York did release Plaintiff on December 16, 2010, Virginia did not take custody of him; he was released to the community and was not committed to the Virginia Department of Corrections until July 5, 2013, on charges filed in 2011. Stip. ¶¶ 38-39.

51. Admitted that on September 27, 2010, Parole sent a notice under Correction Law § 601-d to Justice Reichbach, and that the notice states that the Sentence and Commitment order "contained no reference to a period of PRS" and that Parole "does not have a copy of the sentencing minutes within its files to confirm whether the period of PRS was pronounced by the Court at the time of sentencing." Philbrick Decl., Ex. D. Plaintiff denies the

characterization "just a week after he once again was returned to the jurisdiction of New York." Plaintiff was returned on September 14, 2010; the notice is dated September 27, 2010, thirteen days later, and six days after the preliminary revocation hearing. Plaintiff further denies Paragraph 51 to the extent it implies that the referral ended Defendants' involvement: Parole prosecuted the final revocation hearing on the same unconfirmable term to completion on October 1, 2010, four days after the notice was signed, and Plaintiff remained in the custody of the Department of Correctional Services until December 16, 2010. Philbrick Decl., Ex. C. Plaintiff further notes that the notice states that Plaintiff was sentenced on May 15, 2002, not, as Paragraph 51 states, "by the sentencing court in 2004."

52. Admitted that on December 15, 2010 the sentencing court declined to resentence Plaintiff and held that "no period of post release supervision constitutes part of Defendant's sentence." Plaintiff denies Paragraph 52 as materially incomplete. The order recites that the court examined "the Court file, the sentencing Judge's notes, the original commitment order, and all available stenographic minutes of the plea and/or sentence" and heard from defense counsel and the Assistant District Attorney; finds "no discussion or agreement concerning post release supervision as part of the Defendant's sentence reflected anywhere in the proceedings"; directs that the "[o]riginal sentence stands"; and orders that "[a]ny pending violation or prior revocation of a DOCS assessed period of PRS is deemed a nullity and is vacated." Philbrick Decl., Ex. E.

53. Admitted that Plaintiff was released from the custody of the Department of Correctional Services on December 16, 2010. Plaintiff notes that the supporting citation is to Philbrick Decl. ¶ 63, which concerns a September 20, 2010 telephone entry; the release date appears

at Philbrick Decl. ¶ 66. Plaintiff further states that he was released to the community and that no other jurisdiction took custody of him. Stip. ¶¶ 38-39.

54. Denied in part. Plaintiff admits that neither DOCS nor Parole had his sentencing minutes. Plaintiff denies the assertion that "[a]t no time did Defendants have any knowledge as to whether Plaintiff's sentencing court" had pronounced PRS. Defendants had the Sentence and Order of Commitment, which was silent as to PRS, Def. 56.1 ¶ 34, and on September 27, 2010 Defendant Tracy wrote to the sentencing court stating that the commitment "contained no reference to a period of PRS" and that Parole could not confirm that PRS had been pronounced. Philbrick Decl., Ex. D. Defendants knew, from at least that date, that the term they were enforcing could not be confirmed to exist. Plaintiff further notes that Paragraph 54 refers to a sentencing "in 2004"; Plaintiff was sentenced on May 15, 2002.

## II. PLAINTIFF'S COUNTER-STATEMENT OF ADDITIONAL MATERIAL FACTS

Pursuant to Local Civil Rule 56.1(b), Plaintiff submits the following additional material facts as to which there exists a genuine issue to be tried, or which are undisputed and establish that Defendants are not entitled to judgment. Numbering continues from Defendants' Statement for ease of reference.

**The Sentence Actually Imposed**

55. On May 15, 2002, Justice Gustin Reichbach sentenced Plaintiff to a determinate term of three and one-half years. The parties stipulated at trial that "[a]t Mr. Santiago's sentencing on May 14th, 2002, there was no mention of post-release supervision." Stip. ¶ 15. The

stipulation as read to the jury refers to "May 14th"; the sentencing occurred on May 15, 2002. Def. 56.1 ¶¶ 32, 34.

56. The Sentence and Order of Commitment delivered to DOCS contained no reference to any term of post-release supervision. Def. 56.1 ¶ 34; see Philbrick Decl., Ex. D (September 27, 2010 notice reciting that the Sentence and Commitment order "contained no reference to a period of PRS"). Plaintiff respectfully refers the Court to the Sentence and Order of Commitment itself.

57. After Plaintiff entered DOCS custody on April 22, 2004, agency personnel calculated his sentence to include a five-year term of post-release supervision and entered that term in the Department's records. No judge imposed that term. Philbrick Decl. ¶¶ 8-11, 51-52.

