**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| JESUS SANTIAGO, | ) | |
| | ) | |
| Plaintiff, | ) | 12-CV-2137 (KAM) (ST)[1] |
| | ) | |
| ~ against ~ | ) | |
| | ) | |
| BRIAN FISCHER, ANTHONY J. ANNUCCI, and TERRENCE X. TRACY, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE

By Baruch S. Gottesman, Esq.
Gottesman Legal PLLC
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 401-6910
bg@gottesmanlegal.com
*Attorneys for Plaintiff Jesus Santiago*

[1] Defendants' moving papers appear to include a scrivener's error for the case number, which is corrected here.

## A. TABLE OF CONTENTS


B. **TABLE OF AUTHORITIES** .......... 4

C. **PRELIMINARY STATEMENT** .......... 6

D. **BACKGROUND** .......... 8

I. **The Posture of the Retrial** .......... 8

II. **The 2022 Rulings, and What the Court of Appeals Did With Them** .......... 9

III. **The Facts on Which This Motion Turns** .......... 10

E. **ARGUMENT** .......... 11

I. **Points I, III and IV Should Be Denied Because They Ask for Advance Permission to Offer Evidence and to Make Arguments, Which Is Not What a Motion in Limine Decides** .......... 11

a. Plaintiff Does Not Dispute That Impediments Evidence Is Admissible, but It Is Subject to the Limits the Second Circuit Placed on Such Evidence .......... 13

II. **Point II Should Be Denied Because It Asks the Court to Decide Causation on a Motion in Limine, and Because Its Legal Premise Is Wrong** .......... 15

a. Holding Plaintiff to His Burden Is Not the Same as Forbidding Him to Carry It .......... 15

b. The Premise That Any Resentencing Before July 1, 2008 Would Have Re-Imposed Post-Release Supervision Answers the Wrong Question and Fails on Its Own Terms .......... 16

c. Defendants Never Tested the Counterfactual, and the Data Points in the Record Point the Other Way .......... 18

d. Point II Has No Application at All to the 2010 Period .......... 19

III. **Points V and VI Should Be Denied as Impeachment Evidence Because Every Conviction Defendants Identify Falls Outside Rule 609(b)'s Ten-Year Window** .......... 20

a. Rule 609(b) Runs to the Date of Trial, Not the Date the Complaint Was Filed .......... 20

b. Under Rule 609(b)'s Reverse Balancing Test, None of These Convictions Comes In .......... 21

c. The Details, the Disciplinary History, and the Post-2010 Conduct Are Inadmissible on Any Theory .......... 23

IV. **Points V and VI Should Be Denied Insofar as They Suggest the Incarceration Was Justified by Other Bad Acts, Because That Argument Is Speculative and the Dates Refute It** .......... 24

a. The Fairfax County Conviction Postdates the 2007–2008 Period .......... 25

b. There Was No Virginia or Federal Hold on Mr. Santiago in 2010 .......... 26

c. "He Would Have Been Locked Up Anyway" Is the Speculation Defendants Ask the Court to Forbid .......... 26

V. **Even If Some of This Evidence Were Admissible, Rule 403 Requires Its Exclusion, and a Stipulation Gives Defendants Everything Their Own Authorities Allow** .......... 27

VI. **If the Court Admits Any of This Evidence, Limiting Instructions Should Be Given When It Is Received and Repeated in the Charge** .......... 29

F. **CONCLUSION** .......... 29

**CERTIFICATE OF COMPLIANCE** .......... 31

## B. TABLE OF AUTHORITIES

Page(s)

**Cases**

*Banushi v. Palmer*,
No. 08-CV-2937 (KAM), 2011 WL 13894 (E.D.N.Y. Jan. 4, 2011) ....28

*Banyan v. Sikorski*,
No. 25-1425, 2026 WL 1074659 (2d Cir. Apr. 21, 2026) ....22

*Brundidge v. City of Buffalo*,
79 F. Supp. 2d 219 (W.D.N.Y. 1999) ....22

*Crenshaw v. Herbert*,
409 F. App'x 428 (2d Cir. 2011) ....22

*Daniels v. Loizzo*,
986 F. Supp. 245 (S.D.N.Y. 1997) ....22

*Earley v. Annucci*,
810 F. App'x 60 (2d Cir. 2020) (summary order) ....19

*Earley v. Murray*,
451 F.3d 71 (2d Cir. 2006) .... passim

*English v. City of New York*,
786 F. Supp. 3d 520 (E.D.N.Y. 2025) ....27

*People v. Lingle*,
16 N.Y.3d 621 (2011) ....17

*People v. Velez*,
19 N.Y.3d 642 (2012) ....17

*People v. Williams*,
14 N.Y.3d 198 (2010), cert. denied, 562 U.S. 947 (2010) ....16, 17

*Sanabria v. State of New York*,
29 Misc. 3d 988 (N.Y. Ct. Cl. 2010) ....23

*Santiago v. Cuomo*,
No. 12-CV-2137, 2017 WL 11929991 (E.D.N.Y. Sept. 30, 2017) ....8

*Santiago v. Cuomo*,
No. 12-CV-2137, 2019 WL 8587292 (E.D.N.Y. Sept. 23, 2019) ....19

*Santiago v. Fischer*,
No. 12-CV-2137, 2022 WL 17227673 (E.D.N.Y. Nov. 25, 2022) ....6, 9, 12

*Santiago v. Fischer*,
No. 12-CV-2137, 2023 WL 2974201 (E.D.N.Y. Apr. 16, 2023) .... passim

*Santiago v. Fischer*,
158 F.4th 397 (2d Cir. 2025) .... passim

*Sedney v. Blot*,
No. 00-CV-1302, 2003 U.S. Dist. LEXIS 21364 (S.D.N.Y. Dec. 1, 2003) ......................28

*United States v. Estrada*,
430 F.3d 606 (2d Cir. 2005)......................................................................................23

*United States v. Mahler*,
579 F.2d 730 (2d Cir. 1978).................................................................................20, 21

*United States v. Nguyen*,
542 F.3d 275 (1st Cir. 2008)......................................................................................20

*Vincent v. Annucci (Vincent II)*,
63 F.4th 145 (2d Cir. 2023) ...............................................................................8, 17, 18