58. Plaintiff completed the determinate term of imprisonment that the court did impose on November 7, 2004, and was released to supervision on the term the agency had added. Def. 56.1 ¶ 37; Philbrick Decl. ¶ 52.

**What Held Plaintiff in Custody in 2010**

59. Plaintiff's federal sentence at USP Hazelton in West Virginia ended on September 9, 2010. Philbrick Decl., Ex. C (entries of Aug. 19, Aug. 25 and Aug. 30, 2010).

60. On August 25, 2010, a federal official at USP Hazelton telephoned Parole and advised that Plaintiff "is still incarcerated and will be released on 9/9/10," and asked whether New York would extradite him "because he has no documentation detainer or warrant on record." Parole responded that it would extradite and would fax its warrant. Philbrick Decl., Ex. C (entry of Aug. 25, 2010).

61. The instrument on which New York took custody of Plaintiff was New York State Parole warrant #0577832, issued on charges that he violated the conditions of the post-release supervision term the Department had added to its records. Philbrick Decl., Ex. C.

62. Parole's own Parole Jail Time Certificate for warrant #0577832 runs from September 9, 2010 — the date Plaintiff's federal sentence ended. Philbrick Decl., Ex. C (entry of Oct. 19, 2010).

63. Parole officers extradited Plaintiff from West Virginia to Rikers Island on September 14, 2010. Def. 56.1 ¶ 47; Philbrick Decl., Ex. C (entry of Sept. 14, 2010).

64. A preliminary revocation hearing was held on September 21, 2010, and probable cause was found. Philbrick Decl., Ex. C (entry of Sept. 21, 2010).

**The September 27, 2010 Referral and What Followed It**

65. On September 27, 2010 — thirteen days after the extradition and six days after the preliminary hearing — Defendant Terrence X. Tracy, as Counsel to the Division of Parole, signed and sent a notice under Correction Law § 601-d to Justice Reichbach. Philbrick Decl., Ex. D.

66. The notice states that the Sentence and Commitment order delivered to DOCS "contained no reference to a period of PRS," that "the Division of Parole does not have a copy of the sentencing minutes within its files to confirm whether the period of PRS was pronounced by the Court at the time of sentencing," and that Plaintiff is accordingly "a designated person" under Correction Law § 601-d(1). Philbrick Decl., Ex. D.

67. Copies of the notice were sent to the Appeals Bureau of the Office of the Kings County District Attorney, to the Administrative Judge for Kings County, to the DOCS Office of Sentencing Review, and to Defendant Tracy. Philbrick Decl., Ex. D.

68. On October 1, 2010 — four days after Defendant Tracy signed that notice — Parole completed the final revocation hearing on the same unconfirmable term, revoked it, and imposed a thirty-eight-month time assessment. Philbrick Decl., Ex. C (entry of Oct. 13, 2010).

69. On October 17, 2010, Plaintiff was transferred from Rikers Island into the custody of the Department of Correctional Services, where he remained until December 16, 2010. Philbrick Decl., Ex. C (entries of Oct. 14 and Oct. 19, 2010).

70. Correction Law § 601-d(4) required the designated person to appear before the sentencing court "no later than twenty days after receipt of said notice," the proceeding to be commenced "no later than thirty days after receiving notice," and the court to issue a written determination "no later than forty days after receipt of such notice," subject to "an extension of ten days on the basis of extraordinary circumstances." The record reflects no application for an extension of any of those deadlines. Philbrick Decl., Exs. C-E.

71. The record does not identify the date on which the sentencing court received the September 27, 2010 notice. The court's written determination issued on December 15, 2010, seventy-nine days after the notice was signed — beyond the forty days allowed by § 601-d(4), and beyond fifty days even with the ten-day extension the statute permits. Philbrick Decl., Ex. E. Plaintiff remained in the custody of the Department of Correctional Services throughout.

72. Correction Law § 601-d(6) addressed the circumstance in which the Department had not been informed of a timely determination, and required the Department in any event to adjust its records to note that the sentencing court had not imposed a term of post-release supervision. The record reflects no adjustment of the Department's records as to post-release supervision at any time before December 16, 2010. Philbrick Decl., Exs. C-E.

73. The record contains no follow-up letter, no communication to chambers, no application to advance the matter, and no re-examination of Plaintiff's custody after the § 601-d deadlines passed.

**The Referral Process Was Functioning by September 2010**

74. By June 2008, Parole had launched a Post-Release Supervision Resentencing Initiative and had begun identifying parolees whose PRS terms might not have been judicially pronounced. Philbrick Decl. ¶¶ 27-36.

75. Under § 601-d(2), Parole referred more than 3,700 parolees deemed "designated persons" to their sentencing courts. Philbrick Decl. ¶ 40.