*Zinman v. Black & Decker (U.S.), Inc.*,
983 F.2d 431 (2d Cir. 1993).......................................................................................21

**Statutes**

N.Y. Correction Law § 601-d ......................................................................................20

N.Y. Penal Law § 70.45...................................................................................6, 9, 11, 16

N.Y. Penal Law § 70.85.........................................................................................18, 20

**Rules**

Fed. R. Civ. P. 26 .......................................................................................9, 15, 30

Fed. R. Civ. P. 37(c)(1).......................................................................................15, 30

Fed. R. Civ. P. 50 .....................................................................................12, 13, 16

Fed. R. Evid. 105 ...................................................................................................13, 29

Fed. R. Evid. 402 ...........................................................................................................24

Fed. R. Evid. 403 ...................................................................................................... passim

Fed. R. Evid. 404(b)........................................................................................................24

Fed. R. Evid. 602 ...........................................................................................................26

Fed. R. Evid. 609 ...................................................................................................... passim

Fed. R. Evid. 801 ...........................................................................................................26

Fed. R. Evid. 802 ...........................................................................................................26

## C. PRELIMINARY STATEMENT

Defendants' motion asks this Court for six pre-trial rulings on evidence. Defendants made most of these requests before the first trial, and the Court addressed them then. The Court of Appeals has since reversed the exclusion of impediments evidence and did not address the rest.[2]

Points I, III and IV are of a piece. They ask for an advisory ruling on causation and on how Defendants may argue the point at trial. Plaintiff does not dispute that the Second Circuit's decision makes evidence of impediments an issue for the jury, as to both causation and punitive damages. But that evidence is a broad category of proof. It cannot be settled in advance of trial, before any exhibit or witness has been identified, and without the limits the Court of Appeals itself placed on how the jury may consider it.

Point II asks the Court to decide, before trial, a core factual issue that belongs to the jury. Defendants' premise is that Penal Law § 70.45 made a five-year term of post-release supervision compulsory at any resentencing before July 1, 2008, so that an earlier referral for resentencing would have changed nothing about Mr. Santiago's incarceration. Respectfully, that premise is wrong. It is wrong because his determinate term was due to expire on May 29, 2005, more than two years before the period at issue, and once a sentence has been served, no resentencing can add post-release supervision to it. It is wrong because the Second Circuit held

---

2 Citations to "Defs.' Mem." are to the page numbers printed on Defendants' Memorandum of Law in Support of Their Motions in Limine, dated September 17, 2026. "*Santiago*" is the Second Circuit's decision in this case, *Santiago v. Fischer*, 158 F.4th 397 (2d Cir. 2025). The "2023 Order" is this Court's decision of April 16, 2023, *Santiago v. Fischer*, No. 12-CV-2137, 2023 WL 2974201 (E.D.N.Y. Apr. 16, 2023) (ECF No. 224), and the "2022 Order" is this Court's order of November 25, 2022, *Santiago v. Fischer*, No. 12-CV-2137, 2022 WL 17227673 (E.D.N.Y. Nov. 25, 2022) (ECF No. 202). Both orders are cited by ECF page number.

that a person in Mr. Santiago's position "could not have been resentenced *nunc pro tunc*." And in *Earley* itself, a Kings County case from this same period, the District Attorney told the court he would not seek a resentencing, and none occurred.

Points V and VI ask to put before the jury Mr. Santiago's felony convictions, the details of each offense, his prison disciplinary records, and his parole violations in three jurisdictions. If offered to impeach Mr. Santiago, every one of those convictions falls outside the ten-year window of Federal Rule of Evidence 609(b), which runs to trial, not to the filing of the complaint. If offered to suggest that his incarceration was justified by other bad acts (that he would have been incarcerated for other reasons anyway), the argument is speculative and refuted by the record: the Fairfax County conviction was entered eight months after the period at issue closed. And even if some of this criminal history were otherwise admissible, its prejudicial effect would substantially outweigh its value and would confuse the jury.

As Plaintiff sees it, the case should go to trial in December on the narrow and manageable scope laid out by the Second Circuit. Defendants' liability for the 2007–2008 period is not in question, and the Court of Appeals did not disturb it. The jury's task is to decide the value of Mr. Santiago's loss of liberty, whether concrete impediments rather than Defendants' conduct caused that damage, and whether punitive damages are warranted and in what amount. Consistent with the Court's approach before the first trial, when it directed the parties to stipulate to what aspects of his criminal history could be admitted, Mr. Santiago will stipulate that he had served prior periods of incarceration and supervision before the events at issue. He will not hide that he had been in prison before. But that history is not what gives rise to the claims in this case.

For those reasons, the motion should be denied, except as set out at the end of this Memorandum.

## D. BACKGROUND

The Court is familiar with this case, so this Background briefly reviews the posture of the retrial, the rulings on Defendants' in limine motions in 2022, and the facts on which this motion turns.

### I. The Posture of the Retrial

First, liability for the 2007–2008 period is settled. On September 30, 2017, this Court held Defendants Fischer, Annucci and Tracy liable for enforcing a term of post-release supervision that no judge had pronounced, for the period from June 12, 2007 to February 6, 2008. *Santiago v. Cuomo*, No. 12-CV-2137, 2017 WL 11929991 (E.D.N.Y. Sept. 30, 2017); 2023 Order, ECF No. 224 at 3, 7. The Second Circuit's mandate did not disturb that ruling. Rather, the Second Circuit found that Defendants are *not* entitled to qualified immunity for that period, *Santiago*, 158 F.4th at 412–13, but reversed the denial of a new trial because evidence of impediments was wrongly excluded. The Second Circuit also vacated the grant of qualified immunity for the 2010 period. *Id.* at 414.

This retrial is about damages and causation. It is not a retrial of liability, and in limine rulings should not reopen that door.

Second, the scope of the evidence follows from what the Court of Appeals actually held. The Court held that Mr. Santiago carries the burden to prove that Defendants *caused* his injury. That burden includes the question of "whether there was any impediment, legal or otherwise," to a corrections official "unilaterally releasing" him. *Santiago*, 158 F.4th at 409 (quoting *Vincent v. Annucci* (*Vincent II*), 63 F.4th 145, 154 (2d Cir. 2023)). There had been no factual determination of the "validity and effect" of the claimed impediments at the first trial. *Id.* at 411. The Second Circuit remanded that question for the jury to decide.