76. In July 2008, DOCS, Parole and the Office of Court Administration entered a Memorandum of Understanding governing how § 601-d referrals would be prioritized. Philbrick Decl. ¶ 43.

77. Counsel's office to the Board of Parole monitored the courts' responses to § 601-d notices, ascertained whether DOCS had performed an updated time computation, notified DOCS' Office of Sentencing Review when it had not, and directed field staff to terminate supervision when a term was removed. Philbrick Decl. ¶¶ 44-48.

78. By October 2008, New York courts were sustaining habeas petitions and vacating parole warrants in cases of administratively added PRS. In *People ex rel. Belize v. Warden, Rikers Island Correctional Facility*, the Supreme Court, Bronx County, sustained the writ, vacated parole violation warrant #572104, and directed the petitioner's discharge, holding that the petitioner "is being detained for violating a non-existing portion of his sentence." Philbrick Decl., Ex. F (Index No. 251681/08, Oct. 10, 2008).

**The Counterfactual**

79. On February 23, 2010, the New York Court of Appeals held that a defendant who has completed his determinate term and been released may not be resentenced to add post-release supervision. *People v. Williams*, 14 N.Y.3d 198 (2010), *cert. denied*, 562 U.S. 947 (2010).

80. Plaintiff completed his determinate term on November 7, 2004 and was released. Def. 56.1 ¶ 37; Pl. Counter-Stmt. ¶ 58.

81. When the question was presented to the sentencing court in December 2010, the Kings County District Attorney appeared and consented to a disposition without post-release supervision. Philbrick Decl., Ex. E (order reciting that the court heard from "the Assistant District Attorney"); Santiago v. Fischer, 158 F.4th 397, 406 (2d Cir. 2025) ("Santiago sought resentencing without a term of post-release supervision, and the District Attorney's Office consented to that resentencing."); see Def. 56.1 ¶ 52.

82. On December 15, 2010, the sentencing court examined "the Court file, the sentencing Judge's notes, the original commitment order, and all available stenographic minutes of the plea and/or sentence"; found "no discussion or agreement concerning post release

supervision as part of the Defendant's sentence reflected anywhere in the proceedings"; declined to resentence Plaintiff at all; held "that no period of post release supervision constitutes part of Defendant's sentence"; directed that the "[o]riginal sentence stands"; and ordered that "[a]ny pending violation or prior revocation of a DOCS assessed period of PRS is deemed a nullity and is vacated." Philbrick Decl., Ex. E.

83. Nothing in the file changed between September 14, 2010 and December 15, 2010. The Sentence and Order of Commitment was silent as to PRS throughout. The sentencing minutes were missing throughout. *Williams* had been decided throughout.

84. Plaintiff was released from the custody of the Department of Correctional Services on December 16, 2010, to the community. Philbrick Decl. ¶ 66. No other jurisdiction took custody of him. He was not committed to the Virginia Department of Corrections until July 5, 2013, following a guilty plea to charges filed in 2011. Stip. ¶¶ 38-39.

85. The record contains no Virginia detainer, warrant, or hold lodged against Plaintiff at any time between September 14, 2010 and December 16, 2010. Philbrick Decl., Ex. C (entry of Aug. 25, 2010).

**Procedural Posture**

86. On October 30, 2025, the United States Court of Appeals for the Second Circuit vacated the dismissal of Plaintiff's claims arising from the 2010 period, holding that "our precedents foreclose the conclusion that qualified immunity prevents Santiago from obtaining relief for the months he spent in custody in 2010," and noting that the parties agreed on that point. *Santiago v. Fischer*, 158 F.4th 397, 414 (2d Cir. 2025). The mandate issued November 20, 2025.

87. Plaintiff was held in the custody of New York State corrections and parole authorities for ninety-three days, from September 14, 2010 through December 16, 2010, on a term of post-release supervision that no judge had imposed and that the sentencing court subsequently held was no part of his sentence. Parole's jail time certificate for the warrant on which he was held runs from September 9, 2010. Pl. Counter-Stmt. ¶ 62.

88. On September 30, 2017, this Court granted Defendants summary judgment on Plaintiff's claims arising from the 2010 period. Santiago v. Fischer, No. 12-cv-2137, 2017 WL 11929991, at *10 (E.D.N.Y. Sept. 30, 2017). Plaintiff's claims arising from the 2007 to 2008 period were tried in November 2022, and the jury returned a verdict of $100,000 in compensatory damages and $750,000 in punitive damages.

DATED: September 15, 2026

RESPECTFULLY SUBMITTED,

By: [signature]

Baruch S. Gottesman, Esq.
Gottesman Legal PLLC
11 Broadway, Suite 615
New York, NY 10004
*Counsel for Plaintiff Jesus Santiago*