**II. The 2022 Rulings, and What the Court of Appeals Did With Them**

The docket reflects that Defendants moved in limine before the first trial to preclude Mr. Santiago from offering so-called "speculation" that he would have been relieved of post-release supervision, to admit his Virginia and federal sentences, to argue that they were not the cause of any damages and to offer the positions district attorneys and state courts took on post-release supervision, and to require him to prove that his life would have been different had he been resentenced earlier. 2023 Order, ECF No. 224 at 8–9.

On October 26, 2022, the Court directed the parties to file "a joint stipulation of facts and law to resolve some of the parties' evidentiary disputes, including what aspects of Plaintiff's criminal history could be admitted," and told them that it "would preclude speculative evidence and arguments by either party as to what might have occurred absent the constitutional violation." *Id.* at 9. On November 18 of that year, the Court *denied* Defendants' request to argue that they were not the cause of any damages and to introduce the positions of district attorneys and state courts, relying on Second Circuit precedent and on Defendants' failure to produce that evidence in their Rule 26 disclosures or with their motion. *Id.* at 9–10. A week later it denied their request to introduce Penal Law § 70.45, its legislative history and its amendments, in part because they had not said "who in particular would testify" or "what in particular those witnesses would say." 2022 Order, ECF No. 202 at 2.

Plaintiff recognizes that the Court of Appeals reversed on the issue of impediments. It ordered a new trial on the 2007–2008 period at which impediments evidence can be considered. *Santiago*, 158 F.4th at 400–01, 411–12. But that opinion did not review the Court's direction that the parties stipulate to what aspects of Mr. Santiago's criminal history could be admitted, or the

Court's refusal to give Defendants' proposed instruction on nominal damages. *See* 2023 Order, ECF No. 224 at 9, 55.

Those rulings were not disturbed by the Court of Appeals, so they remain the law of the case, and there is no reason to rehash them.

### III. The Facts on Which This Motion Turns

The underlying facts are largely undisputed. In May 2002 Mr. Santiago pleaded guilty to criminal possession of a weapon after being told that five years of post-release supervision would be imposed. *Santiago*, 158 F.4th at 401; Defs.' Mem. at 5. At sentencing later that month, before a different judge, he received a determinate term of three and one-half years. The parties stipulated at the 2022 trial that "there was no mention of post-release supervision." *Santiago*, 158 F.4th at 402. It is undisputed that while the Sentence and Order of Commitment was silent on the subject, agency personnel added a five-year term to the Department's records. *Id.* at 402–03. On November 5, 2004, Mr. Santiago was conditionally released, seven months before the date the Department itself had calculated for the end of his determinate term, May 29, 2005. *Id.* at 402; Defs.' Mem. at 6.

Mr. Santiago was returned to New York on June 12, 2007, and was wrongly incarcerated on a charge of "violating" a term no judge had imposed. He remained incarcerated until February 2008. *Santiago*, 158 F.4th at 403.

On December 15, 2010, with the consent of the Kings County District Attorney, the sentencing court imposed no term of post-release supervision and released Mr. Santiago. *Id.* at 406. The Court has already described that ruling: the judge "declined to impose PRS *nunc pro tunc*, and specifically noted, '[i]t appears that there was no discussion or agreement concerning post-release supervision as part of [Santiago's] sentence.'" 2023 Order, ECF No. 224 at 55

(quoting Pl.'s Trial Ex. 3). The written order also declared that any pending violation or prior revocation of the administratively assessed term was to be "deemed a nullity and . . . vacated." Pl.'s Trial Ex. 3.

## E. ARGUMENT

A motion in limine is not the place to decide disputed facts, nor a proper vehicle to revisit issues that have been finally decided. Defendants' motion asks the Court to revisit questions that have been decided, to decide questions that belong to the jury, and to rule in advance on evidence no one has yet offered. Keeping those three things separate disposes of most of it.

### I. Points I, III and IV Should Be Denied Because They Ask for Advance Permission to Offer Evidence and to Make Arguments, Which Is Not What a Motion in Limine Decides

A motion in limine is a request to exclude evidence before it is offered. Its purpose is to spare the jury exposure to proof that will have to be stricken and to let the parties plan around a ruling. Points I, III and IV invert that function. Point I asks the Court to "allow" impediments evidence. Point III asks the Court to "permit" Defendants to argue for nominal damages. Point IV asks the Court to "allow" Defendants to argue causation and to introduce evidence of other State actors' positions. Defs.' Mem. at 9, 11, 12. None of these is a request to screen evidence from the jury.

Two problems follow. The first is that the relief is advisory. Defendants identify no exhibit, no witness, and no document. Point I lists, as the evidence it wants admitted, "the text of Penal Law § 70.45," a bill jacket, "the resistance of district attorneys and State judges," "the position on PRS taken by officials in the State Office of Court Administration," "confusion and conflicting decisions on PRS in the State and federal courts," and "the ambiguity of documentation

within Defendants' agencies' possession." Defs.' Mem. at 9–10. Those are topics, not evidence. Whether a given document is authentic, whether a given witness has personal knowledge, whether a given statement is offered for its truth, and whether a given exhibit is cumulative are questions that cannot be answered in the abstract. A ruling admitting a category sight unseen would decide nothing and would invite exactly the mid-trial disputes the motion claims to avoid.

The Court has been here before. In 2022 Defendants asked for the same relief in the same form, and the Court asked what the evidence would be. It found that they had not said "who in particular would testify" or "what in particular those witnesses would say," and had neither proffered nor produced "what, if any, specific policies specific District Attorneys and state courts implemented in response to *Earley I*." 2022 Order, ECF No. 202 at 2; 2023 Order, ECF No. 224 at 52 & n.25. The Court of Appeals reversed the exclusion that followed, but it did not hold that a category of proof comes in without a specific showing.

The Second Circuit described the potentially relevant evidence in concrete terms: a 2008 memorandum from the Governor, state-court decisions refusing to refer cases for resentencing, and a declaratory-judgment action state agencies brought to win approval of a referral plan. *Santiago*, 158 F.4th at 404–05, 407. This motion identifies nothing of the kind.

The second problem is that Point III is not really an evidentiary question at all. Whether Mr. Santiago is limited to nominal damages is a question of law for the Court and a matter for the jury charge. If Defendants believe the evidence will not support compensatory damages, the vehicle is a Rule 50 motion at the close of proof and a proposed instruction, not an exclusionary order in advance of the evidence. That is also true of the part of Point IV that seeks permission to "argue" causation. Counsel does not need leave of court to argue the evidence that was admitted. Defendants made this same request in 2022 as a proposed jury instruction, and the Court declined

the instruction as speculative at the charging conference. 2023 Order, ECF No. 224 at 55. The Court of Appeals did not reach that ruling. The question belongs, again, in the requests to charge.

Put another way, Points I, III and IV ask the Court to decide questions that either have been decided already or will be decided at the close of proof. The mandate decided that impediments evidence is admissible. Rule 50 and the charge will decide whether the proof supports an award of compensatory damages. Neither determination is appropriate now.

### a. Plaintiff Does Not Dispute That Impediments Evidence Is Admissible, but It Is Subject to the Limits the Second Circuit Placed on Such Evidence

Plaintiff does not ask this Court to exclude impediments evidence as a category. The mandate forecloses that position. What Plaintiff asks is that the evidence be admitted on the terms the Court of Appeals described, and with the safeguards that decision assumed.

Three limits follow from the opinion itself. *First*, the Court of Appeals explained that Defendants' testimony about arguments district attorneys had made would be offered "to prove that the district attorneys had made those arguments, not that the arguments were substantively true," and that "a statement offered to show its effect on the listener is not hearsay." *Santiago*, 158 F.4th at 410–11 & n.13 (citation omitted). That is the only basis on which this material clears the hearsay bar, and Rule 105 requires the Court, on request, to confine it to that purpose and to instruct the jury accordingly. Fed. R. Evid. 105. Plaintiff makes that request now. The jury must be told, when the evidence is received and again in the charge, that the positions other officials took are received only to show what these Defendants heard and understood, and not for the truth of those positions. In other words, this is not evidence that post-release supervision lawfully attached to Mr. Santiago's sentence, a proposition the sentencing court rejected in 2010 and *Earley* rejected in 2006. *See Earley v. Murray*, 451 F.3d 71, 76 (2d Cir. 2006).

*Second*, the evidence must be tied to these Defendants. The relevance of an impediment is that it bore on what Defendants Fischer, Annucci and Tracy could do. The Court of Appeals framed it the same way: the question is whether Defendants faced "impediment[s], legal or otherwise," to "unilaterally releasing" Mr. Santiago or to persuading the state actors with authority to resolve the problem, and what that did to their "state of mind during the period of delay." *Santiago*, 158 F.4th at 411. A general history of post-release supervision litigation across New York, untethered to any showing that *these Defendants* knew of it or acted because of it, is not impediments evidence. Such evidence would confuse the jury by suggesting that the problem was too big to blame on anyone, when the question is what prevented these Defendants from releasing Mr. Santiago from his wrongful incarceration.

*Third*, questions about the evidence of causation should not be used as a back door to relitigate the issue of liability. The Court of Appeals held that evidence of impediments "is relevant to the issues of causation and punitive damages," and in the same passage repeated that "[t]he efforts made, or not made, by other parties are beside the point for the purposes of determining qualified immunity." *Santiago*, 158 F.4th at 413 (citation omitted). Liability for the 2007–2008 period was determined in 2017 and survived appeal. Defendants are entitled to argue that impediments broke the chain of causation to damages. They are not entitled to argue, or to imply, that they did nothing wrong. Plaintiff respectfully requests an instruction that the jury is to accept that Defendants violated Mr. Santiago's constitutional rights during the 2007–2008 period, and that the impediments evidence bears only on causation and on punitive damages.

Subject to those limits, Points I and IV may be resolved at trial as the evidence is offered. Plaintiff does not oppose Defendants offering proof that other State actors resisted resentencing, provided it is received with the limiting instruction the Circuit's hearsay analysis

requires, and provided it was disclosed. Evidence that Defendants did not disclose as Rule 26 requires is subject to Federal Rule of Civil Procedure 37(c)(1). The Court relied on the same failure in 2022. 2023 Order, ECF No. 224 at 10, 52 & n.25.

### II. Point II Should Be Denied Because It Asks the Court to Decide Causation on a Motion in Limine, and Because Its Legal Premise Is Wrong

Point II asks this Court to preclude Mr. Santiago from "speculating" that an earlier referral would have relieved him of post-release supervision. Defs.' Mem. at 10. What it actually asks is that the Court find, as a matter of *fact*, before trial and before the introduction of any evidence, that no earlier referral could have made any difference. That is the causation question the Second Circuit remanded. It cannot be answered on a motion in limine.

The Second Circuit did not remand the case for an evidentiary decision by the Court. The Court of Appeals sent the question back so that a jury could hear the impediments evidence that had been kept from the jury at the first trial, and weigh it against the rest of the record.

The Court told the parties in 2022 that it "would preclude speculative evidence and arguments by either party as to what might have occurred absent the constitutional violation." 2023 Order, ECF No. 224 at 9. Plaintiff agrees with that rule. But that is a rule about proof, not a *per se* rule against counterfactuals. The Court of Appeals requires the factfinder to "reconstruct what would have 'occurred had proper procedure been observed.'" *Santiago*, 158 F.4th at 409 (citation omitted). Reconstruction from evidence is exactly the task for the jury.

#### a. Holding Plaintiff to His Burden Is Not the Same as Forbidding Him to Carry It

Defendants' repeated refrain is that the Second Circuit required Mr. Santiago to be held to his burden of proving causation. That is correct, and Plaintiff accepts the burden. But a party who bears a burden is entitled to put on evidence to meet it. The Circuit ordered a new trial because the district court had *excluded* evidence bearing on causation; the remedy for a one-sided evidentiary record is not a new one-sided evidentiary record running the other way.

Defendants invoke Rule 403 for Point II. Defs.' Mem. at 10. But Rule 403 balances probative value against prejudice for particular items of evidence. It is not a mechanism for excluding an opposing party's theory of the case. Defendants do not identify a single exhibit or line of testimony they want kept out under Point II. They want a ruling that a proposition is off-limits. If the proposition is unsupported, the answers are cross-examination, a Rule 50 motion, and the charge. "Speculative" is an argument about the weight of evidence, and weight is for the jury.

#### b. The Premise That Any Resentencing Before July 1, 2008 Would Have Re-Imposed Post-Release Supervision Answers the Wrong Question and Fails on Its Own Terms

Point II rests on the assertion that Penal Law § 70.45 made a five-year term mandatory, so that "resentencing Plaintiff without a term of PRS prior to July 1, 2008 was veritably impossible." Defs.' Mem. at 11. For the following reasons, the assertion is wrong.

*First*, the sentence Defendants say a court would have supplemented had already been served. The Department of Correctional Services calculated that Mr. Santiago's three-and-one-half-year term would end on May 29, 2005. That date fell more than two years before the incarceration period at issue. Defs.' Mem. at 6; *Santiago*, 158 F.4th at 402–03. The New York

Court of Appeals has held that once a sentence has been served and the time to appeal has run, "the sentences are beyond the court's authority and an additional term of PRS *may not be imposed*." *People v. Williams*, 14 N.Y.3d 198, 217 (2010) (emphasis added), *cert. denied*, 562 U.S. 947 (2010). The bar attaches when the sentence has been served, not merely when the defendant is released early. *People v. Velez*, 19 N.Y.3d 642, 649–50 (2012) (citing *People v. Lingle*, 16 N.Y.3d 621, 630–31 & n.1 (2011)).

Plaintiff does not overstate the point. *Williams* was decided in February 2010, and Defendants will say that no one could have relied on it in 2007. But what *Williams* shows is that the resentencing Defendants describe *was not the certain outcome* that Point II assumes. Plaintiff submits that a court assessing the issue in 2007 could well have reached the same conclusion as *Williams*. At the least, what the sentencing court would have done is a factual question for the jury, not a basis for preclusion.

Defendants will point out that Mr. Santiago agreed at his plea to five years of supervision. Defs.' Mem. at 5. He did, and the Court of Appeals noted it, but it also observed that the rule of *Earley* "does not appear to turn on whether the defendant was made aware of the PRS term during a plea hearing that preceded the sentencing." *Santiago*, 158 F.4th at 412–13. A term the judge did not pronounce "is a nullity." *Earley*, 451 F.3d at 76. Respectfully, the plea is beside the point, because the supposed sentence was a nullity. The jury can consider the plea in weighing what a sentencing court would have done, but it does not make the outcome certain.

*Second*, the assertion answers a question the Court of Appeals has said is not the question. Mr. Santiago was taken into New York custody on June 12, 2007, on a charge of violating a term no judge had imposed. "[F]or defendants like Vincent, resentencing was not an available corrective measure for the simple reason that their incarceration was a consequence of

an unconstitutional sentence that DOCS, not the court, had imposed." *Vincent II*, 63 F.4th at 153. A person in that position "could not have been resentenced *nunc pro tunc* for the simple reason that courts do not have the power to substantively rewrite history or backdate events." *Id.* This Court applied that holding to Mr. Santiago in 2023 and found Defendants' contrary argument "without merit." 2023 Order, ECF No. 224 at 55–56, *rev'd on other grounds*, 158 F.4th 397. What the Court of Appeals told the district court to ask is "whether there was any impediment, legal or otherwise," to the corrections official "unilaterally releasing" the plaintiff. *Santiago*, 158 F.4th at 409 (citation omitted). Point II does not address that question. It argues that a resentencing court would have re-imposed the term, which is an argument about a route *Vincent II* closed.

*Third*, Plaintiff submits that the 2008 amendments prove the *opposite* of what Defendants say. Penal Law § 70.85, which permitted courts to reimpose the original determinate sentence without post-release supervision on the District Attorney's consent, was not enacted until 2008. *See Santiago*, 158 F.4th at 405 (describing the 2008 legislation). Defendants treat that fact as proving that relief was impossible before then.

It proves the opposite. If, before July 2008, a court could not lawfully add post-release supervision to a completed sentence, and no statute yet authorized a formal resentencing without it, then the only lawful outcome for a person in Mr. Santiago's position was the one announced by *Earley*: the administratively added term was a nullity and could not be enforced. Defendants' position requires the Court to accept that a term no judge imposed, which no court could lawfully impose, and which no statute authorized anyone to remove, could nonetheless be enforced against Mr. Santiago indefinitely.

That is not an impediment. It is the constitutional violation at issue in this case.

**c. Defendants Never Tested the Counterfactual, and the Data Points in the Record Point the Other Way**

The best evidence of what a referral would have produced is that Defendants never made one. At the first trial, Annucci and Fischer testified that before June 12, 2007 they never asked a judge or a district attorney to resentence Mr. Santiago, and Tracy testified that he had no recollection of doing so. 2023 Order, ECF No. 224 at 27 & nn.16–20. The Court summarized that testimony this way: Defendants "did not take initial steps to see whether a District Attorney or state court judge would have re-sentenced Plaintiff Santiago." *Id.* at 27. Whatever a Kings County judge or prosecutor *would have done* with Mr. Santiago's file in 2007, Defendants do not know.

If anything, the record points in the opposite direction. In 2010, the Kings County District Attorney consented, and the judge imposed no term of supervision and released him. *Santiago*, 158 F.4th at 406; 2023 Order, ECF No. 224 at 55, 57. Defendants may claim that outcome was necessarily a product of the 2008 amendments. But a jury that hears the evidence, including the court's express decision not to impose post-release supervision, may see it differently. The court's stated reason was that there had been no discussion of post-release supervision in the proceedings. 2023 Order, ECF No. 224 at 55 (quoting Pl.'s Trial Ex. 3).

*Earley* itself cuts both ways. There, the district court stayed relief to allow a resentencing, the Kings County District Attorney told the court he would not seek one, and Mr. Earley was released without any term of supervision. *Earley v. Annucci*, 810 F. App'x 60, 63–64 (2d Cir. 2020) (summary order). Defendants will also point to this Court's 2019 observation, repeated by the Court of Appeals, that the Kings County District Attorney "remained similarly resistant" to the argument that individuals were "entitled to have the administrative PRS component of their sentence stricken." *Santiago*, 158 F.4th at 404 (quoting *Santiago v. Cuomo*,

No. 12-CV-2137, 2019 WL 8587292, at *3 (E.D.N.Y. Sept. 23, 2019)). Neither history decides what would have happened to Mr. Santiago. That is a fact question for the jury.

#### d. Point II Has No Application at All to the 2010 Period

Point II is expressly limited to the period "before July 1, 2008." Defs.' Mem. at 10. By its own terms it says nothing about the September to December 2010 period. If claims for that period are tried, the counterfactual is not speculative in any degree: Penal Law § 70.85 and Correction Law § 601-d were in force, the District Attorney consented, and the sentencing court imposed no term of supervision. To the extent the order Defendants propose could be read to reach 2010, it should be denied. Whether impediments evidence bears on liability for 2010 is a separate question, which the Court of Appeals left for the summary judgment motions. *Santiago*, 158 F.4th at 413–14.

### III. Points V and VI Should Be Denied as Impeachment Evidence Because Every Conviction Defendants Identify Falls Outside Rule 609(b)'s Ten-Year Window

#### a. Rule 609(b) Runs to the Date of Trial, Not the Date the Complaint Was Filed

Defendants argue that "Plaintiff's conviction in New York was within ten years of the filing of this lawsuit, and its relevance to the damages claims here cannot be questioned." Defs.' Mem. at 16. Rule 609(b) does not measure from the filing of the complaint. It applies "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Fed. R. Evid. 609(b). The cases Plaintiff has identified show that the ten years run forward from the conviction or release to trial, not to the filing of the case. *See, e.g.*, *United States v. Nguyen*, 542 F.3d 275, 280–81 (1st Cir. 2008) (describing a "fluke" in which the ten years for the prior auto-entry charge ran out after trial began, and so were not measured from when the

case was filed); *see also United States v. Mahler*, 579 F.2d 730, 734 (2d Cir. 1978) (discussing the legislative history of the rule and noting that the case law on the point is inconsistent).

Applied correctly, the rule reaches every conviction in Defendants' motion. Mr. Santiago was released from confinement on the 2002 Kings County sentence on December 16, 2010, so ten years ran in December 2020. The last term of imprisonment imposed on the 2001 federal conviction was nine months, imposed in May 2012, so ten years ran in 2023 at the latest. Defs.' Mem. at 8; *Santiago*, 158 F.4th at 406 n.10. As for the 2008 Fairfax County conviction and the 2013 Virginia convictions for a bomb threat and assault, the Second Circuit records that Mr. Santiago "was incarcerated in Virginia until May 2015." *Id.* Ten years ran on the Fairfax conviction in 2020 and on the 2013 convictions in May 2025, nineteen months before this trial.

No conviction in this record is inside the ten-year period. Rule 609(b) therefore governs all of them, and the ordinary presumption of admissibility under Rule 609(a)(1) does not apply. The calendar has also moved since the first trial. In November 2022 the 2013 Virginia convictions, the most recent on Defendants' list, were seven and a half years past Mr. Santiago's release. They are more than eleven now. Whatever the Court allowed or the parties stipulated for that trial was decided under a different calendar.

#### b. Under Rule 609(b)'s Reverse Balancing Test, None of These Convictions Comes In

Once the ten years have run, a conviction is admissible only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). This is the reverse of the usual balance, and the Second Circuit has instructed that convictions older than ten years should be admitted "very rarely and only in exceptional circumstances." *Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 434 (2d Cir. 1993) (internal

quotation marks omitted). The district court must make an on-the-record determination, supported by specific facts and circumstances, before such a conviction comes in. *Mahler*, 579 F.2d at 736. Defendants do not acknowledge this standard, and they offer no specific facts and circumstances directed to it.

Rule 609(b)(2) adds a notice requirement: the proponent must give "reasonable written notice of the intent to use" the conviction. Fed. R. Evid. 609(b)(2). Defendants' motion names one conviction, the 2002 weapons conviction, and refers to the rest as "a series of felonies." Defs.' Mem. at 16. Plaintiff asked in 2022 that Defendants be required to say which convictions they meant to use, ECF No. 183 at 5, and he asks the same now.

Nor can they meet the standard. The probative value of these convictions for truthfulness is slight. Criminal possession of a weapon, possession of marijuana with intent to distribute, possession of crack cocaine with intent to distribute, and assault are not crimes of dishonesty or false statement. They say little about whether a witness will tell the truth about how it felt to be held in a cell.

The prejudice, by contrast, is severe and irreparable.

This is a damages retrial in which liability has already been established. The jury will not be asked who did what; it will be asked what a period of unconstitutional confinement was worth. In that posture, a recitation of a decade of felonies does not help the jury measure anything. It invites the jury to conclude that Mr. Santiago is the sort of person who somehow "belonged" in prison and that the constitutional violation, whatever it was, does not much matter. That is a verdict on character, and Rule 403 exists to prevent it.

Defendants' authorities do not carry them past this problem. *Crenshaw v. Herbert*, 409 F. App'x 428, 432 (2d Cir. 2011), and *Banyan v. Sikorski*, No. 25-1425, 2026 WL 1074659,

at *4 (2d Cir. Apr. 21, 2026), involved plaintiffs whose incarceration was already squarely before the jury on a *liability* question, where credibility contests about disputed events were the heart of the case. *Daniels v. Loizzo*, 986 F. Supp. 245, 249–51 (S.D.N.Y. 1997), and *Brundidge v. City of Buffalo*, 79 F. Supp. 2d 219, 225–26 (W.D.N.Y. 1999), were excessive-force cases turning on whose account of a physical encounter to believe. Here there is no disputed encounter. The operative facts are documented, and for the most part they are Defendants' own documents. This Court's account of the first trial confirms it: the key facts came from Defendants' own testimony about what they knew of *Earley* and what they did and did not do. 2023 Order, ECF No. 224 at 22–35.

Defendants' reliance on *Sanabria v. State of New York*, 29 Misc. 3d 988, 995–96 (N.Y. Ct. Cl. 2010), is misplaced for a different reason. *Sanabria* was a bench trial in the New York Court of Claims applying state damages law. There was no jury, and therefore no Rule 403 question of the kind presented here. A judge weighing a claimant's history in assessing mental anguish is not authority for parading that history before a jury.

**c. The Details, the Disciplinary History, and the Post-2010 Conduct Are Inadmissible on Any Theory**

Even if some conviction evidence were admitted, three categories in Defendants' request should be excluded outright.

The underlying details. Defendants ask to cross-examine on the "essential facts" of each conviction, invoking *United States v. Estrada*, 430 F.3d 606, 616–17 (2d Cir. 2005). Defs.' Mem. at 16–17. That presumption belongs to Rule 609(a)(1) and has no application to convictions governed by Rule 609(b). In a damages retrial, the facts that Mr. Santiago shot someone in the leg, distributed crack cocaine, or made a bomb threat have no bearing on what three months or

eight months of unlawful confinement was worth, and every bearing on whether the jury will want to compensate him at all.

The prison disciplinary history. Defendants request "evidence of Plaintiff's felony convictions, and his experience in prison, including his disciplinary history." Defs.' Mem. at 21. Disciplinary infractions are not convictions and are not within Rule 609 at all. Defendants have not identified a single infraction, its date, its nature, or its outcome, and have offered no theory of relevance beyond the general assertion that prison experience bears on damages. Uncharged institutional misconduct offered to show that a plaintiff is a difficult person is classic Rule 404(b) material, and it should be excluded.

The post-2010 conduct. Defendants' statement of facts devotes a paragraph to warrants lodged in 2012 for a probation violation, a felony bomb threat, and "six misdemeanor warrants for domestic assault, phone threats, stalking and trespassing." Defs.' Mem. at 8. None of that had happened during either period for which damages are sought. Conduct occurring years after the injury cannot bear on what the injury was worth, and cannot bear on causation for a detention that ended in December 2010. Its only function at this trial would be to prejudice. It should be excluded under Rules 402 and 403, and, as to the charges that produced no conviction, under Rule 609 as well, which reaches convictions and not arrests or accusations.

## IV. Points V and VI Should Be Denied Insofar as They Suggest the Incarceration Was Justified by Other Bad Acts, Because That Argument Is Speculative and the Dates Refute It

Point V asks the Court to permit evidence that Mr. Santiago "would have been incarcerated or would have been serving terms of supervision in any event." Notice of Motions in Limine, item (5). Defendants identify two sentences: a Fairfax County sentence of ten years with

eight suspended, and a federal sentence with supervised release. Defs.' Mem. at 14. Neither supports the proposition for the period being tried.

Plaintiff does not ask the Court to decide on this motion whether Mr. Santiago would have been at liberty. That is a jury question, and Plaintiff is content to try it. What Plaintiff asks is that the jury not be told, as though it were established, something the dates show is not so.

#### a. The Fairfax County Conviction Postdates the 2007–2008 Period

Defendants' own brief supplies the dates. Mr. Santiago was "prosecuted for and convicted of Possession of Marijuana with Intent to Distribute *on October 1, 2008*," and was "sentenced for that conviction in the Circuit Court of Fairfax County *on December 11, 2008*," by an order entered January 15, 2009. Defs.' Mem. at 7 (emphasis added). The period being tried closed on February 6, 2008.

Defendants bridge the gap by pointing to the offense date, October 30, 2005, and asserting that Mr. Santiago was "concurrently" serving a ten-year Virginia sentence while on post-release supervision in New York. Defs.' Mem. at 14. An offense date is not a sentence. No Virginia court had convicted him, let alone sentenced him, at any time during the June 2007 to February 2008 period. He was arrested in Virginia on those charges about two months after the period closed. *Santiago*, 158 F.4th at 403. Evidence that he was serving a Virginia sentence during the 2007–2008 period would be inaccurate, and a jury told that he was would be misled on the central damages question.

The federal sentence does not fill the gap either. Mr. Santiago's federal term of imprisonment ended before he was transferred to New York on June 12, 2007. *Santiago*, 158 F.4th at 403. What remained was a term of supervised release. Supervised release is not incarceration. The custody for which he seeks damages was New York custody, imposed after Parole revoked a

term of supervision that no judge had imposed, on a New York warrant, for violating a New York condition that did not lawfully exist. Without the void term there was no violation, no warrant, and no time assessment. He would have been in the community on federal supervision.

#### b. There Was No Virginia or Federal Hold on Mr. Santiago in 2010

If the 2010 claims are tried, the same defect is worse, because Defendants' own records contradict them. On August 25, 2010, a federal official at USP Hazelton telephoned Parole to advise that Mr. Santiago would be released on September 9, 2010, and to ask whether New York intended to extradite him "because he has no documentation detainer or warrant on record." Parole answered that it would extradite and faxed its own warrant to be lodged against him. Philbrick Decl., Ex. C (entry of Aug. 25, 2010). The only instrument lodged against Mr. Santiago when his federal sentence ended was New York's.

What happened at the other end confirms it. When the sentencing court ruled on December 15, 2010, Mr. Santiago was released the next day into the community. No jurisdiction took custody of him. He was not committed to the Virginia Department of Corrections until July 5, 2013, after a guilty plea to charges that did not exist in 2010. The sole support for the contrary suggestion is a September 20, 2010 telephone note recording a Virginia probation officer's expectation that Mr. Santiago "will still have to do 2 years with Virginia." That note is hearsay offered for its truth, and the declarant has no authority to bind the Commonwealth. Fed. R. Evid. 602, 801, 802.

#### c. "He Would Have Been Locked Up Anyway" Is the Speculation Defendants Ask the Court to Forbid

There is an asymmetry running through this motion that the Court should not accept. In Point II, Defendants ask that Mr. Santiago be barred from arguing what a sentencing

court would have done, on the ground that such an argument is speculative. In Point V, Defendants ask permission to argue what Virginia and federal authorities would have done. The Court told both sides in 2022 that it "would preclude speculative evidence and arguments by either party as to what might have occurred absent the constitutional violation." 2023 Order, ECF No. 224 at 9. The same standard should apply to both sides. Plaintiff's position is that both questions are for the jury, on evidence, with instructions. What cannot stand is a ruling that forecloses one side's counterfactual while licensing the other's.

To the extent Defendants wish to prove that a specific, existing legal hold would have kept Mr. Santiago in custody during a specific period, they may attempt it only with competent evidence such as a detainer, a warrant, a commitment order, or a certificate of disposition. Plaintiff does not seek to exclude such proof if it exists. What Plaintiff asks the Court to exclude is argument and testimony that he would have been imprisoned anyway, unsupported by any instrument that was in force at the time.

## V. Even If Some of This Evidence Were Admissible, Rule 403 Requires Its Exclusion, and a Stipulation Gives Defendants Everything Their Own Authorities Allow

Even if some of this evidence cleared Rule 609(b) and the objections above, Rule 403 would still require its exclusion, because its probative value is substantially outweighed by the danger of unfair prejudice, of confusing the issues, and of undue delay. Fed. R. Evid. 403. On the questions the jury will decide, its value is slight, for the reasons given above. Its cost is not. It would turn a damages retrial into a series of side trials about Virginia proceedings, a bomb threat and prison discipline, and it would invite the jury to decide what Mr. Santiago deserved instead of what his unlawful confinement was worth. A stipulation removes the need for any of it.

The cases Defendants cite stand for the proposition that a person who has previously been incarcerated may experience a later wrongful incarceration differently than someone imprisoned for the first time. *English v. City of New York*, 786 F. Supp. 3d 520, 523 (E.D.N.Y. 2025); *Banushi v. Palmer*, No. 08-CV-2937 (KAM), 2011 WL 13894, at *3 (E.D.N.Y. Jan. 4, 2011). That proposition requires the *fact* of prior incarceration and supervision. It does not require the offenses, the sentences, the jurisdictions, or the disciplinary records.

A jury may also reach the opposite conclusion: that a history of incarceration would make a further wrongful incarceration *more oppressive* and *more difficult to bear*.

Plaintiff therefore offers to stipulate, and asks the Court to receive a stipulation, that before June 2007 Mr. Santiago had served prior periods of incarceration in State and federal facilities and had previously been subject to terms of community supervision. Defendants may argue from that stipulation that his experience of the 2007–2008 confinement differed from that of a person new to custody. Plaintiff may argue that it would make the subjective experience worse and more oppressive, and such a stipulation would help limit the potential prejudice. It is also the course this Court took in 2022, 2023 Order, ECF No. 224 at 9, and the position Plaintiff took then: the fact of the felony conviction "gives the jury some context as to why Plaintiff was incarcerated," but its details do not. ECF No. 181 at 7.

If the Court is nevertheless inclined to permit some conviction evidence, Plaintiff respectfully submits that the outer limit should be the approach of *Sedney v. Blot*, No. 00-CV-1302, 2003 U.S. Dist. LEXIS 21364, at *3–4 (S.D.N.Y. Dec. 1, 2003), which Defendants themselves raise in the alternative, confined to the number of felony convictions and their approximate dates, without the names of the offenses, without the underlying facts, without the disciplinary history, and without any conduct postdating December 2010, and accompanied by a

limiting instruction that the evidence bears only on credibility and on the value of the loss of liberty, and not on whether Mr. Santiago deserved to be confined.

### VI. If the Court Admits Any of This Evidence, Limiting Instructions Should Be Given When It Is Received and Repeated in the Charge

Whatever the Court admits, the risk this evidence carries is manageable only with instructions that are given contemporaneously rather than saved for the charge. Fed. R. Evid. 105. Plaintiff requests three.

One. That the jury is to accept as established that Defendants violated Mr. Santiago's constitutional rights during the 2007–2008 period, and that evidence of impediments is received only on causation and on punitive damages.

Two. That statements attributed to district attorneys, judges, court administrators and other officials are received only to show what these Defendants were told and understood, and not for the truth of those statements. In particular, the jury should be told that the term of post-release supervision was never lawfully part of Mr. Santiago's sentence, whatever Defendants may have believed. *Santiago*, 158 F.4th at 410–11 & n.13.

Three. That any evidence of prior convictions, incarceration or supervision is received only as it bears on credibility and on the value of the loss of liberty claimed, and may not be considered as evidence that Mr. Santiago is a person of bad character or that he deserved to be confined on a sentence no judge imposed.

## <u>F. CONCLUSION</u>

Plaintiff does not ask this Court to resolve the merits of the case on an evidentiary motion, and respectfully submits that Defendants should not be permitted to either. The requests

below track the distinction drawn above: what has been decided stays decided, what belongs to the jury goes to the jury, and what is genuinely a question of admissibility is decided now.

For the reasons set out above, Plaintiff respectfully requests that the Court:

(i.) deny Points I, III and IV as improper requests for advance permission, without prejudice to Defendants offering the evidence at trial subject to objection, to Rules 26 and 37(c)(1), and to the limiting instructions described above;

(ii.) deny Point II in its entirety;

(iii.) deny Point V insofar as it seeks to place before the jury a Virginia sentence that did not exist during the period being tried, or to suggest a Virginia or federal hold in 2010 that no instrument supports;

(iv.) deny Points V and VI insofar as they seek the details of Mr. Santiago's convictions, his prison disciplinary history, and conduct postdating December 2010, and limit any conviction evidence as described above;

(v.) direct Defendants to identify, within seven days of the Court's order, each conviction they intend to use under Rule 609 and the specific facts and circumstances on which they rely under Rule 609(b), and each witness and exhibit they intend to offer on impediments and on the positions of other State actors; and

(vi.) grant such other relief as the Court finds just.

DATED: September 28, 2026

RESPECTFULLY SUBMITTED,

By: 

Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 401-6910
bg@gottesmanlegal.com
*Counsel for Plaintiff Jesus Santiago*

TO: Michael J. Keane, Esq.
Peter C. Morrison, Esq.
Assistant Attorneys General
Office of the Attorney General of the State of New York
28 Liberty Street, 18th Floor
New York, New York 10005
Michael.Keane@ag.ny.gov
Peter.Morrison@ag.ny.gov
*Attorneys for Defendants*

**CERTIFICATE OF COMPLIANCE**

I certify that this Memorandum of Law complies with Local Civil Rule 7.1(c) and with the Individual Practice Rules of the Honorable Kiyo A. Matsumoto. According to the word count function of Microsoft Word, and excluding the caption, the table of contents, the table of authorities, the signature block and this certificate, this Memorandum contains 8,009 words.

DATED: September 28, 2026

RESPECTFULLY SUBMITTED,

By: /s/ ________________________________
Baruch S. Gottesman, Esq.